

**Commonwealth of Massachusetts**
**NORFOLK SUPERIOR COURT**
**Case Summary**
**Civil Docket**

01/14/2005
07:53 AM

## NOCV2003-02018
## Wrentham v McEvoy et al

FILED
IN CLERKS OFFICE

2005 JAN 18 P 3: 25

U.S. DISTRICT COURT
DISTRICT OF MASS

| | | | | | |
|---|---|---|---|---|---|
| **File Date** | 10/29/2003 | **Status** | Disposed: transfered to other court (dtrans) | | |
| **Status Date** | 01/13/2005 | **Session** | B - Civil B | | |
| **Origin** | 1 | **Case Type** | D13 - Declaratory judgement (231A) | | |
| **Lead Case** | | **Track** | A | | |

| | | | | | |
|---|---|---|---|---|---|
| **Service** | 01/27/2004 | **Answer** | 03/27/2004 | **Rule12/19/20** | 03/27/2004 |
| **Rule 15** | 01/21/2005 | **Discovery** | 12/17/2005 | **Rule 56** | 02/15/2006 |
| **Final PTC** | 06/15/2006 | **Disposition** | 10/28/2006 | **Jury Trial** | Yes |

### PARTIES

**Plaintiff**
Town of Wrentham
Active 10/29/2003

**Private Counsel 544493**
George A Hall Jr
Anderson & Kreiger
43 Thorndike Street
East Cambridge, MA 02141
Phone: 617-252-6575
Fax: 617-252-6899
Active 10/29/2003 Notify

**Private Counsel 566522**
John J Cloherty III
Pierce Davis & Perritano
10 Winthrop Square
5th floor
Boston, MA 02110-1264
Phone: 617-350-0950
Fax: 617-350-7760
Active 12/04/2003 Notify

**Defendant**
Matthew McEvoy
Served: 10/30/2003
Answered: 11/12/2003
Answered 11/12/2003

**Private Counsel 451100**
Daniel R Seigenberg
L/O of Daniel R Seigenberg
2 Commercial St
Sharon, MA 02067
Phone: 781-784-8800
Fax:
Active 11/13/2003 Notify

**Defendant**
Leah McEvoy
Answered: 11/13/2003
Answered 11/13/2003

*** See Attorney Information Above ***

case01 209603 y y y y y y

MAS-20030912                Case 1:05-cv-10042-DPW    Document 3    Filed 01/18/2005      Page 2 of 33
fostervi                                    Commonwealth of Massachusetts
                                              NORFOLK SUPERIOR COURT
                                                     Case Summary
                                                      Civil Docket
                                                                                                    01/14/2005
                                                                                                    07:53 AM

## NOCV2003-02018
## Wrentham v McEvoy et al

**Plaintiff/counterclaim**
Matthew McEvoy
Active 12/23/2003

**Plaintiff/counterclaim**
Leah McEvoy
Active 12/23/2003

**Defendant/counterclaim**
Town of Wrentham
Active 12/23/2003

**Other interested party**
John Zizza
Active 01/13/2005

**Private Counsel 566522**
John J Cloherty III
Pierce Davis & Perritano
10 Winthrop Square
5th floor
Boston, MA 02110-1264
Phone: 617-350-0950
Fax: 617-350-7760
Active 01/13/2005 Notify

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 10/29/2003 | 1.0 | Complaint entry fee $275 $90 for tro tro to issue under prayer I order of notice under prayer I for hearing on preliminary injunction ret Nov 5, 2003 at 2:00pm Gants J |
| 10/29/2003 | | Origin 1, Type D13, Track A. |
| 10/29/2003 | 2.0 | Civil action cover sheet filed |
| 10/29/2003 | | average track notice sent to plff attorney |
| 10/31/2003 | | ONE TRIAL review by Clerk, case is to remain in the Superior Court |
| 11/12/2003 | 8.0 | SERVICE RETURNED: Matthew McEvoy(Defendant), in hand on 10/30/03 |
| 11/13/2003 | 3.0 | Plaintiff's Memorandum in support of its request for a Preliminary Injunction, and in opposition to Defendant's request for a Preliminary Injunction rec'd 11/5/03 |
| 11/13/2003 | 4.0 | ANSWER: Matthew McEvoy(Defendant) and counterclaim and jury claim rec'd 11/5/03 |
| 11/13/2003 | | ANSWER: Leah McEvoy(Defendant) and counterclaim and jury claim rec'd |

case01 209603 y y y y y y

MAS-20030912
fostervi

Case 1:05-cv-10042-DPW    Document 3    Filed 01/18/2005    Page 3 of 33

Commonwealth of Massachusetts
NORFOLK SUPERIOR COURT
Case Summary
Civil Docket

01/14/2005
07:53 AM

## NOCV2003-02018
## Wrentham v McEvoy et al

| Date | Paper | Text |
|------|-------|------|
| | | 11/5/03 |
| 11/13/2003 | | average track notice sent to atty Seigenberg |
| 11/13/2003 | 5.0 | Affidavit of Matthew McEvoy rec'd 11/5/03 |
| 11/13/2003 | 6.0 | Motion of the Defendants, Matthew McEvoy and Leah McEvoy, for Temporary Restraining Order/Preliminary Injunction rec'd 11/5/03 |
| 11/13/2003 | | MOTION (P#6.0) After hearing, Defendants' Motion for Preliminary Injunction is DENIED. See Memorandum and Order of this date (Ralph D. Gants, Justice).dated 11/10/03  Notices mailed November 13, 2003 |
| 11/13/2003 | | re: Verified Complaint  (P#1.0)  Plaintiff's request for Preliminary Injunction is granted. See Memorandum and Order of this date (Ralph D. Gants, Justice) dated 11/10/03 . Notices mailed November 13, 2003 |
| 11/13/2003 | 7.0 | Memorandum and Order on Cross Motions for A Preliminary Injunciton-- ORDER For the reasons stated above, this Court hereby ALLOWS the Town's motion for a preliminary injunction and DENIES  the McEvoys' motion for preliminary inction. Therefore, pending the conclusion of this litigation, this Court ORDERS the McEvoys  and their agents not to interfere with the Town's use of the Construction Easement until that Easement expires at 12:01 a.m. on January 1,2004 (Gants,Justice) dated 11/10/03 certified copies mailed 11/13/03 |
| 12/23/2003 | 9.0 | ANSWER by Town of Wrentham to COUNTERCLAIM (recd'12/17/03) |
| 02/06/2004 | | Case status changed to 'Needs review for answers' at service deadline review |
| 04/13/2004 | | Case status changed to 'Needs discovery' at answer deadline review |
| 01/13/2005 | 10.0 | Putative third party deft, John Zizza's emergency motion to docket notice of removal pursuant to 28 USC s.1441(a) |
| 01/13/2005 | | MOTION (P#10.0) RULING:  In these unusual circumstances (the unknown whereabouts of the McEvoy's motion to add Zizza - see Exhibit A, still not filed in the Superior Court) and in an abundance of fairness to Zizza, ALLOWED.  ORDER:  (1) The clerk shall docket Zizza's Notice of Removal pursuant to 28 USC s 144(a) now. (2) The party holding the motion to add Zizza shall file it now. (a) If the McEvoys have the motion with Zizza's responsive papers in a Superior Court Rule 9(A(b) package, they shall file them immediately; (b) If Zizza has forwarded his response to the motion to McEvoys' counsel in accordance with Rule 9A(b), then he shall now file the package immediately. (Mitchell Sikora, Associate Justice) dated 1/13/05 (Mitchell J. Sikora, Associate Justice). Notices mailed January 13, 2005 |
| 01/13/2005 | 11.0 | Notice of Removal to US District Court by third party deft, John Zizza |

A TRUE COPY
Attest: *[signature]*
Deputy Assistant Clerk
1/14/05

| | | EVENTS | |
|------|---------|-------|--------|
| Date | Session | Event | Result |
| 11/05/2003 | Civil B | Motion/Hearing: prel inj | Event held as scheduled |

*October 29, 2003*
*T.R.O to issue under prayer 1; O/N to issue under prayer 1 &*
*for hearing on preliminary injunction ret November 5, 2003 at 2:00p.*

# COMMONWEALTH OF MASSACHUSETTS

*(Gants, J.)*
*/s/ Nancy J. Delny*
*Asst Clerk*

Norfolk, ss.

Superior Court Department
Civil Action No.

03  62018

---

TOWN OF WRENTHAM,
             Plaintiff,

v.

MATTHEW McEVOY and LEAH McEVOY,
             Defendants.

    )
    )
    )
    )
    )
    )
    )
    )
    )

---

## VERIFIED COMPLAINT

### Introduction

In this action, the Town of Wrentham ("Town") seeks to enjoin the defendants from obstructing or interfering with the use of an easement granted by the defendants to the Town for the purposes of installing a water main from East Side Road in Wrentham under the defendants' property and under the section of Lake Pearl known as the Desert Brook inlet to a new well site located on the opposite shore. The Town also seeks declaratory relief under G.L. c. 231A, § 1 establishing its right to use the easement and the defendants' liability for any damages or liabilities incurred by the Town as a result the defendants' wrongful interference with the use of its easement.

### Parties

1.  The plaintiff Town of Wrentham is a municipal corporation with its offices at 100 Stonewall Boulevard, Wrentham, Norfolk County, Massachusetts.

2.  The defendants Matthew and Leah McEvoy are individuals residing at 815 East Side Road, Wrentham, Norfolk County, Massachusetts.

## Facts

3.    At a special town meeting on June 25, 2001, following a six-year search for an additional water supply source, the Town voted to acquire a 185-acre parcel of land on the south side of Lake Pearl and on the west side of the Desert Brook inlet for water supply and conservation purposes. At the same time, Town appropriated $5.3 million for a comprehensive upgrade to its water supply and distribution system, including the installation of a new well on the Lake Pearl property, and the extension of new water mains from the north and the east to connect the new well into the water distribution system, and the acquisition of easements necessary therefor.

4.    At a special town meeting on October 15, 2001, the Town voted to authorize the Board of Selectmen to acquire by eminent domain easements in two private ways for the purpose of installing water mains to the new well site adjacent to Lake Pearl: an easement in Elysium Street to connect to the new well site from the north, and an easement in East Side Road to approach the new well site from the east. A plan depicting the new well site and well treatment station, and the new water mains connecting the well to the Town's existing distribution system, is attached hereto as Exhibit A.

5.    In order to complete the connection of the well to the existing water distribution system through the two private ways named above, the Town needed to acquire easements across two residential lots: one to connect the new water main in Elysium Street to the existing terminus of the water main at the end of Woolford Road, and one to cross from the end of East Side Road under the Desert Brook inlet to the new well site. Accordingly, the October 25, 2001 town meeting vote also authorized the Board of Selectmen to acquire those easements by voluntary

-2-

conveyance, said purchases to be funded from the original $5.3 million appropriation for the water project.

6.    The Wrentham Board of Selectmen, after completing an appraisal process, then offered the sum of $21,500 to the defendants Matthew and Leah McEvoy for two easements between East Side Road and the Desert Brook inlet of Lake Pearl. The first was a permanent easement thirty feet in width along the northerly side line of the McEvoy property for the construction, installation , operation, maintenance, repair and replacement of subsurface water mains. The second easement was a temporary construction easement fifty feet in width, including the area of the permanent easement and an additional twenty feet, expiring on January 1, 2004. The purpose of the construction easement was to stage the subsurface crossing of the Desert Brook inlet of Lake Pearl by way of a "direct drilling" process.

7.    On October 23, 2002, the defendants tendered an instrument conveying the above described easements to the Town. A true copy of that instrument is attached hereto as Exhibit B. A reduced version of the plan depicting the permanent and temporary easements is attached hereto as Exhibit C.

8.    On November 26, 2002, the Town recorded the McEvoy easement along with a similar easement from Michael and Geraldine Tavalone and Orders of Taking for East Side Road and Elysium Street at the Norfolk County Registry of Deeds. The Town tendered payment of the $21,500 sum to the McEvoys, less amounts previously paid directly on the McEvoys' behalf to an engineering firm for the design of a septic system upgrade for the McEvoy property, on or before that date.

-3-

9.    The Town's contractors set up on the Town's new well site on the west side of the Desert Brook inlet and on the McEvoy property on the opposite shore to begin the direct drilling process under the Desert Brook inlet on or about April 28, 2003. The drilling equipment was set up on the Town's property. During the drilling process, a return pipe was set up on the McEvoy property to capture a bentonite clay mixture injected into the tunnel bore to seal the tunnel and return it to the west side of the inlet. A truck-mounted compressor was used on the McEvoy property to pump the bentonite clay mixture through the return pipe. On various occasions, a backhoe was used on the McEvoy property to assist in completing the connection between the flexible pipe being inserted under Lake Pearl to the new water main in East Side Road.

10.    The drilling process required several attempts. The first drill attempt began on April 30, 2003, was unsuccessful, and was discontinued on May 5, 2003. The second attempt started on May 6, 2003, was unsuccessful, and was discontinued on May 8, 2003. The third attempt began and was aborted on May 9, 2003. The fourth and final attempt commenced on May 12, was interrupted for approximately one week over and after the Memorial Day holiday, and was completed on or about July 3, 2003. The return pipe and all ancillary equipment were removed from the McEvoy property by the first week of August, 2003.

11.    During the direct drilling process, some of the bentonite clay mixture injected into the tunnel bore escaped into the Lake, requiring remedial action by the contractor. The loss of that material into the Lake was an undesired, but not wholly unexpected, result of the drilling process.

12.    On July 3, 2003, Matthew McEvoy made a written demand for an additional payment of $50,000 from the Town, claiming damages as a result of the allegedly unexpected

duration of the project, and the noise, truck traffic and water quality impacts incidental to the project. A true copy of the first McEvoy demand is attached hereto as Exhibit D.

13.    On or about July 7, 2003, after the July 4th holiday weekend, it became apparent to the Town that the top of pipe under the Desert Brook inlet had become visible at the bottom of the inlet, that it therefore did not comply with the specifications of the contract requiring a minimum of five feet of cover, and that further work would be required within in the inlet to reset the pipe at the correct depth.

14.    On or about July 21, 2003, the Wrentham Conservation Commission issued an enforcement order to the Wrentham Department of Public Works under the Wetlands Protection Act and the Town's Wetlands Protection Bylaw directing the Town to develop and implement a plan, in consultation with the Conservation Commission, the United States Army Corps of Engineers and the United States Environmental Protection Agency for resetting the pipe and recovering the lost bentonite clay mixture. A true copy of the Conservation Commission's order is attached hereto as Exhibit E. From that date, if not before, the Town began the process of acquiring the permits and approvals necessary to excavate the lake bed to reset the pipe and to complete the process of recovering and removing the bentonite clay mixture that was discharged into Lake Pearl.

15.    The Town acquired the necessary permits and approvals for the completion of the project, including the clean-up of the bentonite clay mixture, by the end of September, 2003. The project requires the temporary installation of two 6-inch pipes across the McEvoy property from East Side Road to the shore in order to recover the bentonite clay mixture to an impoundment that has been constructed off East Side Road, and to return clean water to the Lake, and for

-5-

personnel to enter the property to inspect and monitor this equipment. All other work is to be done from the Town's property or from a barge in the Lake. The work is expected to be completed within approximately four to six weeks.

16.     On September 30, 2003, the defendants, through their counsel, reiterated in writing their demand for compensation for the alleged overburdening of the easement and indicated that they would not permit the use of the construction easement for the completion of the project. The Town responded that its use of the construction easement for access to the Desert Brook inlet was necessary for the completion of the project and within the scope of the easement, and advised the defendants against any interference with its easement rights. True copies of the McEvoys' second demand and the Town's reply are attached hereto as Exhibit F.

17.     During the week of October 20, 2003, the Town's contractors attempted to enter the construction easement for the purpose of completing the project. On information and belief, the defendant Matthew McEvoy informed the Town's contractors that he would file suits against them if all equipment and personnel were not immediately removed from his property. True copies of the letters from the Town's subcontractor and general contractor describing this incident are attached hereto as Exhibit G.

**Count 1**
**Trespass/Breach of Contract for Easement**

18.     The Town restates the allegations in paragraphs 1 through 17, above.

19.     The Town's proposed activity on the McEvoy property is within the geographic scope of the easement, is within the temporal scope of the easement and is directly and necessarily related to the construction project for which the easement was acquired. The Town's

proposed activities are therefore lawful and consistent with its easement rights.

20.    The defendant Matthew McEvoy's conduct constitutes active and material interference with the Town's easement rights.

21.    The defendant Matthew McEvoy's active and material interference with its easement rights constitutes a trespass and a breach of the easement agreement.

**Count 2**
**Declaratory and Injunctive Relief**

22.    The Town restates the allegations in paragraphs 1 through 21, above.

23.    There is an actual controversy between the Town and the defendants regarding the scope of the Town's easement rights.

24.    The Town will be irreparably harmed if the defendants' interference with its easement rights is permitted to continue.  Specifically, the Town will be unable to complete the project before the construction easement expires by its own terms on January 1, 2004.  Further, the Town may have incurred and may continue to incur liabilities to its contractors for delay in completion of the project.  The general contractor has communicated to the Town that additional costs will begin to accrue at the rate of $2,000 per day on Wednesday, October 29, 2003 if work cannot commence on that date.  A damages remedy against the defendants for such delay claims may be inadequate due to the inability of the defendants to pay a claim of such magnitude.

25.    The public interest will be harmed if the defendants' interference with the Town's easement rights is permitted to continue because the remediation of the discharge of bentonite clay into Lake Pearl will be delayed and associated damage to the environment will continue. The public interest will further be harmed by associated delays in the completion of the water

-7-

project.

26.    The defendants will not be substantially or irreparably harmed by the Town's proposed use of the construction easement, as the presence of two 6-inch pipes within the easement area will not materially interfere with their use or enjoyment of their property. If and to the extent that the defendants may claim that past or proposed use of the construction easement is beyond the scope of the easement, the defendants have an adequate remedy at law.

WHEREFORE, the Plaintiffs respectfully requests that this Court:

(1)  Issue a temporary restraining order, followed by a preliminary injunction, ordering the defendants, their agents, employees, or any others acting in concert with the defendants from interfering with the Town's use of the construction easement from the present through December 31, 2003, including, without limitation, any communications with the Town's contractors or subcontractors demanding that they vacate the easement or threatening the Town's contractors or subcontractors with legal action;

(2) Declare that the use of the construction easement for the resetting of the pipe under the Desert Brook inlet and the recovery of bentonite clay from the Lake to be an activity within the scope of the Town's construction easement;

(3) Declare that the defendants are liable to the Town for any costs or damages for which the Town may become liable as a result of any delays attributable to the defendants' interference with the Town's easement rights;

(4) Award such other relief as this Court deems just and proper.

Town of Wrentham,
By its attorney,

George A. Hall, Jr. (BBO# 544493)
ANDERSON & KREIGER LLP
43 Thorndike Street
Cambridge, MA 02141
(617) 252-6575

Dated: October 28, 2003

## VERIFICATION

I, Robert J. Reardon, on oath depose and say that I am the Superintendent of Public Works for the Town of Wrentham, Massachusetts, that I am responsible for the oversight of the water supply and distribution projects described in the foregoing complaint, that I have read the factual allegations of this Verified Complaint, and that said allegations are true and accurate to the best of my personal knowledge, information and belief.

Signed under the pains and penalties of perjury this 28 day of October, 2003.

Robert J. Reardon

A TRUE COPY
Attest:
Deputy Assistant Clerk
1/14/05

-9-





SCALE: 1"=400'

LAKE PEARL

REGIONAL DRILL DESERT BROOK

McEVOY PROPERTY

12" WATER MAIN

8" STUB

PROPOSED SUBDIVISION

MASSACHUSETTS ELECTRIC CO.

8" WATER MAINS

EAST SIDE ROAD

ROAD

LAKE PEARL

TOWN OF WRENTHAM, MASSACHUSETTS
LAKE PEARL WELL CONNECTING
PIPELINES—WOOLFORD ROAD,
ELYSIUM STREET, EAST SIDE ROAD

OCTOBER 28, 2003

SCALE: 1" = 400'

WESTON & SAMPSON
ENGINEERS, INC.

BK 17706PG229

RECEIVED AND RECORDED
NORFOLK COUNTY
REGISTRY OF DEEDS
DEDHAM, MA
CERTIFY
*William P O'Donnell*
WILLIAM P. O'DONNELL, REGISTER

## UTILITY and CONSTRUCTION EASEMENT

**MATTHEW J. McEVOY AND LEAH M. McEVOY,**
of Wrentham, Norfolk County, Massachusetts,

for consideration paid, and in full consideration of ---TWENTY ONE THOUSAND FIVE ---
HUNDRED AND NO/100 ($21,500.00) - **Dollars,**

grant to **THE TOWN OF WRENTHAM,** a municipal corporation with its principal place of
business at 100 Stonewall Boulevard, Wrentham, Norfolk County, Massachusetts,

### *WITH QUITCLAIM COVENANTS*

a utility easement under a portion of our property at 815 East Side Road in said Wrentham, said
portion being shown as "Utility and Water Main Easement" on a plan entitled "Plan of Utility
Easements, Lake Pearl Area, Wrentham, Massachusetts," dated October 1, 2001 prepared for the
Town of Wrentham by Wilson Associates Engineering and Survey, Inc., said plan to be recorded
herewith ("Easement Plan") and bounded and described according to said Easement Plan as
follows:

*SEE UTILITY EASEMENT DESCRIPTION ATTACHED AS EXHIBIT A HERETO.*

This easement is granted for the construction, installation, operation, maintenance, repair and
replacement of subsurface water mains connecting the existing water main terminus in East Side
Road and running through the said East Side Road, under our property to the Desert Brook Inlet
of Lake Pearl, and under the said Desert Brook Inlet to the property depicted on Land Court Plan
No. 10520A, which property was acquired by the Town under an Order of Taking dated October
31, 2001 and described in Certificate No. 162971 in Registration Book 815, Page 171 in the
Land Court Department of the Norfolk County Registry of Deeds.

The Grantors hereby further grant to the said Town of Wrentham a construction easement over
the portion of our property at 815 East Side Road shown on said Easement Plan as "Construction
Easement" and bounded and described according to said plan as follows:

*SEE CONSTRUCTION EASEMENT DESCRIPTION ATTACHED AS EXHIBIT B HERETO.*

Said construction easement is temporary and shall terminate and be of no further force and effect
on January 1, 2004.

For our title, and a full description of the burdened parcel, see deed recorded at Book 13764,
Page 154 at the Norfolk County Registry of Deeds.

BK 17706 PG 230

WITNESS our hands and seals this twenty-third day of October, 2002.

_____
MATTHEW J. McEVOY

_____
LEAH M. McEVOY

### COMMONWEALTH OF MASSACHUSETTS

Norfolk, ss.                                          October 23, 2002

Then personally appeared the above-named MATTHEW J. McEVOY and LEAH M. McEVOY and acknowledged the foregoing instrument to be their free act and deed, before me:

_____
Valerie J. Brownly, Notary Public

My Commission Expires:  February 21, 2003

BK 1 7 7 0 6 PG 2 3 1

### Schedule A
### Legal Description
### Grant of Utility Easement
### McEvoy to the Town of Wrentham

Land in Wrentham, Norfolk County, Massachusetts being shown on a plan entitled "Plan of Utility Easements Lake Pearl Area Wrentham, Massachusetts". Dated October 1, 2001, prepared for The Town of Wrentham, prepared by Wilson Associates Engineering & Survey, Inc., recorded herewith in Norfolk County Registry of Deeds, and bounded and described according to said plan as follows:

Beginning at a point on the shore of Lake Pearl at the Northwesterly corner of land now or formerly of Matthew and Leah McEvoy and the Southwesterly corner of land now or formerly of Steven Duffy

Thence; N83°46'31"E by the dividing line of land now or formerly of said Matthew and Leah McEvoy and land now or formerly of said Steven Duffy a distance of 59'+/- to a point

Thence; S81°04'25"E by land now or formerly of said Steven Duffy a distance of 44.74'to a point

Thence; N81°40'45"E by land now or formerly of said Steven Duffy a distance of 19.00'to a point in the Westerly sideline of a private way known as East Side Road

Thence; S07°07'14"E by theWesterly sideline of said East Side Road a distance of 30.00' to a point

Thence; S81°40'45"W by land now or formerly of said Steven Duffy a distance of 22.92'to a point

Thence; N81°04'25"W by land now or formerly of said Steven Duffy a distance of 45.30'to a point

Thence; S83°46'31"W by land now or formerly of said Steven Duffy a distance of 77'+/-to a point on the shore of Lake Pearl

Thence; Northesterly by the shore of Lake Pearl a distance of 37'+/- to the point of beginning

Containing 4,022+/- S.F.





**RECEIVED**
SELECTMEN'S OFFICE

JUL - 3 2003

TIME_____
WRENTHAM, MASS.

815 Eastside Road
Wrentham, MA 02093
July 2, 2003

Mr. James R. Merriam
Town Administrator
100 Stonewall Blvd.
Wrentham, MA 02093

Dear Mr. Merriam/Town of Wrentham,

The following letter outlines a list of grievances which we, Matthew J. and Leah M. McEvoy, 815 Eastside Road, Wrentham, hold the town of Wrentham liable and responsible. We feel that we have been misled and betrayed by the Board of Selectman as well as yourself in regards to the construction easement done on our property.

The town of Wrentham has either knowingly mislead us or has shown gross incompetence regarding the easement granted. We now feel like we have become prisoners in our own home. Such easement was granted with the Town Administrator's assessment of two weeks with minor disruption and the possibility of one to two days of major disruptions. On average, construction begins at 7:00 AM daily and ending most evenings at 7:00 PM. roughly this construction has been ongoing for about six weeks and counting. Work crews arrive for construction six out of the seven week days. Unfortunately at this time, there is no end in sight.

We have been advised to offer the Town of Wrentham a one time out of court settlement in the amount of $50,000. This agreed upon figure is based on the following grievances:

1. The Town failed to inform us of a twenty inch pipe running directly through a swimming area. This pipe has also eliminated access to our boat dock. Another recreational dock on our property has become a staging area engulfed by hundreds of sand bags. This major inconvenience has imposed on our family's' enjoyment of our lakefront property. Again, we were never informed of the situation.

2. No notification or information was offered in regards to the one foot Bentinite in the lake which stretches from our retaining walls across the lake water creating a murky and cloudy appearance.

3. The quality and quantity of our family time and personal time has been very limited. With work crews here twelve hours a day and six days a week, our quality family time with our four young sons has been greatly reduced to a few hours on Sundays. Due to the constant construction done on our property, personal vehicles need to be moved out of the drive way each morning and are parked further up the street. Construction traffic is often heavy and we have been faced with delays in getting to school, work and personal appointments.

*July 2, 2003*
*Page 2*

4. Many family functions normally held at our home annually had to be cancelled due to existing construction. Three spring birthdays, Mother's Day cookout, Memorial Day cookout, Fathers Day cookout, End of School Party and 4th of July Barbecue and water activities involving the lake have all had to be cancelled. A wedding rehearsal party also scheduled to be held on our property was forced to be relocated. Many cancellations having to be explained to disappointed children repeatedly...

5. The stenches of rotten hay bales and stagnant water as well as an unusual amount of dead fish in the lake have made the air quality here for our family intolerable.

6. Swimming conditions are becoming unsafe if one would even dare to venture in the water. Sink holes have appeared in swimming area and are not visible to young swimmers due to the amount of Bentinite in the water.

Although this letter could continue a bit further, we will conclude with our tremendous disappointment for the disregard to phone calls made to the Town Administrator. After three messages were left on two separate occasions, four days went by before a return phone call was received. In each case no follow up was ever made to our inquiries.

We request that immediate action be taken on this settlement. If this is not feasible, we request that the Town of Wrentham cease all construction immediately.


Sincerely,

Matthew J. McEvoy

Leah M. McEvoy



# WRENTHAM CONSERVATION COMMISSION
## 100 STONEWALL BOULEVARD
### WRENTHAM, MA 02093
#### 508-384-5417

July 21, 2003

Robert Reardon, Superintendent Department of Public Works
Town of Wrentham
100 Stonewall Blvd.
Wrentham, MA 02093

Subject: Lake Pearl Well

Dear Mr. Reardon;

This regards a violation of an existing Order of Conditions for the Lake Pearl well drilling and water pipe installation. Specifically, the deposition of a significant amount of drilling muds on top of the existing natural sediments in Lake Pearl at its southern inlet. I am writing to you, the applicant, with Weston & Sampson as your representative. The Commission recognizes that the subject violation is the result of an action by a subcontractor. The subject of the letter is removing bentonite drilling muds from the lake bottom and restoring the bottom to natural conditions. This letter will set a number of timetables for your contractors to comply with, will solicit information, and will direct actions to be performed under the attached Enforcement Order.

## Definitions
<u>Drilling mud</u> - the material used by the subcontractors to lubricate the drill bit. It consists of bentonite, montmorillonite and other additives.
<u>Endangered species</u> - Those areas within which are species listed by the State of Massachusetts which are endangered, threatened, or of special concern.
<u>Town</u> - The Town of Wrentham and its contractors.

## Background
Acting as the Agent for the Conservation Commission I first learned of, and inspected this area in mid-June. During the mid-June visit, I noted limited areas of breakout of drilling mud. Sampling showed the material to be one to six-inches deep and cover three areas of approximately 20 to 30 feet diameter. I contacted Bruce Adams of Weston and Sampson and asked that the material be removed - primarily to reduce the potential for impacts to dissolved oxygen levels. I agreed with Mr. Adams that any removal could wait until the drilling was finished because of the limited occurrence.

A call from Mr. Adams prompted my second site visit on July 5th. Mr. Adams said that the drilling was complete and that the drilling mud problem was now much worse. During that site visit I found that the area was now far more heavily contaminated. My field notes, recommending dredging, were forwarded to the Selectmen and the Conservation Commission. As the Agent, I decided not to pursue any Enforcement action as it appeared that all parties were amicable and interested in addressing the problem.

Wrentham Conservation Commission
Letter to: Robert Reardon, Wrentham DPW

July 21, 2003
Page 2 of 4

I next received a call from Mr. Adams on July 14th, and a follow-up letter on the 15th relaying the contractors desired method to clean the lake bottom. Mr. Adams later asked for a meeting at the site on the morning of July 19th. At that meeting Mr. Adams, you, Dan Dobbels and Brian Dorwart of Haley & Aldrich, and I inspected the area with the homeowner closest to the affected area, Mr. McEvoy. The Haley & Aldrich people were there to advise on the water pipe and not the mud. The water supply pipe has surfaced near the bank and will require additional work to put it to its correct depth.

During that site visit, it became apparent that no cleanup had happened since drilling ended. The drilling mud appears to have spread across the cove to a width of 150 to 200 feet. One area I sampled had approximately sixteen inches of gelatinous drilling mud. Another area, approximately twelve by twelve feet, had been test cleaned and appeared to be mud-free; however, stirring the sediment showed minor amounts of floc. I found evidence of drilling mud at the dock of Mr. Duffy approximately 100 feet from the pipeline. I found no evidence of drilling mud at the dock of Mr. Cervasio, approximately 200 feet from the pipeline.

On the 19th I also inspected the frac tank used for the separation of the drilling mud and water. I realize that this material is very difficult to settle. At the time I inspected the water it was still very turbid and had been sitting more than 24 hours. It appeared that the water was allowed to overflow the tank with the intention of leaving the mud on the bottom. This appears inadequate and it appears that any overflow will contaminate an adjacent wetland. I also watched some of the cleanup on a videotape in the possession of Mr. McEvoy. Mr. McEvoy further related that the persons performing the dredging said they had no experience in dredging.

**Points of Concern**

The Conservation Commission is concerned on three fronts:

1) The drilling muds contain biodegradable agents which may create an oxygen demand harmful to wildlife. The drilling mud is extremely unappealing to the touch and is an aesthetic issue.

2) The area is listed by the State as containing endangered aquatic species which raises further concern.

3) Third, the Commission is concerned that the contractor appears to be unmotivated in addressing the drilling mud issue. Initially, the Conservation Commission allowed some latitude due to the initial limited occurrence and the recognition that the drilling needed to be completed. However, it is noted that despite more than two weeks passing the contractor is "experimenting" with methods to do the cleaning. There are professionals who do this type of job, it appears that the contractor is attempting to do this "on-the-cheap."

What is distressing about the third issue is its affect on the endangered species and the potential for the drilling mud to be further spread into the lake since the cove is actually an inlet for Desert Brook into the Lake. The time for action was two weeks ago. Unfortunately, since the contractor does not appear to wish to resolve this issue the Conservation Commission must begin pursuing Enforcement options.

Wrentham Conservation Commission
Letter to: Robert Reardon, Wrentham DPW

July 21, 2003
Page 3 of 4

## Action being Taken by the Conservation Commission

The Conservation Commission is issuing an Enforcement Order directing you and your contractors to:

1) begin immediate efforts to remove the largest portions of the drilling mud;

2) develop and submit a plan to investigate and determine the horizontal and vertical extent of drilling mud occurrence and how it will be recovered;

3) implement the approved plan as soon as possible after it is approved by the Conservation Commission;

4) detail the method used to push the water pipe down to its proper depth outlining the methods used to protect the surrounding water from further siltation;

5) revisit this area over the next three years and determine if any areas of drilling mud exist and if so, recover them.

The details and schedule for these activities are set forth below. The Conservation Commission will also update the Department of Environmental Protection, the U.S. Environmental Protection Agency, and the U.S. Army Corps of Engineers with the actions to be taken to restore the lake bottom.

## Actions to be Taken by the Town and its Contractor

1. A contractor experienced in dredging and water separation shall be immediately hired. This contractor shall be mobilized to the site within one week from the date of this letter and begin removal operations closest to shore. Prior to the contractor beginning work they shall submit their work history and company information to the Commission. The contractor removing the drilling mud shall also submit to the Commission a work plan stating the methods used to recover the sediment nearest shore and the methods to separate the water from the mud and return that water to the lake. Failure to perform any of the above tasks on the date specified, July 28, 2003, shall entail a $150 per day fine, per the Wrentham Wetland Protection Bylaw, to be initiated on July 29, 2003.

2. Within three weeks of this letter the Town shall provide a plan to the Conservation Commission which outlines the methods, schedule and area over which the contractor shall investigate both sub-sediment and on the sediment surface. The Conservation Commission will review and approve or modify as needed. Following receipt of the Commission's approval or modification the plan will be implemented. Failure to do so shall entail a $150 per day fine to be initiated on August 12, 2003.

3. Once the area is cleaned, appropriate testing for drilling muds will be conducted. The contractor will submit a report detailing the amount of drilling mud recovered and its potential to exist in the lake sediments both on the surface and in the subsurface in discreet pockets. This report will be referenced as to sources and submitted before September 5, 2003. Moreover, the Town will inspect and test this area on an annual basis for a period of three years and remove any drilling muds which are located.

Wrentham Conservation Commission
Letter to: Robert Reardon, Wrentham DPW

July 21, 2003
Page 4 of 4

The Commission is still researching the potential long-term impacts and may issue further Enforcement Actions designed to remedy the situation. The Commission regrets the need to take this action and only wishes to see the lake bottom restored to its original condition. If you have any questions please call the Agent, Darryl Luce at 508-384-5417.

Sincerely,

Darryl Luce, Agent
Wrentham Conservation Commission
        cc:
        Wrentham Board of Selectmen
        Sgt Gillespie, Wrentham Police
        MADEP SE Regional Office
        U.S. Environmental Protection Agency, Region 1
        U.S. Army Corps of Engineers

10/01/03  13:30  FAX 5083845403          TOWN OF WRENTHAM                    ☑02

LAW OFFICE OF

# DANIEL R. SEIGENBERG

128 School Street                                    Telephone:    (508) 668-9800
Walpole Massachusetts 02081                          Facsimile **RECEIVED**(508) 668-1581

                                                     SELECTMEN'S OFFICE

                                                     OCT   1 2003

                                                     TIME_____
                        September 30, 2003                WRENTHAM, MASS.


James R. Merriam, Town Administrator
Town of Wrentham
100 Stonewall Blvd.
Wrentham, Massachusetts 02093

RE:    Matthew and Leah McEvoy

Dear Mr. Merriam:

        I am in receipt of your correspondence dated September 4, 2003. While I appreciate you
acknowledging that the Board of Selectmen will assess the construction impacts upon the McEvoys and will
take whatever steps it deems appropriate to address any temporary loss of use and enjoyment, your
correspondence fails to specifically mention what additional compensation, if any, the Board will award to the
McEvoys. Your correspondence further fails to even acknowledge that the Board is of the opinion that the
McEvoys are entitled to any additional compensation.

        Given your correspondence and the lack of any action by the Board of Selectmen relative to the
McEvoys' situation, the McEvoys were upset to learn that the clean-up plan calls for utilization of their
property. It is my understanding that the Army Corp. of Engineers, has approved a work plan for remediation
of the bentonite slurry and to correct the improper installation of the water pipeline. Under the terms of the
approved plan, pipes are to be placed on the McEvoy property with pipes to be located in the general vicinity
of their driveway. This plan is unacceptable to the McEvoys. The Town of Wrentham has no legal authority
to utilize the McEvoys' property relative to a clean-up. It is insulting that the Board did not even advise the
McEvoys of the Board's intention relative to the clean-up. I request that you or the Board advise me,
specifically, of the planned use of the McEvoys' property and the duration of any planned use.

        In order for this remediation plan to go forward, utilizing the McEvoy property, there must be a
complete agreement with the McEvoys relative to the utilization of their property and the compensation that
will be paid to them for both, the anticipated use of the property and for the past impact and loss that the
McEvoys have already sustained. As I previously advised you, if the Board is going to discuss, at a public
meeting, the issues raised in this correspondence and the issues affecting the McEvoys, I would appreciate
advanced notification of the date and time of the hearing so that the McEvoys might attend. In fact,

James R. Merriam, Town Administrator
The McEvoy Matter
September 30, 2003
Page Two

it is my suggestion that the Board place the McEvoy situation on the agenda at one of the scheduled meetings so that this issue can be discussed.

Until a resolution of the McEvoys' claim, the Town of Wrentham, its agents, servants, employees, or contractors are not authorized to access the McEvoys' property. Any such action will constitute a trespass.

I would welcome the opportunity to discuss this matter with you.

Very truly yours,

Daniel R. Seigenberg

DRS:mad

cc: Matthew and Leah McEvoy
Joseph T. Curtain

# ANDERSON &KREIGER LLP

GEORGE A. HALL, JR.
ghall@andersonkreiger.com

October 7, 2003

By Fax: (508) 668-1581 - No Confirmation Copy to Follow
Daniel R. Seigenberg, Esq.
128 School Street
Walpole, MA 02081

     Re:   Matthew and Leah McEvoy

Dear Mr. Seigenberg:

Jim Merriam has forwarded to me a copy of your letter dated September 30, 2003 for a response.

First, let me reiterate that the Town regrets the fact that the direct-drilling process did not go as smoothly, and was not completed as expeditiously, as was hoped or expected. The complications in the project are regrettable for several reasons, not the least of which is the inconvenience to your clients and other residents of the area.

That being said, complications and delays associated with unforeseen conditions often affect construction projects of this magnitude, and the easement that the McEvoys conveyed to the Town was drafted to account for that possibility, by providing both an ample staging area for the project and ample time -- to December 31, 2003 -- for the completion of the work. It specifies that its purpose is not only to permit the use of the property for the installation of the water main under the McEvoy property, but also to facilitate the extension of that water main under the Desert Brook inlet to the opposite shore owned by the Town. In other words, the easement is explicit, and the McEvoys understood, that their property was to be used as a staging area to effect the water main crossing of the Desert Brook inlet.

While the duration of the project may have exceeded your clients' expectations, it was well within the scope of the easement that the Town bargained for and purchased. Given that the easement contains no express limitation on the scope of the construction activities that may take place on the McEvoy property other than the end-date of December 31, 2003, the fact that the McEvoys consider the construction activity that was necessary to respond to the unexpected subsurface conditions in the Desert Brook inlet to have been a nuisance does not entitle them to additional damages. *See, e.g., Michaelson v. Nemetz*, 4 Mass. App. Ct. 806, 806-807 (1976).

Printed on recycled paper

Daniel R. Seigenberg, Esq.
October 7, 2003
Page 2

The clean-up of the bentonite clay that was discharged to the Lake during the installation of the water main has to be considered an integral part of the construction process. Clean-up is an integral part of every construction project, whether or not the extent of the material to be cleaned up is consistent with what was planned. Your suggestion that this work is outside the scope of the easement, and that entry onto your clients' property by the Town would constitute a trespass, finds no support in the text of the easement or relevant case law. To the contrary, the fact that the staging of the direct-drilling process on your clients' property was substantially complete, except for clean-up, more than three months before the expiration of the construction easement is an indication that the Town's activities to date have been well within its rights under the easement.

As I understand it, the Town intends to conduct the removal of the bentonite clay, and to complete the installation of the water main by resetting it to achieve five feet of cover below the lake bed, using vacuum and/or pump equipment that will be mounted on a barge in the Desert Brook inlet. The easement over your clients' property will be used to run hoses and/or pipes from the barge to East Side Road, and over East Side Road to a lagoon being constructed on the Town's property. The contractor's employees will likely have to enter the easement area on foot to install and maintain the pipe. Aside from those activities, the Town will instruct the contractor to make every reasonable effort to avoid the use of the McEvoy property. We expect the work to start on the morning of Tuesday, October 14, 2003, and to continue for at least six weeks.

The Town expects the McEvoys to honor the terms of the easement and not to interfere with its rights under the easement. The McEvoys should be mindful that any interference with the foregoing activities may result in significant costs to the Town, in the form of a liability for increased charges from the contractor, and that the Town would have a right to seek recovery of those costs if its access to the easement is unlawfully impeded. While the Town has no desire to get involved in that kind of dispute with the McEvoys, and would like to resolve the matter fairly and amicably, it cannot allow the McEvoys' desire for more compensation to interfere with the timely completion of the project.

The Town Administrator, the DPW Superintendent and I would be pleased to meet with you and your clients this week, before the commencement of work, to answer any questions you may have about the project, to discuss your clients' specific concerns, and to try to formulate ways to minimize any further intrusions on their privacy by the Town's use of the easement. If you would like to arrange such a meeting, please call me and I will try to make myself in Wrentham at your convenience.

If you want to arrange such a meeting, or if you would like to discuss this with me more generally, please feel free to call me. If you plan to seek any kind of judicial intervention in the matter, I would appreciate it if you would give me as much advance notice as possible. In any



ANDERSON & KREIGER LLP

Printed on recycled paper

Daniel R. Seigenberg, Esq.
October 7, 2003
Page 3


event, I would appreciate it if you would consider this matter one in which the Town is represented by counsel, and that further communications with the Town on the subject be made through my office.

Sincerely,

George A. Hall, Jr.

cc:     James R. Merriam, Town Administrator (by fax)
        Bob Reardon, Wrentham DPW (by fax)

wren\retainer\select\l\seigenberg001

ANDERSON & KREIGER LLP

Printed on recycled paper



**GENERAL CONTRACTORS**

103 Adams Street, Newton, Massachusetts 02458
Phone 617.527.1093
Fax 617.527.8421
Garage 617.244.9142
Garage Fax 617.243.3942
Web http://www.paolinicorp.com

October 29, 2003

**VIA FACSIMILE**

Bruce W. Adams, P.E., Vice President
Weston & Sampson Engineers, Inc.
Five Centennial Drive
Peabody, MA  01960-7985

Re:       **Town of Wrentham, Massachusetts,**
          **Lake Pearl and Crocker Pond Water Mains**
          **Contract No. 01-3**

Subject:  **McEvoy Easement**

Dear Mr. Adams:

On Thursday, October 23, 2003, Paolini Corp.'s ("Paolini") subcontractor, Coleman
Construction Company, Inc. ("Coleman") was in the process of laying suction and return lines in
connection with the bentonite removal activities.  During this work, Mr. Matt McEvoy demanded
that Coleman remove all materials and pipe from the easement area on his property (the
"Easement") and stated that he would deny contractors access to the Easement area.  Coleman
complied with Mr. McEvoy's demands and removed all materials and pipe from the Easement
area.

As you know, access to the McEvoy Easement area is critical to the bentonite removal work.
Restricted access to that Easement area has and will continue to cause Paolini to incur increased
costs and delay to the work.  As the Town's counsel acknowledged in a letter dated October 7,
2003 to the McEvoy's counsel, "any interference [by McEvoy] with the foregoing activities may
result in significant costs to the Town, in the form of liability for increases charges from the
contractor."  Regardless of whether Paolini and the Town disagree over whether the bentonite
removal is extra work for which Paolini must be compensated, there can be no question that
Paolini is entitled to compensation for the costs incurred as a result of restricted access and
interference in the Easement area in connection with that work.

Bruce W. Adams, P.E.
October 27, 2003
Page 2 of 2

Paolini requires access to the easement area immediately. Please advise Paolini in writing today as to how to proceed.

Very truly yours,

Joseph Curtin
General Manager

Cc:    Mr. James R. Merriam, Town Administrator (via fax)
       Robert Reardon, DPW Superintendent (via fax)
       Mr. Fred Coleman (via fax)



**Via fax (617) 527-8421**

October 24, 2003

Paolini Corporation
Joe Curtin
103 Adams Street
Newton, MA 02458

Dear Joe,

Please be advised that the issue of the easement is still in total disagreement.

Yesterday, Thursday October 23, 2003, Matt insisted that we remove all materials and pipe from his land. This has been completed.

No further work within this easement will be done without your written agreement for total indemnification from legal action and liability asserted against Coleman Construction Company, Inc, by any parties involved with this project, including but not limited to the Town of Wrentham, Weston & Sampson, Paolini Corporation, any abutters to work areas, any state, local or federal conservation members, water resource boards, bonding company, or any other subcontractors. If legal action is brought upon Coleman Construction Company, Inc, Paolini will bear all costs associated with it, including any attorneys fees incurred by Coleman, and will pay any judgment or settlement.

Thank you,
Coleman Construction Company, Inc

Fred Coleman
President