UNITED STATES DISTRICT COURT
COMMONWEALTH OF MASSACHUSETTS

```
                                          )
TOWN OF WRENTHAM,                         )
     Plaintiff/Defendant-In-Counterclaim  )
                                          )
v.                                        )
                                          )   C.A. No.: 05-10042-DLW
MATTHEW McEVOY and LEAH McEVOY,           )
     Defendants/Plaintiffs-In-Counterclaim)
                                          )
v.                                        )
                                          )
JOHN ZIZZA,                               )
     Third-Party Defendant                )
                                          )
```

FILED IN CLERKS OFFICE
2005 JAN 27  P 2:05
U.S. DISTRICT COURT
DISTRICT OF MASS.

SCANNED
DATE: 2/1/05
BY: DH

## DEFENDANT-IN-COUNTERCLAIM TOWN OF WRENTHAM AND PUTATIVE THIRD-PARTY DEFENDANT JOHN ZIZZA'S OPPOSITION TO PLAINTIFFS-IN-COUNTERCLAIM MATTHEW AND LEAH MCEVOY'S MOTION TO REMAND
### (styled as Opposition to Notice of Removal)

Now come the Defendant-in-counterclaim Town of Wrentham (hereinafter "Wrentham") and putative Third-Party Defendant, John Zizza, and hereby Oppose Plaintiffs-in-Counterclaim Matthew and Leah McEvoy's Motion to Remand.[1] As grounds therefore, the Defendant-in-Counterclaim and Third-Party Defendant state as follows:

1. John Zizza (hereinafter "Zizza") is named as Third-Party Defendant by the Plaintiffs-in-Counterclaim, Matthew McEvoy and Leah McEvoy (hereinafter "McEvoys"), in a proposed Amended Counterclaim, received by service dated December 13, 2004, naming Third-Party

---

[1] The Motion is styled "Opposition to Notice of Removal," however this Court may treat it as a Motion to Remand. See Christopher v. Stanley-Bostitch, Inc., 240 F.3d 95, 97 (1st Cir. 2001) (stating plaintiff's "opposition to defendant's request for removal" was "effectively a motion to remand [under] 28 U.S.C. § 1447(c)"). A motion to remand the case based on any defect other than subject matter jurisdiction must be made within 30 days after the filing the motion for removal under 28 U.S.C. § 1447, and any objections to the propriety of a removal should take the form of a motion to remand in federal court. Ciotti v. Aetna Cas. & Sur. Co., 511 F.Supp. 647, 648 (E.D.Pa.1981).

Defendant as an additional party. See Motion to Amend Counterclaim and accompanying proposed Amended Answer and Counterclaim (Attached hereto as **Exhibit A**).

2. Zizza timely filed a Notice of Removal of the case with the Federal Court on January 7, 2005.

3. Under 28 U.S.C. § 1446(b), the time for removal "if the case stated by the initial pleading is not removable" is "within thirty days after receipt of by the defendant, through service or otherwise, of a copy of the amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." (emphasis added); see also Murphy Bros. v. Michetti Pipe Stringing, Inc., 526 U.S. 344 (1999).

4. This is an action in which the McEvoys allege, among other things, that Zizza violated the McEvoys' civil rights as actionable under 42 U.S.C. § 1983, specifying inter alia, a violation of the Fourth Amendment of the U.S. Constitution. See Exh. A ¶¶ 49; 56-58.

5. Because this case involves federal constitutional issues and claims for relief under federal law, the United States District Court has original jurisdiction pursuant to 28 U.S.C. § 1331.

6. The entire case may be removed because a separate and independent claim or cause of action within the jurisdiction of 28 U.S.C. § 1331 is joined with one or more otherwise non-removable claims or causes of action. See 28 U.S.C. § 1441(c).

7. Federal Courts have held that removals by a third-party defendant is not premature despite the fact that, at the time of removal, the state court had not granted leave to serve the third-party defendant. See, e.g. Delgado v. Shell Oil Co., 231 F.3d 165, 177 (5th Cir. 2000) cert. denied 532 U.S. 972 (where third-party defendant was a foreign state). The Delgado Court reasoned that service of process is not an absolute prerequisite to removal under 28 U.S.C.A.

§§ 1446(b) and 1448. Id. (also holding that the removal statute pertaining to Foreign Sovereign Immunity Act "FSIA" removal does not differentiate between parties who have been served and those who have not); see also Webster v. Sunnyside Corp., 836 F.Supp. 629 (D.C.Iowa 1993) (removal period begins as soon as defendants receive motion to amend not when motion is granted).

8.  In Massachusetts, the Federal Court's have impliedly recognized the ability of third-party defendants to remove cases. See Murphy v. Newell Operating Co., 245 F.Supp.2d 316, 319 (D.Mass. 2003) (discussing timing of third-party removal of case, but holding other defendants did not timely consent to removal, violating the rule of unanimity); see also Plymouth Savings Bank v. I.R.S., 187 F.3d 203 (1st Cir. 1999) (reversing summary judgment for third party defendant that removed case as stated in Plymouth Savings Bank v. Jordan Hosp., 1998 WL 718120, 82 A.F.T.R.2d 98-5448 (D.Mass. Jul 08, 1998)).

9.  The First Circuit has rejected a similar attempt to remand a case where the removal was allegedly "premature." See Federal Deposit Insurance Corporation v. Otero, 598 F.2d 627, 633 n. 7 (1st Cir.1979) (holding the defendants' petition for removal was timely filed where the FDIC intervened as a party plaintiff, thus giving rise to federal question jurisdiction). The Otero Court rejected "as frivolous" appellant's claim that the removal petition was untimely filed under 28 U.S.C. § 1446(b) where appellant claimed that although the defendants had been given notice in November 1977 that the FDIC had purchased the defendants' obligations from the plaintiff bank as part of a reorganization plan, the 30-day removal clock did not start ticking until the FDIC actually intervened in February 1978. Id.

10. The Otero reasoning has been applied to reject motions to remand other cases removed

before the FDIC was a formal party, interpreting the federal statute creating the FDIC powers. See, e.g. Structural Systems, Inc. v. Sulfaro, 687 F.Supp. 22 (D.Mass.1988) (allowing the FDIC to remove within 30 days after being formally substituted as a party). In Structural Systems, after the complaint was filed, the defendant became insolvent and the FDIC was appointed receiver of its assets. The court held that federal jurisdiction was not defeated by the fact that the FDIC was not yet formally a party to the action, stating "[w]hile formal intervention or substitution of the FDIC prior to the petition for removal is desirable, it is not necessary to support jurisdiction under 12 U.S.C. § 1819(4)." Structural Systems, 687 F.Supp. at 23 (citation omitted).

11. Furthermore, although there is precise language in the proposed Amended Complaint setting forth federal claims, Defendants are permitted under the statute to remove a case upon receipt of a "Motion" or "other paper," indicating a basis for federal jurisdiction. See 28 U.S.C. § 1446 (b). Instructive is one Court's survey of what may constitute "other paper" permitting removal. See Cabibbo v. Einstein/Noah Bagel Partners, L.P., 181 F.Supp.2d 428 (E.D.Pa.2002) (stating "other paper" under § 1446(b) may include: attorney correspondence (Broderick v. Dellasandro, 859 F.Supp. 176, 179 (E.D.Pa.1994)); a statement of damages (Vartanian v. Terzian, 960 F.Supp. 58, 62 (D.N.J.1997)); deposition transcripts (S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir.1996)); answers to interrogatories (Leboeuf v. Texaco, 9 F.Supp.2d 661, 665 (E.D.La.1998)); and responses to requests for admissions (Johnson v. Dillard Dept. Stores, Inc., 836 F.Supp. 390, 391 (N.D.Tex.1993)); In another case, a settlement demand letter qualified as "other paper." Dozier v. Kentucky Finance Co., Inc., 319 F.Supp.2d 716, 718 (S.D.Miss.2003) ("[A] settlement letter can be

sufficient to constitute an 'other paper' which makes a case removable where the settlement request demands an amount over the jurisdictional minimum.") Given the case law interpreting "other paper" permitting removal, certainly a Motion to Amend a Complaint explicitly containing federal claims provides grounds for removal.

12. In addition, Zizza could lose his right to remove this case if he failed to timely act within thirty days of receipt of the Motion to Amend. It has been consistently held that a state court defendant may lose or waive the right to remove a case to a federal court by taking substantial action in state court thereby indicating a willingness to litigate under the state's jurisdiction before filing a notice of removal with the federal court. See Plymouth & Brockton St. Ry. Co., v. Leyland, 422 Mass. 526, 531 (1996); see also, Scholz v. RDV Sports, Inc., 821 F.Sup. 1469, 1470 (M.D.Fla.1993) (the defendant waived its right to remove by proceeding to defend the action in state court or otherwise invoking the process of the state court). Long ago, the U.S. Supreme Court held that a defendant cannot "experiment on his case in the state court, and, upon an adverse decision, then transfer it to Federal Court." Rosenthal v. Coates, 148 U.S. 142, 147 (1893).

WHEREFORE, the Defendant-in-Counterclaim Town of Wrentham and Third-Party Defendant, John Zizza, respectfully requests this Honorable Court to Deny the Plaintiff-in-Counterclaim's Motion to Remand.

Respectfully submitted,
Defendant in Counterclaim,
TOWN OF WRENTHAM, and
Third-Party Defendant,
JOHN ZIZZA,
By their attorneys,
Pierce, Davis & Perritano, LLP

_____
John J. Cloherty III, BBO# 566522
Ten Winthrop Square
Boston, MA 02110
(617) 350-0950

I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each (other) party by mail (by hand) on 1/26/05.

_____

# EXHIBIT "A"

COMMONWEALTH OF MASSACHUSETTS

| | |
|---|---|
| NORFOLK, SS | SUPERIOR COURT DEPARTMENT<br>CIVIL ACTION NO. 03-2018 |
| TOWN OF WRENTHAM,<br>  Plaintiff | * <br> * <br> * |
| v. | * <br> * |
| MATTHEW McEVOY and LEAH McEVOY,<br>  Defendants | * <br> * <br> * <br> * |
| and | * <br> * |
| MATTHEW McEVOY and LEAH McEVOY,<br>  Plaintiffs-in-Counterclaim | * <br> * <br> * <br> * |
| v. | * <br> * |
| TOWN OF WRENTHAM and JOHN ZIZZA,<br>  Defendants-in-Counterclaim | * <br> * <br> * |

### AMENDED ANSWER OF DEFENDANTS, MATTHEW McEVOY AND LEAH McEVOY TO VERIFIED COMPLAINT AND COUNTERCLAIM

The Defendants, Matthew McEvoy and Leah McEvoy (hereinafter referred to as the McEvoys) respond to the Verified Complaint as follows:

### PARTIES

1.  Admitted.

2.  Admitted.

### FACTS

3.  Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 3 of the Complaint.

1

4. Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 4 of the Complaint.

5. Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 5 of the Complaint.

6. Defendants admit that the Wrentham Board of Selectmen offered the sum of Twenty-One Thousand Five Hundred ($21,500.00) Dollars to the Defendants, Matthew and Leah McEvoy for two easements between Eastside Road and Desert Brook Inlet of Lake Pearl, that there was a permanent easement for the construction, installation, maintenance, repair and replacement of subsurface water mains and a second temporary construction easement expiring on January 1, 2004. Defendant denies the remaining allegations contained in Paragraph 6 of the Complaint.

7. Defendants deny the characterization of the easements but admit the remaining allegations contained in Paragraph 7 of the Complaint.

8. Admitted.

9. Admitted.

10. Defendants admit that the drilling process required several attempts but they are without information or knowledge sufficient to form a belief as to the precise dates of said drilling. Defendants deny that the fourth and final attempt was completed on or about July 3, 2003. Defendants deny the remaining allegations contained in Paragraph 10 of the Complaint.

11. Defendants admit that during the direct drilling process Betinit clay escaped into the lake but deny the remaining allegations contained in Paragraph 11 of the Complaint.

12. Defendants admit that on or about July 3, 2003, the McEvoys made an offer of settlement to the Town of Wrentham in the amount of Fifty Thousand ($50,000.00) Dollars and that a true copy of the McEvoy correspondence is attached to the Complaint as Exhibit "D." Defendants deny the remaining allegations contained in Paragraph 12 of the Complaint and further state that as to the contents of their letter, the letter speaks for itself.

13. Defendants deny that it was on or about July 7, 2003 after the July 4th Holiday weekend but admit the remaining allegations contained in Paragraph 13 of the Complaint and further state that is was Matthew

        McEvoy who made the initial observation that the top of the pipe was visible and did not comply with the specifications and so advised the Town.

14. Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 of the Complaint.

15. Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 of the Complaint.

16. Defendants admit that on or about September 30, 2003 they sent to the Town, through their counsel, correspondence marked Exhibit "F" to the Complaint and that the correspondence dated October 7, 2003 also marked as Exhibit "F" to the Complaint is the Town's response. Defendants deny the remaining allegations contained in Paragraph 16 of the Complaint and further state that the terms of said correspondence speak for themselves.

17. Denies.

## COUNT I

### TRESPASS/BREACH OF CONTRACT FOR EASEMENT

18. Defendants restate their answers to Paragraphs 1 through 17 of the Complaint as if set forth herein.

19. Denied.

20. Denied.

21. Denied.

## COUNT II

### DECLARATORY AND INJUNCTIVE RELIEF

22. Defendants restate their answers to Paragraphs 1 through 21 of the Complaint as if set forth herein.

23. Admitted.

24. Denied.

25. Denied.

26. Denied.

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### COUNTERCLAIM

1. Defendants/Plaintiffs-in-Counterclaim, Matthew and Leah McEvoy are individuals residing at 815 Eastside Road, Wrentham, Norfolk County, Massachusetts.

2. The Plaintiff/Defendant-in-Counterclaim, Town of Wrentham, is a municipal corporation with its offices at 100 Stonewall Blvd., Wrentham, Norfolk County, Massachusetts.

3. Defendant-in-counterclaim, John Zizza, is an individual who resides in Wrentham, Norfolk County, Massachusetts.

4. The McEvoys at all times material thereto, have been and are the owners of the property known as 815 Eastside Road, Wrentham, Massachusetts.

5. In 2002 the McEvoys were contacted by James Merriam, the Town Administrator for the Town of Wrentham, relative to granting the Town an easement in order for them to lay a pipe for an extension of a new water main for the Town.

6. On or about October 23, 2003, the McEvoys executed a Utility and Construction Easement granting to the Town of Wrentham a utility easement under a portion of their property and also a temporary construction easement relative to the construction and installation of said water main. A copy of said Utility and Construction Easement is attached to Plaintiff's Complaint and marked Exhibit "B."

7. Prior to executing the Utility and Construction Easement, James Merriam, acting in behalf of the Town of Wrentham, represented to the McEvoys that the construction work on their property would only take a few weeks and would be completed before Memorial Day 2003.

8. James Merriam also represented that the construction work would only take approximately two weeks with minor disruptions and possibly one or two days with major disruptions.

9. The construction work began in the spring of 2003 and continued throughout much of the summer. On average, construction work began at 7:00 a.m. daily and ended most evenings at 7:00 p.m. Work crews worked six out of seven days of the week.

10. The disruption to the McEvoys and their family was quite significant.

11. As a result of the construction project, approximately twenty large and mature trees had to be removed from the McEvoys property. In addition a number of sinkholes and underground cave-ins have occurred and other damage has occurred to the McEvoys' property.

12. During the construction, the Town's contractor set up on the Town's new well site on the left side of Desert Brook Inlet and on the McEvoys' property and on the opposite shore for the direct drilling process relative to the installation of the new water main. The drilling process had numerous unsuccessful attempts. As a result of the drilling process a large amount of bentinite clay was caused to be deposited into Lake Pearl and the immediate vicinity of the McEvoys' Property.

13. The water main pipe constructed by the Town of Wrentham and its contractors is not located within the easement area granted by the McEvoys but is located outside the easement area and on the McEvoys' property.

14. The deposit of large quantities of bentinite clay into the lake was not an expected or normal result of the drilling process.

15. In September 2003, the Town of Wrentham obtained approval from the Army Corp of Engineers for a work plan for remediation of the bentinite clay from the lake and to correct the improper installation of the water main.

16. Under the terms of said plan, pipes were placed onto the McEvoys' property with pipes located in the general vicinity of their driveway. Neither the Board of Selectmen nor the Town Administrator advised the McEvoys of their plan to utilize their property relative to the clean up.

17. The Town of Wrentham, its agents, servants, or employees have performed said work.

18. The remediation and removal of the bentinite clay from Lake Pearl and the utilization of the McEvoys' property relative thereto was not within the scope of the Utility and Construction Easement.

19. Based on the construction project, approximately 20 large and mature trees were caused to be removed from the McEvoys' property. These trees had acted as a buffer between the McEvoys' property and their neighbor's property. In addition, as a result of the construction project, a number of sinkholes and underground cave-ins have occurred on the McEvoys' property.

## COUNT I

## TRESPASS

20. The McEvoys reallege the allegations contained in Paragraphs 1 through 18 of the Counterclaim as if set forth herein.

21. The Town of Wrentham, its agents, servants, and employees, without lawful authority and in breach of the terms of the Utility and Construction Easement, have entered upon the real estate of the McEvoys and committed a trespass thereon.

## COUNT II

## NEGLIGENT MISREPRSENTATIONS

22. The McEvoys reallege the allegations contained in Paragraphs 1 through 21 of the Counterclaim as of set forth herein.

23. The Town of Wrentham negligently misrepresented to the McEvoys the nature, scope, and duration of the construction project relative to the installation of the water main.

24. Said representations made by the Town of Wrentham to the McEvoys were false.

25. The construction work relative to the project began in the spring of 2003 and continued throughout much of the summer. On average construction began at 7:00 a.m. daily and ended most evenings at 7:00 p.m. Work crews worked approximately six of the seven days of the week.

26. In contrast to the minor disruptions as represented by the Town of Wrentham, the construction project had significant and still has significant impact on the McEvoys, including the cancellation of many family and social functions. The Town of Wrentham and its contractors installed a 20" pipe running directly through the McEvoys swimming area and said pipe eliminated access to their boat dock. Another recreational dock on the McEvoys' property became a staging area engulfed by hundreds of sandbags.

27. Based on the construction work there was a stench of rotten hay bales, stagnant water, and an unusual amount of dead fish in the lake, which made the air quality around the McEvoys' house intolerable for the family.

28. Access to the McEvoys' property has been and will be significantly disrupted.

29. Based on and reliance on the misrepresentations of the Town of Wrentham, the McEvoys entered into the Utility and Construction Easement.

30. The McEvoys relied on the misrepresentations to their detriment.

31. As a result of the negligent misrepresentations, the McEvoys have suffered damages.

## COUNT III

## NEGLIGENCE

32. The McEvoys reallege the allegations contained in Paragraphs 1 through 31 of the Counterclaim as if set forth herein.

33. The Town of Wrentham, its agents, servants, or employees were negligent relative to the performance of the construction project.

34. As a result of the negligence of the Town of Wrentham, its agents, servants, or employees the McEvoys have been damaged.

## COUNT IV

## DECLARATORY RELIEF

35. The McEvoys reallege the allegations contained in Paragraphs 1 through 34 of the Counterclaim as if set forth herein.

36. There is an actual controversy between the Town of Wrentham and the McEvoys regarding the scope of the Utility and Construction Easement and the location of the water main, and the proposed clean up and utilization of the McEvoys' property.

## COUNT V

## TAKINGOF PROPERTY

37. The McEvoys reallege the allegations contained in Paragraphs1 through 36 of the Counterclaim as if set forth herein.

38. The actions of the Town of Wrentham constitute a taking of property and/or inverse condemnation under G.L. c. 79.

39. As a result of said taking and/or inverse condemnation the McEvoys have suffered damage.

## COUNT VI

## VIOLATION OF 42 U.S.C.A. SECTION 1983
(Town of Wrentham)

40. The McEvoys reallege the allegations contained in Paragraphs 1 through 39 of the Counterclaim as if set forth herein.

41. Prior to the McEvoys executing the utility and construction easement on or about October 23, 2002, certain representatives of the Town of Wrentham expressed their disagreement as to the amount of compensation to be granted to the McEvoys for the execution of the utility and construction easement.

42. On October 27, 2002, four days after the utility and construction easement was executed, Lisa McDonald, the Town of Wrentham Assessor, without the permission of the McEvoys and without advance notice to the McEvoys and without right, entered the McEvoys' property and conducted an inspection of the McEvoys' property.

43. Based on said inspection, the Town of Wrentham increased the assessment of the McEvoys' property by approximately $60,000.00 resulting in a significant increase in the McEvoys' real estate tax bill.

44. Upon information and belief, this assessment was undertaken based on the specific direction of Town of Wrentham Selectman, John Ziza.

45. On or about June 27, 2003, Matthew McEvoy and James Merriam, then Town Administrator for the Town of Wrentham, met at the McEvoys' property and there was a discussion relative to the McEvoys request for additional compensation based on the duration and extent of the

construction work being performed on the McEvoys' property and the resulting significant disruption to the McEvoys. Mr. McEvoy advised Mr. Merriam that he was seeking additional compensation from the Town of Wrentham.

46. Upon information and belief James Merriam advised the Board of Selectmen of the McEvoys' request for additional compensation.

47. On or about June 30, 2003, Lisa McDonald, once again at the direction of John Zizza, returned to the McEvoys' property without notice and without permission of the McEvoys and made an illegal inspection of the McEvoys' property.

48. Based on Lisa McDonald's inspection of the property the assessed value of the McEvoys' property was increased by approximately $90,000.00 with the resulting significant increase in the real estate taxes to be paid by the McEvoys.

49. Said inspections of the McEvoys' property were a violation of law and constitute illegal searches and seizures of the McEvoys' property in violation of the Fourth Amendment of the United States Constitution and Article 14 of the Massachusetts Declaration of Rights. Said inspections and reevaluations of the McEvoys' property were in retaliation for the McEvoys' initial attempt to seek compensation for the grant of the utility and construction easement and thereafter based on the McEvoys' request for additional compensation from the Town of Wrentham based on the construction work that was performed in the Spring and Summer of 2003.

50. The actions of the Town of Wrentham, its agents, servants, or employees, constitute a violation of the McEvoys' civil rights and a violation of 42 U.S.C.A., Section 1983.

51. As a result of said violations the McEvoys have been injured.

## COUNT VII

### VIOLATION OF MASSACHUSETTS CIVIL RIGHTS ACT
(Town of Wrentham)

52. The McEvoys reallege the allegations contained in Paragraphs 1 through 51 of the Counterclaim as if set forth herein.

53. The McEvoys' exercise and enjoyment of rights secured by the Constitution the United States and/or the Commonwealth, have been interfered with or attempted to be interfered with by the actions of the Town of Wrentham, its agents, servants, or employees.

54. Said interference or attempted interference was by threats, intimidation, or coercion.

9

55. As a result of said violation the McEvoys have been injured.

## COUNT VIII

### VIOLATION OF 42, U.S.C.A., SECTION 1983

(John Zizza)

56. The McEvoys reallege the allegations contained in Paragraphs 1 through 55 of the Counterclaim as if set forth herein.

57. The actions of John Zizza constitute a violation of the McEvoys' civil rights and a violation of 42 U.S.C.A., Section 1983.

58. As a result of said violations the McEvoys have been injured.

## COUNT IX

### VIOLATION OF MASSACHUSETTS CIVIL RIGHTS ACT
(John Zizza)

59. The McEvoys reallege the allegations contained in Paragraphs 1 through 55 of the Counterclaim as if set forth herein.

60. The McEvoys exercise and enjoyment of rights secured by the Constitution of the United States and/or the Commonwealth have been interfered with or attempted to be interfered with by the actions of John Zizza.

61. Said interference or attempted interference was by threats, intimidation, or coercion.

62. As a result of said violations, the McEvoys have been injured.

WHEREFORE, the Defendants/Plaintiffs-in-Counterclaim, Matthew McEvoy and Leah McEvoy, respectfully request that this Court:

1. Enter judgment in favor of the McEvoys against the Town of Wrentham and that monetary damages be awarded to the McEvoys, on Counts I-VII of the Counterclaim.

2. Enter judgment in favor of the McEcoys against John Zizza and that monetary damages be awarded to the McEvoys on Counts VIIII and IX.

3. Award to the McEvoys interest and costs of this action.

4. Declare that the Town of Wrentham has exceeded the scope of its easement rights and, particularly that the remediation of the betinite clay and activities related thereto are not within the scope of the Town of Wrentham's construction easement.

5. Award the McEvoys their reasonable attorney's fees.

6. Award such other relief as this Court deems, just and proper.

> Respectfully Submitted,
> MATTHEW McEVOY and
> LEAH McEVOY,
> Defendants/Plaintiffs-in-Counterclaim
> By Their Attorney
>
> LAW OFFICE OF
> DANIEL R. SEIGENBERG

__December 13, 2004__
Dated:

Daniel R. Seigenberg, Esquire
128 School Street
Walpole, MA 02081
(508) 668-9800
BBO # 451100

DEFENDANTS/PLAINTIFFS-IN-COUNTERCLAIM DEMAND TRIAL BY JURY ON ALL ISSUES.

11