**NORFOLK SUPERIOR COURT**
**Case Summary**
**Civil Docket**

*FILED*
*IN CLERKS OFFICE*

05-10042 DPW

## NOCV2003-02018
## Wrentham v McEvoy et al

2005 FEB 14 P 3:36

U.S. DISTRICT COURT
DISTRICT OF MASS

| | | | | |
|---|---|---|---|---|
| **File Date** | 10/29/2003 | **Status** | Disposed: transfered to other court (dtrans) | |
| **Status Date** | 01/13/2005 | **Session** | B - Civil B | |
| **Origin** | 1 | **Case Type** | D13 - Declaratory judgement (231A) | |
| **Lead Case** | | **Track** | A | |

| | | | | | |
|---|---|---|---|---|---|
| **Service** | 01/27/2004 | **Answer** | 03/27/2004 | **Rule12/19/20** | 03/27/2004 |
| **Rule 15** | 01/21/2005 | **Discovery** | 12/17/2005 | **Rule 56** | 02/15/2006 |
| **Final PTC** | 06/15/2006 | **Disposition** | 10/28/2006 | **Jury Trial** | Yes |

### PARTIES

**Plaintiff**
Town of Wrentham
Active 10/29/2003

**Private Counsel 544493**
George A Hall Jr
Anderson & Kreiger LLP
43 Thorndike Street
East Cambridge, MA 02141
Phone: 617-252-6575
Fax: 617-252-6899
Active 10/29/2003 Notify

**Private Counsel 566522**
John J Cloherty III
Pierce Davis & Perritano
10 Winthrop Square
5th floor
Boston, MA 02110-1264
Phone: 617-350-0950
Fax: 617-350-7760
Active 12/04/2003 Notify

**Defendant**
Matthew McEvoy
Served: 10/30/2003
Answered: 11/12/2003
Answered 11/12/2003

**Private Counsel 451100**
Daniel R Seigenberg
L/O of Daniel R Seigenberg
2 Commercial St
Sharon, MA 02067
Phone: 781-784-8800
Fax:
Active 11/13/2003 Notify

**Defendant**
Leah McEvoy
Answered: 11/13/2003
Answered 11/13/2003

*** See Attorney Information Above ***

MAS-20041213
foster:i

Case 1:05-cv-10042-DPW Commonwealth of Massachusetts 4/2005    Page 2 of 35

02/10/2005
10:11 AM

NORFOLK SUPERIOR COURT
Case Summary
Civil Docket

## NOCV2003-02018
## Wrentham v McEvoy et al

**Plaintiff/counterclaim**
Matthew  McEvoy
Active 12/23/2003

**Plaintiff/counterclaim**
Leah  McEvoy
Active 12/23/2003

**Defendant/counterclaim**
Town of  Wrentham
Active 12/23/2003

**Other interested party**
John  Zizza
Active 01/13/2005

**Private Counsel 566522**
John J Cloherty III
Pierce Davis & Perritano
10 Winthrop Square
5th floor
Boston, MA 02110-1264
Phone: 617-350-0950
Fax: 617-350-7760
Active 01/13/2005 Notify

### ENTRIES

| Date | Paper | Text |
|------|-------|------|
| 10/29/2003 | 1.0 | Complaint  entry fee $275 $90 for tro  tro to issue under prayer I order of notice under prayer I for hearing on preliminary  injunction ret Nov 5, 2003 at 2:00pm Gants J |
| 10/29/2003 | | Origin 1, Type D13, Track A. |
| 10/29/2003 | 2.0 | Civil action cover sheet filed |
| 10/29/2003 | | average track notice sent to plff attorney |
| 10/31/2003 | | ONE TRIAL review by Clerk, case is to remain in the Superior Court |
| 11/12/2003 | 8.0 | SERVICE RETURNED: Matthew McEvoy(Defendant), in hand on 10/30/03 |
| 11/13/2003 | 3.0 | Plaintiff's Memorandum in support of its request for a Preliminary Injunction, and in opposition to Defendant's request for a Preliminary Injunction  rec'd 11/5/03 |
| 11/13/2003 | 4.0 | ANSWER: Matthew McEvoy(Defendant) and counterclaim and jury claim rec'd 11/5/03 |
| 11/13/2003 | | ANSWER: Leah McEvoy(Defendant) and counterclaim and jury claim  rec'd |

MAS-20041213
fostervi

Case 1:05-cv-10042-DPW    Commonwealth of Massachusetts    Filed 02/14/2005    Page 3 of 35

02/10/2005
10:11 AM

NORFOLK SUPERIOR COURT
Case Summary
Civil Docket

## NOCV2003-02018
## Wrentham v McEvoy et al

| Date | Paper | Text |
|------|-------|------|
| | | 11/5/03 |
| 11/13/2003 | | average track notice sent to atty Seigenberg |
| 11/13/2003 | 5.0 | Affidavit of Matthew McEvoy rec'd 11/5/03 |
| 11/13/2003 | 6.0 | Motion of the Defendants, Matthew McEvoy and Leah McEvoy, for Temporary Restraining Order/Preliminary Injunction rec'd 11/5/03 |
| 11/13/2003 | | MOTION (P#6.0) After hearing, Defendants' Motion for Preliminary Injunction is DENIED. See Memorandum and Order of this date (Ralph D. Gants, Justice).dated 11/10/03 Notices mailed November 13, 2003 |
| 11/13/2003 | | re: Verified Complaint (P#1.0) Plaintiff's request for Preliminary Injunction is granted. See Memorandum and Order of this date (Ralph D. Gants, Justice) dated 11/10/03 . Notices mailed November 13, 2003 |
| 11/13/2003 | 7.0 | Memorandum and Order on Cross Motions for A Preliminary Injunciton-- ORDER For the reasons stated above, this Court hereby ALLOWS the Town's motion for a preliminary injunction and DENIES the McEvoys' motion for preliminary inction. Therefore, pending the conclusion of this litigation, this Court ORDERS the McEvoys and their agents not to interfere with the Town's use of the Construction Easement until that Easement expires at 12:01 a.m. on January 1,2004 (Gants,Justice) dated 11/10/03 certified copies mailed 11/13/03 |
| 12/23/2003 | 9.0 | ANSWER by Town of Wrentham to COUNTERCLAIM (recd'12/17/03) |
| 02/06/2004 | | Case status changed to 'Needs review for answers' at service deadline review |
| 04/13/2004 | | Case status changed to 'Needs discovery' at answer deadline review |
| 01/13/2005 | 10.0 | Putative third party deft, John Zizza's emergency motion to docket notice of removal pursuant to 28 USC s.1441(a) |
| 01/13/2005 | | MOTION (P#10.0) RULING: In these unusual circumstances (the unknown whereabouts of the McEvoy's motion to add Zizza - see Exhibit A, still not filed in the Superior Court) and in an abundance of fairness to Zizza, ALLOWED. ORDER: (1) The clerk shall docket Zizza's Notice of Removal pursuant to 28 USC s 144(a) now. (2) The party holding the motion to add Zizza shall file it now. (a) If the McEvoys have the motion with Zizza's responsive papers in a Superior Court Rule 9(A(b) package, they shall file them immediately; (b) If Zizza has forwarded his response to the motion to McEvoys' counsel in accordance with Rule 9A(b), then he shall now file the package immediately. (Mitchell Sikora, Associate Justice) dated 1/13/05 (Mitchell J. Sikora, Associate Justice). Notices mailed January 13, 2005 |
| 01/13/2005 | 11.0 | Notice of Removal to US District Court by third party deft, John Zizza |
| 01/18/2005 | | Pleading, Motion to amend answer, returned to Daniel R Seigenberg, Esq.: Case has been removed to US District Court |
| 02/10/2005 | | certified copies of all pleadings sent to John J. Cloherty,III,Esq. |

A TRUE COPY
Attest: *Virginia G. Foster*
Deputy Assistant Clerk
2/16/05

| EVENTS | | | |
|--------|--------|-------|--------|
| **Date** | **Session** | **Event** | **Result** |
| 11/05/2003 | Civil B | Motion/Hearing: prel inj | Event held as scheduled |

**NORFOLK SUPERIOR COURT**
**Case Summary**
**Civil Docket**

### NOCV2003-02018
### Wrentham v McEvoy et al

*[handwritten annotations in margins]*

**COMMONWEALTH OF MASSACHUSETTS**

Norfolk, ss.

Superior Court Department
Civil Action No.

03  62018

---

TOWN OF WRENTHAM,
        Plaintiff,

v.

MATTHEW McEVOY and LEAH McEVOY,
        Defendants.

)
)
)
)
)
)
)
)
)
)

---

## VERIFIED COMPLAINT

### Introduction

    In this action, the Town of Wrentham ("Town") seeks to enjoin the defendants from

obstructing or interfering with the use of an easement granted by the defendants to the Town for

the purposes of installing a water main from East Side Road in Wrentham under the defendants'

property and under the section of Lake Pearl known as the Desert Brook inlet to a new well site

located on the opposite shore.  The Town also seeks declaratory relief under G.L. c. 231A, § 1

establishing its right to use the easement and the defendants' liability for any damages or

liabilities incurred by the Town as a result the defendants' wrongful interference with the use of

its easement.

### Parties

    1.    The plaintiff Town of Wrentham is a municipal corporation with its offices at

100 Stonewall Boulevard, Wrentham, Norfolk County, Massachusetts.

    2.    The defendants Matthew and Leah McEvoy are individuals residing at 815 East

Side Road, Wrentham, Norfolk County, Massachusetts.

**Facts**

3.    At a special town meeting on June 25, 2001, following a six-year search for an additional water supply source, the Town voted to acquire a 185-acre parcel of land on the south side of Lake Pearl and on the west side of the Desert Brook inlet for water supply and conservation purposes. At the same time, Town appropriated $5.3 million for a comprehensive upgrade to its water supply and distribution system, including the installation of a new well on the Lake Pearl property, and the extension of new water mains from the north and the east to connect the new well into the water distribution system, and the acquisition of easements necessary therefor.

4.    At a special town meeting on October 15, 2001, the Town voted to authorize the Board of Selectmen to acquire by eminent domain easements in two private ways for the purpose of installing water mains to the new well site adjacent to Lake Pearl: an easement in Elysium Street to connect to the new well site from the north, and an easement in East Side Road to approach the new well site from the east. A plan depicting the new well site and well treatment station, and the new water mains connecting the well to the Town's existing distribution system, is attached hereto as Exhibit A.

5.    In order to complete the connection of the well to the existing water distribution system through the two private ways named above, the Town needed to acquire easements across two residential lots: one to connect the new water main in Elysium Street to the existing terminus of the water main at the end of Woolford Road, and one to cross from the end of East Side Road under the Desert Brook inlet to the new well site. Accordingly, the October 25, 2001 town meeting vote also authorized the Board of Selectmen to acquire those easements by voluntary

-2-

conveyance, said purchases to be funded from the original $5.3 million appropriation for the water project.

6.    The Wrentham Board of Selectmen, after completing an appraisal process. then offered the sum of $21,500 to the defendants Matthew and Leah McEvoy for two easements between East Side Road and the Desert Brook inlet of Lake Pearl. The first was a permanent easement thirty feet in width along the northerly side line of the McEvoy property for the construction. installation , operation, maintenance, repair and replacement of subsurface water mains. The second easement was a temporary construction easement fifty feet in width, including the area of the permanent easement and an additional twenty feet, expiring on January 1, 2004. The purpose of the construction easement was to stage the subsurface crossing of the Desert Brook inlet of Lake Pearl by way of a "direct drilling" process.

7.    On October 23, 2002. the defendants tendered an instrument conveying the above described easements to the Town. A true copy of that instrument is attached hereto as Exhibit B. A reduced version of the plan depicting the permanent and temporary easements is attached hereto as Exhibit C.

8.    On November 26, 2002, the Town recorded the McEvoy easement along with a similar easement from Michael and Geraldine Tavalone and Orders of Taking for East Side Road and Elysium Street at the Norfolk County Registry of Deeds. The Town tendered payment of the $21,500 sum to the McEvoys, less amounts previously paid directly on the McEvoys' behalf to an engineering firm for the design of a septic system upgrade for the McEvoy property, on or before that date.

-3-

9.     The Town's contractors set up on the Town's new well site on the west side of the Desert Brook inlet and on the McEvoy property on the opposite shore to begin the direct drilling process under the Desert Brook inlet on or about April 28, 2003. The drilling equipment was set up on the Town's property. During the drilling process, a return pipe was set up on the McEvoy property to capture a bentonite clay mixture injected into the tunnel bore to seal the tunnel and return it to the west side of the inlet. A truck-mounted compressor was used on the McEvoy property to pump the bentonite clay mixture through the return pipe. On various occasions, a backhoe was used on the McEvoy property to assist in completing the connection between the flexible pipe being inserted under Lake Pearl to the new water main in East Side Road.

10.     The drilling process required several attempts. The first drill attempt began on April 30, 2003, was unsuccessful, and was discontinued on May 5, 2003. The second attempt started on May 6, 2003, was unsuccessful, and was discontinued on May 8, 2003. The third attempt began and was aborted on May 9, 2003. The fourth and final attempt commenced on May 12, was interrupted for approximately one week over and after the Memorial Day holiday, and was completed on or about July 3, 2003. The return pipe and all ancillary equipment were removed from the McEvoy property by the first week of August, 2003.

11.     During the direct drilling process, some of the bentonite clay mixture injected into the tunnel bore escaped into the Lake, requiring remedial action by the contractor. The loss of that material into the Lake was an undesired, but not wholly unexpected, result of the drilling process.

12.     On July 3, 2003, Matthew McEvoy made a written demand for an additional payment of $50,000 from the Town, claiming damages as a result of the allegedly unexpected

-4-

duration of the project, and the noise, truck traffic and water quality impacts incidental to the project. A true copy of the first McEvoy demand is attached hereto as Exhibit D.

13.    On or about July 7, 2003, after the July 4th holiday weekend, it became apparent to the Town that the top of pipe under the Desert Brook inlet had become visible at the bottom of the inlet, that it therefore did not comply with the specifications of the contract requiring a minimum of five feet of cover, and that further work would be required within in the inlet to reset the pipe at the correct depth.

14.    On or about July 21, 2003, the Wrentham Conservation Commission issued an enforcement order to the Wrentham Department of Public Works under the Wetlands Protection Act and the Town's Wetlands Protection Bylaw directing the Town to develop and implement a plan, in consultation with the Conservation Commission, the United States Army Corps of Engineers and the United States Environmental Protection Agency for resetting the pipe and recovering the lost bentonite clay mixture. A true copy of the Conservation Commission's order is attached hereto as Exhibit E. From that date, if not before, the Town began the process of acquiring the permits and approvals necessary to excavate the lake bed to reset the pipe and to complete the process of recovering and removing the bentonite clay mixture that was discharged into Lake Pearl.

15.    The Town acquired the necessary permits and approvals for the completion of the project, including the clean-up of the bentonite clay mixture, by the end of September, 2003. The project requires the temporary installation of two 6-inch pipes across the McEvoy property from East Side Road to the shore in order to recover the bentonite clay mixture to an impoundment that has been constructed off East Side Road, and to return clean water to the Lake, and for

personnel to enter the property to inspect and monitor this equipment. All other work is to be done from the Town's property or from a barge in the Lake. The work is expected to be completed within approximately four to six weeks.

16.    On September 30, 2003, the defendants, through their counsel, reiterated in writing their demand for compensation for the alleged overburdening of the easement and indicated that they would not permit the use of the construction easement for the completion of the project. The Town responded that its use of the construction easement for access to the Desert Brook inlet was necessary for the completion of the project and within the scope of the easement, and advised the defendants against any interference with its easement rights. True copies of the McEvoys' second demand and the Town's reply are attached hereto as Exhibit F.

17.    During the week of October 20, 2003, the Town's contractors attempted to enter the construction easement for the purpose of completing the project. On information and belief, the defendant Matthew McEvoy informed the Town's contractors that he would file suits against them if all equipment and personnel were not immediately removed from his property. True copies of the letters from the Town's subcontractor and general contractor describing this incident are attached hereto as Exhibit G.

## Count 1
## Trespass/Breach of Contract for Easement

18.    The Town restates the allegations in paragraphs 1 through 17, above.

19.    The Town's proposed activity on the McEvoy property is within the geographic scope of the easement, is within the temporal scope of the easement and is directly and necessarily related to the construction project for which the easement was acquired. The Town's

proposed activities are therefore lawful and consistent with its easement rights.

20.    The defendant Matthew McEvoy's conduct constitutes active and material interference with the Town's easement rights.

21.    The defendant Matthew McEvoy's active and material interference with its easement rights constitutes a trespass and a breach of the easement agreement.

## Count 2
## Declaratory and Injunctive Relief

22.    The Town restates the allegations in paragraphs 1 through 21, above.

23.    There is an actual controversy between the Town and the defendants regarding the scope of the Town's easement rights.

24.    The Town will be irreparably harmed if the defendants' interference with its easement rights is permitted to continue. Specifically, the Town will be unable to complete the project before the construction easement expires by its own terms on January 1, 2004. Further, the Town may have incurred and may continue to incur liabilities to its contractors for delay in completion of the project. The general contractor has communicated to the Town that additional costs will begin to accrue at the rate of $2,000 per day on Wednesday, October 29, 2003 if work cannot commence on that date. A damages remedy against the defendants for such delay claims may be inadequate due to the inability of the defendants to pay a claim of such magnitude.

25.    The public interest will be harmed if the defendants' interference with the Town's easement rights is permitted to continue because the remediation of the discharge of bentonite clay into Lake Pearl will be delayed and associated damage to the environment will continue. The public interest will further be harmed by associated delays in the completion of the water

-7-

project.

26.    The defendants will not be substantially or irreparably harmed by the Town's proposed use of the construction easement, as the presence of two 6-inch pipes within the easement area will not materially interfere with their use or enjoyment of their property. If and to the extent that the defendants may claim that past or proposed use of the construction easement is beyond the scope of the easement, the defendants have an adequate remedy at law.

WHEREFORE, the Plaintiffs respectfully requests that this Court:

(1)   Issue a temporary restraining order, followed by a preliminary injunction, ordering the defendants, their agents, employees, or any others acting in concert with the defendants from interfering with the Town's use of the construction easement from the present through December 31, 2003, including, without limitation, any communications with the Town's contractors or subcontractors demanding that they vacate the easement or threatening the Town's contractors or subcontractors with legal action;

(2) Declare that the use of the construction easement for the resetting of the pipe under the Desert Brook inlet and the recovery of bentonite clay from the Lake to be an activity within the scope of the Town's construction easement;

(3) Declare that the defendants are liable to the Town for any costs or damages for which the Town may become liable as a result of any delays attributable to the defendants' interference with the Town's easement rights;

(4) Award such other relief as this Court deems just and proper.

Town of Wrentham,
By its attorney,

George A. Hall, Jr. (BBO# 544493)
ANDERSON & KREIGER LLP
43 Thorndike Street
Cambridge, MA 02141
(617) 252-6575

Dated: October 28, 2003

## VERIFICATION

I, Robert J. Reardon, on oath depose and say that I am the Superintendent of Public

Works for the Town of Wrentham, Massachusetts, that I am responsible for the oversight of the

water supply and distribution projects described in the foregoing complaint, that I have read the

factual allegations of this Verified Complaint, and that said allegations are true and accurate to

the best of my personal knowledge, information and belief.

Signed under the pains and penalties of perjury this _28_ day of October, 2003.

Robert J. Reardon

A TRUE COPY

Attest: _____ Assistant Clerk
                                                    2/10/05

-9-



TOWN OF WRENTHAM, MASSACHUSETTS

LAKE PEARL WELL CONNECTING
PIPELINES—WOOLFORD ROAD,
ELYSIUM STREET, EAST SIDE ROAD

SCALE: 1" = 400'        OCTOBER 28, 2003

WESTON & SAMPSON
ENGINEERS, INC.



BK17706PG229

RECEIVED AND RECORDED
NORFOLK COUNTY
REGISTRY OF DEEDS
DEDHAM, MA
CERTIFY
*William P O'Donnell*
WILLIAM P. O'DONNELL, REGISTER

## UTILITY and CONSTRUCTION EASEMENT

**MATTHEW J. McEVOY AND LEAH M. McEVOY,**
of Wrentham, Norfolk County, Massachusetts,

for consideration paid, and in full consideration of TWENTY ONE THOUSAND FIVE HUNDRED AND NO/100 ($21,500.00) Dollars,

grant to **THE TOWN OF WRENTHAM**, a municipal corporation with its principal place of business at 100 Stonewall Boulevard, Wrentham, Norfolk County, Massachusetts,

### *WITH QUITCLAIM COVENANTS*

a utility easement under a portion of our property at 815 East Side Road in said Wrentham, said portion being shown as "Utility and Water Main Easement" on a plan entitled "Plan of Utility Easements, Lake Pearl Area, Wrentham, Massachusetts," dated October 1, 2001 prepared for the Town of Wrentham by Wilson Associates Engineering and Survey, Inc., said plan to be recorded herewith ("Easement Plan") and bounded and described according to said Easement Plan as follows:

*SEE UTILITY EASEMENT DESCRIPTION ATTACHED AS EXHIBIT A HERETO.*

This easement is granted for the construction, installation, operation, maintenance, repair and replacement of subsurface water mains connecting the existing water main terminus in East Side Road and running through the said East Side Road, under our property to the Desert Brook Inlet of Lake Pearl, and under the said Desert Brook Inlet to the property depicted on Land Court Plan No. 10520A, which property was acquired by the Town under an Order of Taking dated October 31, 2001 and described in Certificate No. 162971 in Registration Book 815, Page 171 in the Land Court Department of the Norfolk County Registry of Deeds.

The Grantors hereby further grant to the said Town of Wrentham a construction easement over the portion of our property at 815 East Side Road shown on said Easement Plan as "Construction Easement" and bounded and described according to said plan as follows:

*SEE CONSTRUCTION EASEMENT DESCRIPTION ATTACHED AS EXHIBIT B HERETO.*

Said construction easement is temporary and shall terminate and be of no further force and effect on January 1, 2004.

For our title, and a full description of the burdened parcel, see deed recorded at Book 13764, Page 154 at the Norfolk County Registry of Deeds.

BK I 7706 PG 230

WITNESS our hands and seals this twenty-third day of October, 2002.

_____
MATTHEW J. McEVOY

_____
LEAH M. McEVOY

## COMMONWEALTH OF MASSACHUSETTS

Norfolk, ss.                                October 23, 2002

Then personally appeared the above-named MATTHEW J. McEVOY and LEAH M. McEVOY and acknowledged the foregoing instrument to be their free act and deed, before me:

_____
Valerie J. Brownly, Notary Public

My Commission Expires: February 21, 2003

BK 17706 PG 231

### Schedule A
### Legal Description
### Grant of Utility Easement
### McEvoy to the Town of Wrentham

Land in Wrentham, Norfolk County, Massachusetts being shown on a plan entitled "Plan of Utility Easements Lake Pearl Area Wrentham, Massachusetts". Dated October 1, 2001, prepared for The Town of Wrentham, prepared by Wilson Associates Engineering & Survey, Inc., recorded herewith in Norfolk County Registry of Deeds, and bounded and described according to said plan as follows:

Beginning at a point on the shore of Lake Pearl at the Northwesterly corner of land now or formerly of Matthew and Leah McEvoy and the Southwesterly corner of land now or formerly of Steven Duffy

Thence; N83°46'31"E by the dividing line of land now or formerly of said Matthew and Leah McEvoy and  land now or formerly of said Steven Duffy a distance of 59'+/- to a point

Thence; S81°04'25"E by land now or formerly of said Steven Duffy a distance of 44.74'to a point

Thence; N81°40'45"E by land now or formerly of said Steven Duffy a distance of 19.00'to a point in the Westerly sideline of a private way known as East Side Road

Thence; S07°07'14"E by theWesterly sideline of said East Side Road a distance of 30.00' to a point

Thence; S81°40'45"W by land now or formerly of said Steven Duffy a distance of 22.92'to a point

Thence; N81°04'25"W by land now or formerly of said Steven Duffy a distance of 45.30'to a point

Thence; S83°46'31"W by land now or formerly of said Steven Duffy a distance of 77'+/-to a point on the shore of Lake Pearl

Thence; Northesterly by the shore of Lake Pearl a distance of 37'+/- to the point of beginning

Containing 4,022+/- S.F.

BK17706PG232

## Schedule B
## Legal Description
## Grant of Temporary Construction Easement
## McEvoy to the Town of Wrentham

Land in Wrentham, Norfolk County, Massachusetts being shown on a plan entitled "Plan of Utility Easements Lake Pearl Area Wrentham, Massachusetts". Dated October 1, 2001, prepared for The Town of Wrentham, prepared by Wilson Associates Engineering & Survey, Inc., duly recorded herewith in Norfolk County Registry of Deeds and bounded and described according to said plan as follows:

Begining at a point 16.00' North of the Southwesterly corner of a private way known as East Side Road

Thence; S81°40'45"W by land now or formerly of said Steven Duffy a distance of 24.23' to a point

Thence; N81°04'25"W by land now or formerly of said Steven Duffy a distance of 45.49' to a point

Thence; S83°46'31"W by land now or formerly of said Steven Duffy a distance of 82'+/- to a point on the shore of Lake Pearl

Thence; Northeasterly by Lake Pearl a distance of 12'+/- to a point

Thence; N83°46'31"E by land now or formerly of said Steven Duffy a distance of 77'+/- to a point

Thence; S81°04'25"E by land now or formerly of said Steven Duffy a distance of 45.30' to a point

Thence; N81°40'45"E by land now or formerly of said Steven Duffy a distance of 22.92' to a point

Thence; S07°07'14"E by said private way known as East Side Road a distanc of 10.00' to the point of begining

Containing 1,489+/- S.F.

The Foregoing is a true copy of a GRNT
recorded with Norfolk Deeds, Dedham, MA
NOV 26, 2002 at 1 h. 14 m. P. M.
Certify:

_William P O'Donnell_
Register



WESTON & SAMPSON
ENGINEERS, INC.

DESIGNED BY: BMA   CHECKED BY: —   DATE: OCTOBER 2002

UTILITY EASEMENT
SITE PLAN

WRENTHAM, MASSACHUSETTS
UTILITY EASEMENT PLANS

FIGURE X



**RECEIVED**
SELECTMEN'S OFFICE

JUL - 3 2003

TIME_____
WRENTHAM, MASS.

815 Eastside Road
Wrentham, MA 02093
July 2, 2003

Mr. James R. Merriam
Town Administrator
100 Stonewall Blvd.
Wrentham, MA 02093

Dear Mr. Merriam/Town of Wrentham,

The following letter outlines a list of grievances which we, Matthew J. and Leah M. McEvoy, 815 Eastside Road, Wrentham, hold the town of Wrentham liable and responsible. We feel that we have been misled and betrayed by the Board of Selectman as well as yourself in regards to the construction easement done on our property.

The town of Wrentham has either knowingly mislead us or has shown gross incompetence regarding the easement granted. We now feel like we have become prisoners in our own home. Such easement was granted with the Town Administrator's assessment of two weeks with minor disruption and the possibility of one to two days of major disruptions. On average, construction begins at 7:00 AM daily and ending most evenings at 7:00 PM. roughly this construction has been ongoing for about six weeks and counting. Work crews arrive for construction six out of the seven week days. Unfortunately at this time, there is no end in sight.

We have been advised to offer the Town of Wrentham a one time out of court settlement in the amount of $50,000. This agreed upon figure is based on the following grievances:

1. The Town failed to inform us of a twenty inch pipe running directly through a swimming area. This pipe has also eliminated access to our boat dock. Another recreational dock on our property has become a staging area engulfed by hundreds of sand bags. This major inconvenience has imposed on our family's' enjoyment of our lakefront property. Again, we were never informed of the situation.

2. No notification or information was offered in regards to the one foot Bentinite in the lake which stretches from our retaining walls across the lake water creating a murky and cloudy appearance.

3. The quality and quantity of our family time and personal time has been very limited. With work crews here twelve hours a day and six days a week, our quality family time with our four young sons has been greatly reduced to a few hours on Sundays. Due to the constant construction done on our property, personal vehicles need to be moved out of the drive way each morning and are parked further up the street. Construction traffic is often heavy and we have been faced with delays in getting to school, work and personal appointments.

*July 2, 2003*
*Page 2*

4.  Many family functions normally held at our home annually had to be cancelled due to existing construction. Three spring birthdays, Mother's Day cookout, Memorial Day cookout, Fathers Day cookout, End of School Party and 4th of July Barbecue and water activities involving the lake have all had to be cancelled. A wedding rehearsal party also scheduled to be held on our property was forced to be relocated. Many cancellations having to be explained to disappointed children repeatedly…

5.  The stenches of rotten hay bales and stagnant water as well as an unusual amount of dead fish in the lake have made the air quality here for our family intolerable.

6.  Swimming conditions are becoming unsafe if one would even dare to venture in the water. Sink holes have appeared in swimming area and are not visible to young swimmers due to the amount of Bentinite in the water.

Although this letter could continue a bit further, we will conclude with our tremendous disappointment for the disregard to phone calls made to the Town Administrator. After three messages were left on two separate occasions, four days went by before a return phone call was received. In each case no follow up was ever made to our inquiries.

We request that immediate action be taken on this settlement. If this is not feasible, we request that the Town of Wrentham cease all construction immediately.

Sincerely,

Matthew J. McEvoy

Leah M. McEvoy

WRENTHAM CONSERVATION COMMISSION
100 STONEWALL BOULEVARD
WRENTHAM, MA 02093
508-384-5417

July 21, 2003

Robert Reardon, Superintendent Department of Public Works
Town of Wrentham
100 Stonewall Blvd.
Wrentham, MA 02093

Subject: Lake Pearl Well

Dear Mr. Reardon;

      This regards a violation of an existing Order of Conditions for the Lake Pearl well drilling and water pipe installation. Specifically, the deposition of a significant amount of drilling muds on top of the existing natural sediments in Lake Pearl at its southern inlet. I am writing to you, the applicant, with Weston & Sampson as your representative. The Commission recognizes that the subject violation is the result of an action by a subcontractor. The subject of the letter is removing bentonite drilling muds from the lake bottom and restoring the bottom to natural conditions. This letter will set a number of timetables for your contractors to comply with, will solicit information, and will direct actions to be performed under the attached Enforcement Order.

**Definitions**
<u>Drilling mud</u> - the material used by the subcontractors to lubricate the drill bit. It consists of bentonite, montmorillonite and other additives.
<u>Endangered species</u> - Those areas within which are species listed by the State of Massachusetts which are endangered, threatened, or of special concern.
<u>Town</u> - The Town of Wrentham and its contractors.

**Background**
      Acting as the Agent for the Conservation Commission I first learned of, and inspected this area in mid-June. During the mid-June visit, I noted limited areas of breakout of drilling mud. Sampling showed the material to be one to six-inches deep and cover three areas of approximately 20 to 30 feet diameter. I contacted Bruce Adams of Weston and Sampson and asked that the material be removed - primarily to reduce the potential for impacts to dissolved oxygen levels. I agreed with Mr. Adams that any removal could wait until the drilling was finished because of the limited occurrence.

      A call from Mr. Adams prompted my second site visit on July 5th. Mr. Adams said that the drilling was complete and that the drilling mud problem was now much worse. During that site visit I found that the area was now far more heavily contaminated. My field notes, recommending dredging, were forwarded to the Selectmen and the Conservation Commission. As the Agent, I decided not to pursue any Enforcement action as it appeared that all parties were amicable and interested in addressing the problem.

Wrentham Conservation Commission                                        July 21, 2003
Letter to: Robert Reardon, Wrentham DPW

I next received a call from Mr. Adams on July 14th, and a follow-up letter on the 15th relaying the contractors desired method to clean the lake bottom. Mr. Adams later asked for a meeting at the site on the morning of July 19th. At that meeting Mr. Adams, you, Dan Dobbeis and Brian Dorwart of Haley & Aldrich, and I inspected the area with the homeowner closest to the affected area, Mr. McEvoy. The Haley & Aldrich people were there to advise on the water pipe and not the mud. The water supply pipe has surfaced near the bank and will require additional work to put it to its correct depth.

During that site visit, it became apparent that no cleanup had happened since drilling ended. The drilling mud appears to have spread across the cove to a width of 150 to 200 feet. One area I sampled had approximately sixteen inches of gelatinous drilling mud. Another area, approximately twelve by twelve feet, had been test cleaned and appeared to be mud-free; however, stirring the sediment showed minor amounts of floc. I found evidence of drilling mud at the dock of Mr. Duffy approximately 100 feet from the pipeline. I found no evidence of drilling mud at the dock of Mr. Cervasio, approximately 200 feet from the pipeline.

On the 19th I also inspected the frac tank used for the separation of the drilling mud and water. I realize that this material is very difficult to settle. At the time I inspected the water it was still very turbid and had been sitting more than 24 hours. It appeared that the water was allowed to overflow the tank with the intention of leaving the mud on the bottom. This appears inadequate and it appears that any overflow will contaminate an adjacent wetland. I also watched some of the cleanup on a videotape in the possession of Mr. McEvoy. Mr. McEvoy further related that the persons performing the dredging said they had no experience in dredging.

**Points of Concern**

The Conservation Commission is concerned on three fronts:

1) The drilling muds contain biodegradable agents which may create an oxygen demand harmful to wildlife. The drilling mud is extremely unappealing to the touch and is an aesthetic issue.

2) The area is listed by the State as containing endangered aquatic species which raises further concern.

3) Third, the Commission is concerned that the contractor appears to be unmotivated in addressing the drilling mud issue. Initially, the Conservation Commission allowed some latitude due to the initial limited occurrence and the recognition that the drilling needed to be completed. However, it is noted that despite more than two weeks passing the contractor is "experimenting" with methods to do the cleaning. There are professionals who do this type of job, it appears that the contractor is attempting to do this "on-the-cheap."

What is distressing about the third issue is its affect on the endangered species and the potential for the drilling mud to be further spread into the lake since the cove is actually an inlet for Desert Brook into the Lake. The time for action was two weeks ago. Unfortunately, since the contractor does not appear to wish to resolve this issue the Conservation Commission must begin pursuing Enforcement options.

Wrentham Conservation Commission                                          July 21, 2003
Letter to: Robert Reardon, Wrentham DPW

## Action being Taken by the Conservation Commission

The Conservation Commission is issuing an Enforcement Order directing you and your contractors to:

1) begin immediate efforts to remove the largest portions of the drilling mud;

2) develop and submit a plan to investigate and determine the horizontal and vertical extent of drilling mud occurrence and how it will be recovered;

3) implement the approved plan as soon as possible after it is approved by the Conservation Commission;

4) detail the method used to push the water pipe down to its proper depth outlining the methods used to protect the surrounding water from further siltation;

5) revisit this area over the next three years and determine if any areas of drilling mud exist and if so, recover them.

The details and schedule for these activities are set forth below. The Conservation Commission will also update the Department of Environmental Protection, the U.S. Environmental Protection Agency, and the U.S. Army Corps of Engineers with the actions to be taken to restore the lake bottom.

## Actions to be Taken by the Town and its Contractor

1. A contractor experienced in dredging and water separation shall be immediately hired. This contractor shall be mobilized to the site within one week from the date of this letter and begin removal operations closest to shore. Prior to the contractor beginning work they shall submit their work history and company information to the Commission. The contractor removing the drilling mud shall also submit to the Commission a work plan stating the methods used to recover the sediment nearest shore and the methods to separate the water from the mud and return that water to the lake. Failure to perform any of the above tasks on the date specified, July 28, 2003, shall entail a $150 per day fine, per the Wrentham Wetland Protection Bylaw, to be initiated on July 29, 2003.

2. Within three weeks of this letter the Town shall provide a plan to the Conservation Commission which outlines the methods, schedule and area over which the contractor shall investigate both sub-sediment and on the sediment surface. The Conservation Commission will review and approve or modify as needed. Following receipt of the Commission's approval or modification the plan will be implemented. Failure to do so shall entail a $150 per day fine to be initiated on August 12, 2003.

3. Once the area is cleaned, appropriate testing for drilling muds will be conducted. The contractor will submit a report detailing the amount of drilling mud recovered and its potential to exist in the lake sediments both on the surface and in the subsurface in discreet pockets. This report will be referenced as to sources and submitted before September 5, 2003. Moreover, the Town will inspect and test this area on an annual basis for a period of three years and remove any drilling muds which are located.

The Commission is still researching the potential long-term impacts and may issue further Enforcement Actions designed to remedy the situation. The Commission regrets the need to take this action and only wishes to see the lake bottom restored to its original condition. If you have any questions please call the Agent, Darryl Luce at 508-384-5417.

Sincerely,

Darryl Luce, Agent
Wrentham Conservation Commission

cc:
Wrentham Board of Selectmen
Sgt Gillespie, Wrentham Police
MADEP SE Regional Office
U.S. Environmental Protection Agency, Region 1
U.S. Army Corps of Engineers

LAW OFFICE OF
# DANIEL R. SEIGENBERG

128 School Street
Walpole Massachusetts 02081

Telephone:    (508) 668-9800
Facsimile **RECEIVED** -1581
SELECTMEN'S OFFICE

OCT  1 2003

TIME_____
WRENTHAM, MASS.

September 30, 2003

James R. Merriam, Town Administrator
Town of Wrentham
100 Stonewall Blvd.
Wrentham, Massachusetts 02093

RE:    Matthew and Leah McEvoy

Dear Mr. Merriam:

I am in receipt of your correspondence dated September 4, 2003. While I appreciate you acknowledging that the Board of Selectmen will assess the construction impacts upon the McEvoys and will take whatever steps it deems appropriate to address any temporary loss of use and enjoyment, your correspondence fails to specifically mention what additional compensation, if any, the Board will award to the McEvoys. Your correspondence further fails to even acknowledge that the Board is of the opinion that the McEvoys are entitled to any additional compensation.

Given your correspondence and the lack of any action by the Board of Selectmen relative to the McEvoys' situation, the McEvoys were upset to learn that the clean-up plan calls for utilization of their property. It is my understanding that the Army Corp. of Engineers, has approved a work plan for remediation of the bentonite slurry and to correct the improper installation of the water pipeline. Under the terms of the approved plan, pipes are to be placed on the McEvoy property with pipes to be located in the general vicinity of their driveway. This plan is unacceptable to the McEvoys. The Town of Wrentham has no legal authority to utilize the McEvoys' property relative to a clean-up. It is insulting that the Board did not even advise the McEvoys of the Board's intention relative to the clean-up. I request that you or the Board advise me, specifically, of the planned use of the McEvoys' property and the duration of any planned use.

In order for this remediation plan to go forward, utilizing the McEvoy property, there must be a complete agreement with the McEvoys relative to the utilization of their property and the compensation that will be paid to them for both, the anticipated use of the property and for the past impact and loss that the McEvoys have already sustained. As I previously advised you, if the Board is going to discuss, at a public meeting, the issues raised in this correspondence and the issues affecting the McEvoys, I would appreciate advanced notification of the date and time of the hearing so that the McEvoys might attend. In fact,

James R. Merriam, Town Administrator
The McEvoy Matter
September 30, 2003
Page Two

it is my suggestion that the Board place the McEvoy situation on the agenda at one of the scheduled meetings so that this issue can be discussed.

Until a resolution of the McEvoys' claim, the Town of Wrentham, its agents, servants, employees, or contractors are not authorized to access the McEvoys' property. Any such action will constitute a trespass.

I would welcome the opportunity to discuss this matter with you.

Very truly yours,

Daniel R. Seigenberg

DRS:mad

cc:    Matthew and Leah McEvoy
       Joseph T. Curtain

# ANDERSON &KREIGER LLP

GEORGE A. HALL, JR.
ghall@andersonkreiger.com

October 7, 2003

By Fax: (508) 668-1581 - No Confirmation Copy to Follow
Daniel R. Seigenberg, Esq.
128 School Street
Walpole, MA 02081

Re:    Matthew and Leah McEvoy

Dear Mr. Seigenberg:

Jim Merriam has forwarded to me a copy of your letter dated September 30, 2003 for a response.

First, let me reiterate that the Town regrets the fact that the direct-drilling process did not go as smoothly, and was not completed as expeditiously, as was hoped or expected. The complications in the project are regrettable for several reasons, not the least of which is the inconvenience to your clients and other residents of the area.

That being said, complications and delays associated with unforeseen conditions often affect construction projects of this magnitude, and the easement that the McEvoys conveyed to the Town was drafted to account for that possibility, by providing both an ample staging area for the project and ample time – to December 31, 2003 – for the completion of the work. It specifies that its purpose is not only to permit the use of the property for the installation of the water main under the McEvoy property, but also to facilitate the extension of that water main under the Desert Brook inlet to the opposite shore owned by the Town. In other words, the easement is explicit, and the McEvoys understood, that their property was to be used as a staging area to effect the water main crossing of the Desert Brook inlet.

While the duration of the project may have exceeded your clients' expectations, it was well within the scope of the easement that the Town bargained for and purchased. Given that the easement contains no express limitation on the scope of the construction activities that may take place on the McEvoy property other than the end-date of December 31, 2003, the fact that the McEvoys consider the construction activity that was necessary to respond to the unexpected subsurface conditions in the Desert Brook inlet to have been a nuisance does not entitle them to additional damages. *See, e.g., Michaelson v. Nemetz*, 4 Mass. App. Ct. 806, 806-807 (1976).

Printed on recycled paper

Daniel R. Seigenberg, Esq.
October 7, 2003
Page 2

The clean-up of the bentonite clay that was discharged to the Lake during the installation of the water main has to be considered an integral part of the construction process. Clean-up is an integral part of every construction project, whether or not the extent of the material to be cleaned up is consistent with what was planned. Your suggestion that this work is outside the scope of the easement, and that entry onto your clients' property by the Town would constitute a trespass, finds no support in the text of the easement or relevant case law. To the contrary, the fact that the staging of the direct-drilling process on your clients' property was substantially complete, except for clean-up, more than three months before the expiration of the construction easement is an indication that the Town's activities to date have been well within its rights under the easement.

As I understand it, the Town intends to conduct the removal of the bentonite clay, and to complete the installation of the water main by resetting it to achieve five feet of cover below the lake bed, using vacuum and/or pump equipment that will be mounted on a barge in the Desert Brook inlet. The easement over your clients' property will be used to run hoses and/or pipes from the barge to East Side Road, and over East Side Road to a lagoon being constructed on the Town's property. The contractor's employees will likely have to enter the easement area on foot to install and maintain the pipe. Aside from those activities, the Town will instruct the contractor to make every reasonable effort to avoid the use of the McEvoy property. We expect the work to start on the morning of Tuesday, October 14, 2003, and to continue for at least six weeks.

The Town expects the McEvoys to honor the terms of the easement and not to interfere with its rights under the easement. The McEvoys should be mindful that any interference with the foregoing activities may result in significant costs to the Town, in the form of a liability for increased charges from the contractor, and that the Town would have a right to seek recovery of those costs if its access to the easement is unlawfully impeded. While the Town has no desire to get involved in that kind of dispute with the McEvoys, and would like to resolve the matter fairly and amicably, it cannot allow the McEvoys' desire for more compensation to interfere with the timely completion of the project.

The Town Administrator, the DPW Superintendent and I would be pleased to meet with you and your clients this week, before the commencement of work, to answer any questions you may have about the project, to discuss your clients' specific concerns, and to try to formulate ways to minimize any further intrusions on their privacy by the Town's use of the easement. If you would like to arrange such a meeting, please call me and I will try to make myself in Wrentham at your convenience.

If you want to arrange such a meeting, or if you would like to discuss this with me more generally, please feel free to call me. If you plan to seek any kind of judicial intervention in the matter, I would appreciate it if you would give me as much advance notice as possible. In any



ANDERSON &KREIGER LLP

♻ Printed on recycled paper

Daniel R. Seigenberg, Esq.
October 7, 2003
Page 3

event, I would appreciate it if you would consider this matter one in which the Town is
represented by counsel, and that further communications with the Town on the subject be made
through my office.

Sincerely,

George A. Hall, Jr.

cc:    James R. Merriam, Town Administrator (by fax)
       Bob Reardon, Wrentham DPW (by fax)

wren\retainer\select\l\seigenberg001



**GENERAL CONTRACTORS**

103 Adams Street, Newton, Massachusetts 02458
Phone 617.527.1093
Fax 617.527.8421
Garage 617.244.9142
Garage Fax 617.243.3942
Web http://www.paolinicorp.com

October 29, 2003

**VIA FACSIMILE**

Bruce W. Adams, P.E., Vice President
Weston & Sampson Engineers, Inc.
Five Centennial Drive
Peabody, MA 01960-7985

Re:          **Town of Wrentham, Massachusetts,**
             **Lake Pearl and Crocker Pond Water Mains**
             **Contract No. 01-3**

Subject:     **McEvoy Easement**

Dear Mr. Adams:

On Thursday, October 23, 2003, Paolini Corp.'s ("Paolini") subcontractor, Coleman
Construction Company, Inc. ("Coleman") was in the process of laying suction and return lines in
connection with the bentonite removal activities. During this work, Mr. Matt McEvoy demanded
that Coleman remove all materials and pipe from the easement area on his property (the
"Easement") and stated that he would deny contractors access to the Easement area. Coleman
complied with Mr. McEvoy's demands and removed all materials and pipe from the Easement
area.

As you know, access to the McEvoy Easement area is critical to the bentonite removal work.
Restricted access to that Easement area has and will continue to cause Paolini to incur increased
costs and delay to the work. As the Town's counsel acknowledged in a letter dated October 7,
2003 to the McEvoy's counsel, "any interference [by McEvoy] with the foregoing activities may
result in significant costs to the Town, in the form of liability for increases charges from the
contractor." Regardless of whether Paolini and the Town disagree over whether the bentonite
removal is extra work for which Paolini must be compensated, there can be no question that
Paolini is entitled to compensation for the costs incurred as a result of restricted access and
interference in the Easement area in connection with that work.

Bruce W. Adams, P.E.
October 27, 2003
Page 2 of 2

Paolini requires access to the easement area immediately.  Please advise Paolini in writing today
as to how to proceed.

Very truly yours,

Joseph Curtin
General Manager

Cc:     Mr. James R. Merriam, Town Administrator (via fax)
        Robert Reardon, DPW Superintendent (via fax)
        Mr. Fred Coleman (via fax)



<u>**Via fax (617) 527-8421**</u>

October 24, 2003

Paolini Corporation
Joe Curtin
103 Adams Street
Newton, MA 02458

Dear Joe,

Please be advised that the issue of the easement is still in total disagreement.

Yesterday, Thursday October 23, 2003, Matt insisted that we remove all materials and pipe from his land. This has been completed.

No further work within this easement will be done without your written agreement for total indemnification from legal action and liability asserted against Coleman Construction Company, Inc, by any parties involved with this project, including but not limited to the Town of Wrentham, Weston & Sampson, Paolini Corporation, any abutters to work areas, any state, local or federal conservation members, water resource boards, bonding company, or any other subcontractors. If legal action is brought upon Coleman Construction Company, Inc, Paolini will bear all costs associated with it, including any attorneys fees incurred by Coleman, and will pay any judgment or settlement.

Thank you,
Coleman Construction Company, Inc

V.P. FOR

Fred Coleman
President

| CIVIL ACTION COVER SHEET | DOCKET NO.(S)<br><br>03  02018 | Trial Court of Massachusetts<br>Superior Court Department<br>County: ___ rfolk |
|---|---|---|

| PLAINTIFF(S)  TOWN OF WRENTHAM | DEFENDANT(S)  MATTHEW McEVOY<br>and LEAH McEVOY |
|---|---|

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE<br>George A. Hall, Jr./Anderson & Kreiger LLP<br>43 Thorndike Street<br>Cambridge, MA 02141<br>Board of Bar Overseers number:  544493 | ATTORNEY (if known) |
|---|---|

**B**

## Origin code and track designation

Place an x in one box only:

[x] 1. F01 Original Complaint
[ ] 2. F02 Removal to Sup.Ct. C.231,s.104
     (Before trial) (F)
[ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

[ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
[ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
[ ] 6. E10 Summary Process Appeal (X)

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

CODE NO.          TYPE OF ACTION (specify)      TRACK          IS THIS A JURY CASE?

D13          Declaratory Judgment      ( A )      ( ) Yes      ( X ) No

**The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.**

### TORT CLAIMS
(Attach additional sheets as necessary)

A.   Documented medical expenses to date:
   1.   Total hospital expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . .
   2.   Total Doctor expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . .
   3.   Total chiropractic expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . .
   4.   Total physical therapy expenses . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . .
   5.   Total other expenses (describe) . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . .
                                                                          Subtotal $ . . . . . . . . . .

B.   Documented lost wages and compensation to date . . . . . . . . . . . . $ . . . . . . . . . .
C.   Documented property damages to date . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . .
D.   Reasonably anticipated future medical and hospital expenses . . . . $ . . . . . . . . . .
E.   Reasonably anticipated lost wages . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . .
F.   Other documented items of damages (describe)
                                                                                      $ . . . . . . . . . .

G.   Brief description of plaintiff's injury, including nature and extent of injury (describe)

A TRUE COPY
Attest: _____
        Deputy Assistant Clerk
                                                                                      $ . . . . . . . . . .
2/10/05                                                              TOTAL $ . . . . . . . . . . .

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

                                                                          TOTAL $. . . . . . . . . . .

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT          NoNE

**"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."**

Signature of Attorney of Record _____          DATE: _____

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

## COMMONWEALTH OF MASSACHUSETTS

Norfolk, ss.

Superior Court Department
Civil Action No. 03-02018

TOWN OF WRENTHAM,
               Plaintiff,

v.

MATTHEW McEVOY and LEAH McEVOY,
               Defendants.

)
)
)
)
)
)
)
)
)

RECEIVED & FILED
CLERK
NORFOLK COUNTY

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS REQUEST FOR A PRELIMINARY INJUNCTION, AND IN OPPOSITION TO DEFENDANT'S REQUEST FOR A PRELIMINARY INJUNCTION

The plaintiff Town of Wrentham (the "Town") requests that this Court issue a preliminary injunction against the defendants to enjoin them from obstructing or interfering with an easement the defendants granted to the Town for the purposes of constructing and installing a public water main across their property.

The Town also opposes the defendants' request for a preliminary injunction to prevent the Town and its agents from continuing with the construction of the public water main across the Town's lawfully purchased easement.

The Town will suffer irreparable harm if the construction project is interrupted, whereas the defendants have not shown that they will suffer irreparable harm if the project continues according to the terms of the construction easement. The public interest will also be harmed if the defendants' interference with the Town's easement rights is permitted to continue, because the Town must immediately remediate certain effects of the construction, and any delay could

1

cause additional harm to the environment. The public interest will also be harmed by any delay in the completion of the Town's water project.

## FACTS

At a special town meeting on June 25, 2001, following a six-year search for an additional water supply source, the Town voted to acquire a 185-acre parcel of land on the south side of Lake Pearl and on the west side of the Desert Brook inlet for water supply and conservation purposes. At the same time, the Town appropriated $5.3 million for a comprehensive upgrade to its water supply and distribution system, including the installation of a new well on the Lake Pearl property, and the extension of new water mains from the north and the east to connect the new well into the water distribution system, and the acquisition of easements necessary therefor. Verified Complaint, ¶ 3. A plan depicting the new well site and well treatment station, and the new water mains connecting the well to the Town's existing distribution system, is attached to the Verified Complaint as Exhibit A.

As part of the water supply project, the Wrentham Board of Selectmen, after completing an appraisal process, offered the sum of $21,500 to the defendants for two easements between East Side Road and the Desert Brook inlet of Lake Pearl. The first was a permanent easement thirty feet in width along the northerly side line of the defendant's property for the construction, installation, operation, maintenance, repair and replacement of subsurface water mains. The second easement was a temporary construction easement fifty feet in width, including the area of the permanent easement and an additional twenty feet, expiring on January 1, 2004. The purpose of the construction easement was to stage a subsurface crossing of the Desert Brook inlet of Lake Pearl by way of a "direct drilling" process. Verified Complaint, ¶ 6.

2

On October 23, 2002, the defendants tendered an instrument conveying the above described easements to the Town. Verified Complaint, ¶ 7 and Exhibits B and C. On November 26, 2002, the Town recorded the easements at the Norfolk County Registry of Deeds. The Town tendered payment of the $21,500 sum to the McEvoys, less amounts previously paid directly on the McEvoys' behalf to an engineering firm for the design of a septic system upgrade for the McEvoy property, on or before that date. Verified Complaint, ¶ 8.

The Town's contractors began the direct drilling process under the Desert Brook inlet on or about April 28, 2003. The drilling equipment was set up on the Town's property. During the drilling process, a return pipe was set up on the defendants' property to capture a bentonite clay mixture injected into the tunnel bore to seal the tunnel and return it to the west side of the inlet. A truck-mounted compressor was used on the defendants' property to pump the bentonite clay mixture through the return pipe. On various occasions, a backhoe was used on the defendants' property to assist in completing the connection between the flexible pipe being inserted under Lake Pearl to the new water main in East Side Road. Verified Complaint, ¶ 9.

The drilling process required several attempts. The first drill attempt began on April 30, 2003, was unsuccessful, and was discontinued on May 5, 2003. The second attempt started on May 6, 2003, was unsuccessful, and was discontinued on May 8, 2003. The third attempt began and was aborted on May 9, 2003. The fourth and final attempt commenced on May 12, was interrupted for approximately one week over and after the Memorial Day holiday, and was completed on or about July 3, 2003. The return pipe and all ancillary equipment were removed from the defendants' property by the first week of August, 2003. Verified Complaint, ¶ 10. During the direct drilling process, some of the bentonite clay mixture injected into the tunnel

3

bore escaped into the Lake, requiring remedial action by the contractor. While there is no question that the Town hoped to avoid the need to recover lost bentonite material, and that the quantity of the material lost into the Lake was unexpectedly and unacceptably high, the Town did anticipate that some clean-up or remedial action might be necessary, and negotiated a construction easement lasting through the end of the year to allow for follow-up activity. Verified Complaint, ¶ 11.

On July 3, 2003, defendant Matthew McEvoy made a written demand for an additional payment of $50,000 from the Town, claiming damages as a result of the allegedly unexpected duration of the project, and the noise, truck traffic and water quality impacts incidental to the project. Verified Complaint, ¶ 12, Exhibit D.

On or about July 7, 2003, after the July 4th holiday weekend, it became apparent to the Town that the top of the pipe under the Desert Brook inlet had become visible at the bottom of the inlet, and that it therefore did not comply with the specifications of the contract requiring a minimum of five feet of cover. As a result, additional work is required within the inlet to reset the pipe at the correct depth. Verified Complaint, ¶ 13. In order to address this problem, the Wrentham Conservation Commission issued an enforcement order on or about July 21, 2003 to the Wrentham Department of Public Works under the Wetlands Protection Act and the Town's Wetlands Protection Bylaw directing the Town to develop and implement a plan, in consultation with the Conservation Commission, the United States Army Corps of Engineers and the United States Environmental Protection Agency for resetting the pipe and recovering the lost bentonite clay mixture. Verified Complaint, Exhibit E. From that date, if not before, the Town began the process of acquiring the permits and approvals necessary to excavate the lake bed to reset the

4

pipe and to complete the process of recovering and removing the bentonite clay mixture that was discharged into Lake Pearl.  Verified Complaint, ¶ 14.

The Town acquired the necessary permits and approvals for the completion of the project, including the clean-up of the bentonite clay mixture, by the end of September, 2003. The project requires the temporary installation of two 6-inch pipes across the defendants' property from East Side Road to the shore in order to recover the bentonite clay mixture to an impoundment that has been constructed off East Side Road, and to return clean water to the Lake. The project also calls for personnel to enter the property on foot to inspect and monitor this equipment. All other work is to be done from the Town's property or from a barge in the Lake. The work is expected to be completed within approximately four to six weeks. Verified Complaint, ¶ 15.

On September 30, 2003, the defendants, through their counsel, reiterated in writing their demand for compensation for the alleged overburdening of the easement and indicated that they would not permit the use of the construction easement for the completion of the project. The Town responded that its use of the construction easement for access to the Desert Brook inlet was necessary for the completion of the project and within the scope of the easement, and advised the defendants against any interference with its easement rights. Verified Complaint, ¶ 16, Exhibit F.

During the week of October 20, 2003, the Town's contractors attempted to enter the construction easement for the purpose of completing the project. The contractors abandoned that effort, reporting that the defendant Matthew McEvoy had demanded that they leave his property and had stated that he would deny them access to it. Verified Complaint, ¶ 17, Exhibit G.

On October 28, 2003, the Town filed a Verified Complaint seeking to enjoin the

5

defendants from obstructing or interfering with the Town's use of its easements. On November 3, 2003, the defendants filed a Motion for Temporary Restraining Order/Preliminary Injunction to prevent the Town from entering onto the defendant's property without written approval.

## ARGUMENT

To prevail on a motion for a preliminary injunction, the moving party must show that (1) it is likely to succeed on the merits, (2) it will suffer a substantial risk of irreparable harm if the injunction is not granted, and (3) the risk of such irreparable harm outweighs any irreparable harm to the other side. Additionally, where the defendants seek to enjoin governmental action, the defendants have the burden of proving that the public interest will not be adversely affected by issuance of their order for a preliminary injunction. *Siemens Building Technologies, Inc. v. Division of Capital Asset Management*, 439 Mass. 759, 761-762 (2003); *Packaging Industries Group, Inc. v. Cheney*, 380 Mass. 609, 617 (1980).

## A.    The Town is likely to succeed on the merits.

The Town is likely to succeed on the merits, because its proposed use of the defendants' property is within the temporal scope of the easement, is within the geographic scope of the easement, and is directly and necessarily related to the construction project for which the easement was acquired. Verified Complaint, ¶ 19. The easement purchased by the Town from the defendants specifically allows construction to occur at the defendants' property until January 1, 2004. See Exhibit B, p. 1. This end-date was set by the Town because complications and delays associated with unforeseen conditions often affect construction projects of this magnitude. The easement that the defendants conveyed to the Town was drafted to account for this possibility by providing both an ample staging area for the project, and ample time for the

6

completion of the work. The easement also specifies that its purpose is not only to permit the use of the property for the installation of the water main across the defendants' land, but also to facilitate the extension of that water main under the Desert Brook inlet to the opposite shore owned by the Town. See Exhibit B, p. 1. The easement is explicit, and the defendants understood, that their property was to be used as a staging area to effect the water main crossing of the Desert Brook inlet. As the Town's proposed activities on the site are lawful and consistent with the easement rights it purchased from the defendants, the Town is likely to succeed on the merits of its case.

The defendants' motion and Affidavit of Matthew McEvoy do not refute or otherwise challenge the fact that the Town has a valid construction easement over the defendants' property until January 1, 2004. Indeed, Mr. McEvoy's affidavit does not address the merits of the Town's need to access the Lake to complete the setting of the pipe or the remediation of the bentonite; he asserts that suffered property damages and nuisance conditions during, or as a result of, the drilling process last summer. His complaints regarding the condition of the Lake (McEvoy affidavit, ¶ 10) raise issues that affected numerous other lakefront property owners and are not a result of the easement area on his property. While the duration of the project may have exceeded the defendants' expectations, it remains well within the scope of the easement that the Town bargained for and purchased. Given that the easement contains no express limitation on the scope of the construction activities that may take place on the defendants' property other than the set end-date, the fact that unexpected subsurface conditions in the Desert Brook inlet caused the construction to take longer than the defendants anticipated does not entitle them to an injunction against the Town.

7

**B.**    **The Town will suffer a substantial risk of irreparable harm if its injunction against the defendants is not granted.**

The Town will be irreparably harmed if the defendants' interference with its easement rights is permitted to continue. Specifically, the Town will be unable to complete the project before the construction easement expires by its own terms on January 1, 2004. Furthermore, the Town may have incurred and may continue to incur liabilities to its contractors for any delay in completion of the project. Verified Complaint, ¶ 24. When the defendants refused to allow the Town's contractors access to the property prior to this Court's issuance of the temporary restraining order against the defendants, the general contractor communicated to the Town that additional costs would begin to accrue at the rate of $2,000 per day on Wednesday, October 29, 2003 if work could not commence on that date. If this Court were to halt the Town's construction activities, the Town would immediately begin to incur costs from its contractors as a result of any such delay. The Town would be unlikely to recover any of these delay costs from the defendants, due to the inability of the defendants to pay a claim of such magnitude. Any interruption in the Town's construction schedule will also prevent the Town from removing the bentonite clay mixture from the water of the Desert Brook inlet. If the bentonite clay is not removed, it could cause additional environmental harm to wildlife in the area. See Verified Complaint, ¶ 25, and Exhibit E.

**C.**    **The risk of irreparable harm to the Town outweighs any harm to the defendants.**

The defendants will not be substantially or irreparably harmed by the Town's continued use of the construction easement, as the presence of two 6-inch pipes within the existing easement area will not materially interfere with their use or enjoyment of their property. Verified

8

Complaint, ¶ 26. If and to the extent that the defendants claim that past or proposed use of the construction easement is beyond the easement's scope, and to the extent the defendants have sought additional monetary compensation from the Town to that effect, the defendants have an adequate remedy at law and are not entitled to equitable relief. Preliminary relief should not be granted where there is an adequate remedy at law in the form of monetary damages. S&D Bernardi, Inc. d/b/a Johnson Drugs et al. v. Douglas S. Brown, as Acting Commissioner of the Division of the Division of Medical Assistance, 16 Mass. L. Rptr. No. 2, 33, 36 (April 21, 2003) (where there is an adequate remedy at law, moving party is not entitled to injunctive relief). If the defendants are found to have suffered harm as a result of the Town's construction activities, they have failed to show why a remedy of damages commensurate with that harm would not be an adequate remedy.

If the McEvoys' allegations concerning their damages are to be credited, then they clearly have the right to assert inverse condemnation claims under G.L. c. 79, or nuisance, property damage, or personal injury claims under the common law or G.L. c. 258. If the McEvoys assert such claims in an appropriate manner, it will give the Town the opportunity to defend them on their merits or to seek indemnification or contribution from its insurers or contractors in the orderly manner afforded by the rules of civil procedure. The defendants' attempt to "short-circuit" this process to obtain an immediate pay-off from the Town by trying to obstruct the Town's use of the easement for the purpose of completing the project should not be permitted or sanctioned by the Court.

**D.    Issuance of the Town's injunction against the defendants is in the public interest.**

Issuance of the Town's injunction against the defendants is in the public interest, because

9

the Town's construction activities on the defendants' property are necessary and vital to the completion of the Town's $5.3 million upgrade to its public water supply and distribution system. Any further halt of the construction as a result of the defendants' actions will harm the public interest by delaying the completion of the public water project and thus affecting water distribution to many Town residents. Verified Complaint, ¶ 25.

The public interest will also be harmed if the defendants' interference with the Town's easement rights is permitted to continue, or if the defendants' request for an injunction is granted, because the remediation of the discharge of bentonite clay into Lake Pearl will be delayed by any such action and the associated damage to the environment will be allowed to continue. If the Town is prevented from removing the bentonite clay, the cost of clean-up could also be more expensive due to the continued disbursement of the clay, and there is a risk that additional environmental harm will occur at the site. Verified Complaint, ¶ 25.

## CONCLUSION

For the foregoing reasons, the Town's application for preliminary injunction should be allowed, and the defendants' motion for a temporary restraining order/preliminary injunction should be denied.

TOWN OF WRENTHAM,
By its attorneys,

George A. Hall, Jr. (BBO#544493)
Elizabeth M. Pyle (BBO#647425)
Anderson & Kreiger, LLP
43 Thorndike Street
Cambridge, MA 02141
617-252-6575

A TRUE COPY
Attest: _____
Deputy Assistant Clerk
2/10/05

10

## CERTIFICATE OF SERVICE

I certify that I served this Memorandum on the plaintiff by hand delivery to his counsel of record, as listed below, this ___5th___ day of November, 2003.

George A. Hall, Jr.

Daniel R. Seigenberg, Esq.
128 School Street
Walpole, MA 02081

Wren\McEvoy\P\pi-memorandum.wpd

11

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO. 03-2018

TOWN OF WRENTHAM,                    *
    Plaintiff                             *
                                         *
v.                                    *
                                         *
MATTHEW and LEAH McEVOY,              *
    Defendants

## ANSWER OF DEFENDANTS, MATTHEW McEVOY AND LEAH McEVOY, TO VERIFIED COMPLAINT AND COUNTERCLAIM

The Defendants, Matthew McEvoy and Leah McEvoy (hereinafter referred to as the "McEvoys") respond to the Verified Complaint as follows:

### PARTIES

1.    Admitted.

2.    Admitted.

### FACTS

3.    Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 3 of the Complaint.

4.    Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 4 of the Complaint.

5.    Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 5 of the Complaint.

6.    Defendants admit that the Wrentham Board of Selectmen offered the sum of Twenty-One Thousand Five Hundred ($21,500.00) Dollars to the Defendants, Matthew and Leah McEvoy for two easements between Eastside Road and Desert Brook Inlet of Lake Pearl, that there was a permanent easement for the construction, installation, maintenance, repair and replacement of subsurface water mains and a second temporary construction easement expiring on January 1, 2004. Defendant denies the remaining allegations contained in Paragraph 6 of the Complaint.

7.    Defendants deny the characterization of the easements but admit the remaining allegations contained in Paragraph 7 of the Complaint.

8.    Admitted.

9.    Admitted.

10.    Defendants admit that the drilling process required several attempts but they are without information or knowledge sufficient to form a belief as to the precise dates of said drilling. Defendants deny that the fourth and final attempt was completed on or about July 3, 2003. Defendants deny the remaining allegations contained in Paragraph 10 of the Complaint.

11.    Defendants admit that during the direct drilling process betinite clay escaped into the lake but deny the remaining allegations contained in Paragraph 11 of the Complaint.

12.    Defendants admit that on or about July 3, 2003, the McEvoys made an offer of settlement to the Town of Wrentham in the amount of Fifty Thousand ($50,000.00) Dollars and that a true copy of the McEvoy correspondence is attached to the Complaint as Exhibit "D." Defendants deny the remaining allegations contained in Paragraph 12 of the Complaint and further state that as to the contents of their letter, the letter speaks for itself.

13.    Defendants deny that it was on or about July 7, 2003 after the July 4th Holiday weekend but admit the remaining allegations contained in Paragraph 13 of the Complaint and further state that it was Matthew McEvoy who made the initial observation that the top of the pipe was visible and did not comply with the specifications and so advised the Town.

14.    Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 of the Complaint.

15.    Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 of the Complaint.

16.    Defendants admit that on or about September 30, 2003 they sent to the Town, through their counsel, correspondence marked Exhibit "F" to the Complaint and that the correspondence dated October 7, 2003 also marked as Exhibit "F" to the Complaint is the Town's response. Defendants deny the remaining allegations contained in Paragraph 16 of the Complaint and further state that the terms of said correspondence speak for themselves.

17.    Denied.

## COUNT I

## TRESPASS/BREACH OF CONTRACT FOR EASEMENT

18.  Defendants restate their answers to Paragraphs 1 through 17 of the Complaint as if set forth herein.

19.  Denied.

20.  Denied.

21.  Denied.

## COUNT II

## DECLARATORY AND INJUNCTIVE RELIEF

22.  Defendants restate their answers to Paragraphs 1 through 21 of the Complaint as if set forth herein.

23.  Admitted.

24.  Denied.

25.  Denied.

26.  Denied.

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

## COUNTERCLAIM

1.  Defendants/Plaintiffs-in-Counterclaim, Matthew and Leah McEvoy are individuals residing at 815 Eastside Road, Wrentham, Norfolk County, Massachusetts.

2.  The Plaintiff/Defendant-in-Counterclaim, Town of Wrentham, is a municipal corporation with its offices at 100 Stonewall Blvd., Wrentham, Norfolk County, Massachusetts.

3.  The McEvoys at all times material thereto, have been and are the owners of the property known as 815 Eastside Road, Wrentham, Massachusetts.

4.  In 2002 the McEvoys were contacted by James Merriam, the Town Administrator for the Town of Wrentham, relative to granting the Town an

easement in order for them to lay a pipe for an extension of a new water main for the Town.

5. On or about October 23, 2003, the McEvoys executed an Utility and Construction Easement granting to the Town of Wrentham a utility easement under a portion of their property and also a temporary construction easement relative to the construction and installation of said water main. A copy of said Utility and Construction Easement is attached to Plaintiff's Complaint and marked Exhibit "B."

6. Prior to executing the Utility and Construction Easement, James Merriam, acting in behalf of the Town of Wrentham, represented to the McEvoys that the construction work on their property would only take a few weeks and would be completed before Memorial Day 2003.

7. James Merriam also represented that the construction work would only take approximately two weeks with minor disruptions and possibly one or two days with major disruptions.

8. The construction work began in the spring of 2003 and continued throughout much of the summer. On average, construction work began at 7:00 a.m. daily and ended most evenings at 7:00 p.m. Work crews worked six out of seven days of the week.

9. The disruption to the McEvoys and their family was quite significant.

10. As a result of the construction project, approximately twenty large and mature trees had to be removed from the McEvoys property. In addition a number of sinkholes and underground cave-ins have occurred and other damage has occurred to the McEvoys' property.

11. During the construction, the Town's contractor set up on the Town's new well site on the left side of Desert Brook Inlet and on the McEvoys' property and on the opposite shore for the direct drilling process relative to the installation of the new water main. The drilling process had numerous unsuccessful attempts. As a result of the drilling process a large amount of betinite clay was caused to be deposited into Lake Pearl and the immediate vicinity of the McEvoys' Property.

12. The water main pipe constructed by the Town of Wrentham and its contractors is not located within the easement area granted by the McEvoys but is located outside the easement area and on the McEvoys' property.

13. The release of large quantities of betinite clay into the lake requiring a massive clean up of the lake was not an expected or normal result of the drilling process.

14.    In September 2003, the Town of Wrentham obtained approval from the Army Corp of Engineers for a work plan for remediation of the betinite clay from the lake and to correct the improper installation of the water main.

15.    Under the terms of said plan, pipes have been placed onto the McEvoys' property with pipes located in the general vicinity of their driveway. Neither the Board of Selectmen nor the Town Administrator advised the McEvoys of their plan to utilize their property relative to the clean up.

16.    The Town of Wrentham, its agents, servants, or employees have begun said work.

17.    The proposed remediation and removal of the betinite clay from Lake Pearl and the utilization of the McEvoys' property relative thereto is not within the scope of the Utility and Construction Easement.

18.    Based on the construction project, in addition to the removal of the 20 large and mature trees which acted as a buffer between the McEvoys' property and their neighbor's property, damage has occurred to the McEvoy's property and the McEvoy's use and enjoyment of their property was and has been diminished.

## COUNT I

### TRESPASS

19.    The McEvoys reallege the allegations contained in Paragraphs 1 through 18 of the Counterclaim as if set forth herein.

20.    The Town of Wrentham, its agents, servants, and employees have without lawful authority and in breach of the terms of the Utility and Construction Easement, have entered upon the real estate of the McEvoys and committed a trespass thereon and said trespass continues.

## COUNT II

### NEGLIGENT MISREPRSENTATIONS

21.    The McEvoys reallege the allegations contained in Paragraphs 1 through 20 of the Counterclaim as of set forth herein.

22.    The Town of Wrentham negligently misrepresented to the McEvoys the nature, scope, and duration of the construction project relative to the installation of the water main.

23.   Said representations made by the Town of Wrentham to the McEvoys were false.

24.   The construction work relative to the project began in the spring of 2003 and continued throughout much of the summer. On average construction began at 7:00 a.m. daily and ended most evenings at 7:00 p.m. Work crews worked approximately six of the seven days of the week.

25.   In contrast to the minor disruptions as represented by the Town of Wrentham, the construction project had significant and still has significant impact on the McEvoys, including the cancellation of many family and social functions. The Town of Wrentham and its contractors installed a 20" pipe running directly through the McEvoys swimming area and said pipe eliminated access to their boat dock. Another recreational dock on the McEvoys' property became a staging area engulfed by hundreds of sandbags.

26.   Based on the construction work there was a stench of rotten hay bales, stagnant water, and an unusual amount of dead fish in the lake, which made the air quality around the McEvoys' house intolerable for the family.

27.   Access to the McEvoys' property has been and will be significantly disrupted.

28.   Based on and in reliance on the misrepresentations of the Town of Wrentham, the McEvoys entered into the Utility and Construction Easement.

29.   The McEvoys relied on the misrepresentations to their detriment.

30.   As a result of the negligent misrepresentations, the McEvoys have suffered damages.

## COUNT III

## NEGLIGENCE

31.   The McEvoys reallege the allegations contained in Paragraphs 1 through 30 of the Counterclaim as if set forth herein.

32.   The Town of Wrentham, its agents, servants, or employees were negligent relative to the performance of the construction project.

33.   As a direct and proximate result of the negligence of the Town of Wrentham, its agents, servants, or employees the McEvoys have been damaged.

## COUNT IV

## DECLARATORY RELIEF

34.    The McEvoys reallege the allegations contained in Paragraphs 1 through 33 of the Counterclaim as if set forth herein.

35.    There is an actual controversy between the Town of Wrentham and the McEvoys regarding the scope of the Utility and Construction Easement, the location of the water main, and the proposed clean up and utilization of the McEvoys' property.

WHEREFORE, the Defendants/Plaintiffs-in-Counterclaim, Matthew McEvoy and

Leah McEvoy, respectfully request that this Court:

1.    Enter judgment in favor of the McEvoys against the Town of Wrentham and that monetary damages be awarded to the McEvoys.

2.    Award to the McEvoys interest and costs of this action.

3.    Declare that the Town of Wrentham has exceeded the scope of its easement rights and, particularly that the remediation of the betinite clay and activities related thereto are not within the scope of the Town of Wrentham's construction easement.

4.    Declare that the location of the water main pipe is outside the easement granted to the Town and is located on the McEvoys' property.

5.    Award such other relief as this Court deems just and proper.

Respectfully Submitted,
MATTHEW McEVOY and
LEAH McEVOY,
Defendants/Plaintiffs-in-Counterclaim
By Their Attorney

A TRUE COPY
Attest: _____
Deputy Assistant Clerk

3/10/05

LAW OFFICE OF
DANIEL R. SEIGENBERG

_November 5, 2003_
Dated:

Daniel R. Seigenberg, Esquire
128 School Street
Walpole, MA 02081
(508) 668-9800
BBO # 451100

DEFENDANTS/PLAINTIFFS-IN-COUNTERCLAIM DEMAND TRIAL BY
JURY ON ALL ISSUES.

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS                         SUPERIOR COURT DEPARTMENT
                                    CIVIL ACTION NO. 03-2018

TOWN OF WRENTHAM,            *
        Plaintiff            *
                             *
v.                           *
                             *
MATTHEW and LEAH McEVOY,     *
        Defendants

**AFFIDAVIT OF  MATTHEW McEVOY**

I, Matthew McEvoy, under oath, hereby depose and state as follows:

1.    I am one of the defendants in the above-captioned matter.

2.    My wife and I are the owners of the property at 815 Eastside
      Road, Wrentham, Massachusetts and reside there with our four
      children.

3.    In 2002, I was contacted by James Merriam, the Town
      Administrator for the Town of Wrentham, relative to granting the
      Town an easement in order for them to lay a pipe for an extension
      of a new water main for the Town.

4.    On or about October 23, 2002 my wife and I executed a utility and
      construction easement granting to the Town of Wrentham a utility
      easement under a portion of our property and also a temporary
      construction easement relative to the construction and installation
      of said water main. A copy of said Utility and Construction
      Easement is attached as Exhibit "B" to Plaintiff's Complaint.

5.    Prior to executing the Utility and Construction Easement, I had
      discussions with James Merriam.  Mr. Merriam advised me that the
      construction work on my property would only take a few weeks
      and would  be completed before Memorial Day 2003.

6.    My property is adjacent to Lake Pearl in the Town of Wrentham
      and, my wife and I and our four sons particularly utilize the lake in
      the summer for numerous water activities including boating,
      swimming, and water skiing.  In addition, particularly in the
      summer, we utilize our property for numerous outside activities

including, family get togethers, barbecues, and other such activities.

7. As such, it was particularly important for me and my family that the construction project planned by the Town be completed before Memorial Day weekend. Based on the representations of Mr. Merriam I executed the Utility and Construction Easement. Mr. Merriam also advised me that we would have approximately two weeks with minor disruptions and possibly one or two days with major disruptions relative to the construction.

8. The construction work began in the Spring of 2003 and continued throughout much of the summer. On average, construction began at 7:00 a.m. daily and ended most evenings at 7:00 p.m. Work crews arrived for construction six out of seven days of the week.

9. The disruption to my family and I has been quite significant. Due to the constant construction done on our property our vehicles needed to be moved out of the driveway each morning and parked further up the street. The quality and quantity of our family time and personal time was severely limited. The Town installed a 20" pipe running directly through our swimming area. The pipe eliminated access to our boat dock. Another recreational dock on our property became a staging area engulfed by hundreds of sandbags. Many family functions normally held at out home including three Spring birthdays, Mother's Day cookout, Memorial Day cookout, Father's Day cookout, end of school party, Fourth of July barbecue, and numerous water activities involving the lake all had to be cancelled. A wedding rehearsal party also scheduled to be held on our property was forced to be relocated.

10. Based on the construction work, there was a stench of rotten hay bails, stagnant water and an unusual amount of dead fish in the lake, which made the air quality around our house intolerable for our family. Huge amounts of bentinite clay were caused to be spread into the lake. Sinkholes appeared in the swimming areas.

11. Based on the construction project, approximately 20 large and mature trees had to be removed from my property. These trees acted as a buffer between my house and my neighbor's house. In addition, a number of sink holes and underground cave ins have occurred on my property. On October 14, 2003 I was walking on my property in the area where the construction had taken place, and the ground collapsed, causing me to fall into a large hole resulting in a probable dislocation of my shoulder. Recently, we had parked our Chevrolet Blazer motor vehicle in our driveway.

While the vehicle was parked, the ground collapsed causing the front end of the vehicle to fall into a sinkhole. There are large tunnels and sinkholes under my property caused by the construction where digging had occurred and where an abandoned pipe from this construction project was located.

12. My wife and I have tried to work with the Town to the best of our ability. During the construction phase, which extended from the Spring through most of the Summer of 2003 I was cooperative with the Town employees and the various workers who came onto my property.

13. In September 2003, the Town applied to the Army Corp. of Engineers for approval of a work plan for remediation of the bentinite clay from the lake and to correct the improper installation of the water pipeline.

14. Under the terms of said plan, pipes have been placed on our property with the pipes located in the general vicinity of our driveway. Neither the Board of Selectmen nor the Town Administrator advised us of their plan to utilize our property relative to the clean up.

15. I have worked in construction many years and have excavating and drilling experience. The loss of large quantities of bentinite clay into the lake is not an expected and normal result of the drilling process. As the Town of Wrentham, through its representatives have conceded nobody anticipated the significant and numerous problems that have occurred in the drilling process, in particular, the release of mass quantities of bentinite clay into the lake requiring a massive clean-up of the lake.

16. When I heard of the proposed clean-up plans of the lake, which was to utilize my property, I had my attorney send correspondence to James Merriam, Town Administrator. A copy of the correspondence dated September 30, 2003 from Daniel R. Seigenberg, Esquire is attached to Plaintiff's Complaint and marked Exhibit "F."

17. Upon information and belief the proposed clean up and utilization of my property is not within the scope of the Utility and Construction Easement and constitutes a trespass on my property. My attorney and I attempted to enter into a new agreement with the Town of Wrentham in which the nature and extent of the proposed remediation and use of our property would be detailed and an easement would be granted in order to allow said remediation work

to be performed. My attorney and I had a productive and open meeting with representatives of the Town including Town Counsel, Town Administrator, and the head of the Department of Public Works. Upon information and belief, when the tentative proposal was presented to the Board of Selectmen, the Board of Selectmen flatly rejected said proposal.

18. My wife and I are extremely upset as to the conduct of the Town of Wrentham, its agents and employees. While several of the Town employees have expressed their regrets and recognition of the extent of the disruption to the lives of my family and I and the recognition of need to provide additional compensation to my and I for said intrusions, damage to our property, and future use of our property, the Board of Selectmen have been totally unresponsive and callous.

19. Recently, after the Board of Selectmen refused to even discuss with us our proposal relative to a grant of new easement, I simply advised Fred Coleman of Coleman Dredging that we have no agreement with the Town and that we could not workout the matter with the Town of Wrentham. In a very friendly and conversational tone, I advised him that I would like him to remove his pipes from my property because I believed he was trespassing. I never ordered him off my property, although I do believe the laying of the pipes relative to the removal of the bentinite clay does constitute a trespass and is without authorization.

20. Upon information and belief, the proposed remediation work utilizing my property exceeds the scope of the Utility and Construction Easement my wife and I granted to the Town.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS _3 rd_ DAY

OF NOVEMBER 2003.

_Matthew McEvoy_

Matthew McEvoy

A TRUE COPY

Attest: _____

Deputy Assistant Clerk

2/10/05

Docket
Clerk 11/5/03

RECEIVED & FILED
CLERK OF COURTS
6.0

COMMONWEALTH OF MASSACHUSETTS NORFOLK COUNTY

NORFOLK, SS

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO. 03-2018

TOWN OF WRENTHAM,
Plaintiff

v.

MATTHEW and LEAH McEVOY,
Defendants

*
*
*
*
*
*

*November 10, 2003
After hearing, Defendants' Motion
For Preliminary Injunction is denied.
See Memorandum And Order of this
date. (Gants, J) Attesting J. Delong
Asst Clerk*

## MOTION OF THE DEFENDANTS, MATTHEW McEVOY AND LEAH McEVOY, FOR TEMPORARY RETRAINING ORDER/PRELIMINARY INJUNCTION

NOW COME the Defendants, Matthew McEvoy and Leah McEvoy in the above-captioned matter pursuant to Rule 65 of the Mass. R. Civ. P. and request that this Honorable Court enter a temporary restraining order or preliminary injunction against the Town of Wrentham, its servants, agents, employees, or anyone acting in behalf of the Town of Wrentham from entering onto the premises owned by the McEvoys at 815 Eastside Road, Wrentham, Massachusetts relative to the clean-up and recovery of the bentonite clay mixture without obtaining written approval from the McEvoys.

In support of this Motion, Defendants rely on their affidavit filed herewith.

Respectfully Submitted,
MATTHEW McEVOY and
LEAH McEVOY, Defendants
By Their Attorney

LAW OFFICE OF
DANIEL R. SEIGENBERG

_November 3, 2003_
Dated:

Daniel R. Seigenberg, Esquire
128 School Street
Walpole, MA 02081
(508) 668-9800
BBO # 451100

Attest: _____
8/10/05

# COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS.

SUPERIOR COURT
CIVIL ACTION
NO. 03-2018    NORFOLK COUNTY

## TOWN OF WRENTHAM,
Plaintiff

vs.

## MATTHEW McEVOY and LEAH McEVOY,
Defendants

## MEMORANDUM AND ORDER ON CROSS MOTIONS FOR A PRELIMINARY INJUNCTION

In June 2001, the plaintiff, the Town of Wrentham ("Town"), purchased a parcel of land on the south side of Lake Pearl in Wrentham to install a new well to supplement the Town's water supply. The Town intended to connect the new well to its existing water distribution system on the other side of Lake Pearl by digging a tunnel under Lake Pearl and placing a subsurface water main through that tunnel that would feed into the Town's existing water main. In October 2002, the Town purchased for $21,000 a Utility and Construction Easement ("the Easement") from the defendants, Matthew and Leah McEvoy ("the McEvoys"), along a portion of their property on the shore of Lake Pearl at 815 East Side Road in Wrentham. According to its terms, the Utility Easement, containing roughly 4,022 square feet, was "granted for the construction, installation, operation, maintenance, repair and replacement of subsurface water mains connecting the existing water main terminus" to the well across the lake. A narrower, separate Construction Easement, located adjacent to the Utility Easement and running its length, was also granted, but the Construction Easement was only temporary, terminating on January 1, 2004.

The construction of the new water main under Lake Pearl did not go as planned. During

the drilling of the tunnel, a substantial quantity of bentonite clay that had been injected into the tunnel bore escaped into the lake. Moreover, the water main pipe laid under the lake did not meet the contract specifications, and needs to be reset. By Order of the Wrentham Conservation Commission, the water main pipe could not be reset until the Town had cleaned up the bentonite clay mixture that had fouled Lake Pearl. This clean-up essentially entails dredging the lake bottom and transferring the recovered bentonite clay through two six inch pipes that sit on top of the Easement on the McEvoy property and eventually feed into an impoundment quarry.

The McEvoys contend that the Town's use of their property to transfer the bentonite clay from the lake into the quarry exceeds the scope of the Easement and infringes their right to enjoy their property. The Town contends that this use of the Easement falls within the permissible scope of the Easement that it purchased from the McEvoys. The Town, having already obtained an ex parte temporary restraining order barring the McEvoys from interfering with the Town's use of the Construction Easement, now seek to transform that into a preliminary injunction. The McEvoys seek a preliminary injunction barring the Town from entering onto their property without their approval for the purpose of cleaning-up and recovering the bentonite clay mixture from the lake. After hearing, the Town's motion for preliminary injunction is **ALLOWED** and the McEvoys' motion for preliminary injunction is **DENIED**.

**DISCUSSION**

**Standard for a Preliminary Injunction**

In determining whether to grant a preliminary injunction, this Court must perform the three-part balancing test articulated in <u>Packaging Industries Group, Inc</u>. v. <u>Cheney</u>, 380 Mass. 609, 616-617 (1980). First, the court must evaluate the moving party's claim of injury and its likelihood of success on the merits. <u>Id</u>. at 617. Second, it must determine whether failing to

issue a preliminary injunction would subject the moving party to irreparable injury -- losses that

cannot be repaired or adequately compensated upon final judgment. Id. at 617 & n. 11. Third,

"[i]f the judge is convinced that failure to issue the injunction would subject the moving party to

a substantial risk of irreparable harm, the judge must then balance this risk against any similar

risk of irreparable harm which granting the injunction would create for the opposing party." Id.

at 617. In balancing these factors, "[w]hat matters as to each party is not the raw amount of

irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of

the party's chance of success on the merits. Only where the balance between these risks cuts in

favor of the moving party may a preliminary injunction properly issue." Id.  In an appropriate

case, like this, "the risk of harm to the public interest also may be considered." Brookline v.

Goldstein, 388 Mass. 443, 447 (1983).

**Applying the Standard**

While recognizing that it is a close question, this Court finds that the Town is likely to

prevail on the merits. Certainly, when the Easement was granted, it was not anticipated that the

completion of the installation of the water mains would require dredging the lake bottom to

recover bentonite clay and transferring that clay through two six inch pipes over the Easement

into a nearby quarry. Yet, the removal of the bentonite clay is now a necessary step in the

construction of the water mains. It may indeed be true that the Utilities Easement does not

include the **above-ground** placement of the six inch pipes that are transferring this clay to the

quarry, because the terms of that Easement include only the "construction, installation, operation,

maintenance, repair and replacement of **subsurface** water mains ...." (Emphasis added). Yet, the

temporary Construction Easement is not so limited, and reasonably may be construed to permit

the degree of intrusion necessary to construct the subsurface water mains. Since the removal of

the bentonite clay through above-ground pipes is now a necessary step in the completion of the subsurface water mains, the use of the Construction Easement for that purpose is likely to be found to fall within its scope.

The failure to grant the Town a preliminary injunction protecting its right to use the Construction Easement for this purpose would likely cause significant irreparable injury to the Town, because it would result in a substantial risk that the completion of the water mains would be delayed beyond January 1, 2004, when the Construction Easement expires by its terms. If the Town cannot complete this project before then, the McEvoys would be able either to prevent the completion of the project or to insist upon an exorbitant sum in return for an extension of the Easement. On the other hand, the McEvoys would not likely suffer significant irreparable injury if the Town were permitted to complete its use of the Construction Easement through the end of this year. While this Court acknowledges that the above-ground placement of these pipes significantly interferes with the McEvoys' enjoyment of their property, they could be compensated in money for the additional burden they suffered from the unforeseen use of their Easement. Moreover, given the weather, the McEvoys are not likely to enjoy their lakefront property in the same way in late November and December as they would in July and August. Balancing the risks of irreparable injury substantially favors the Town.

Considering the risk of harm to the public interest also substantially favors the Town. The Town has already invested a considerable amount of money in this water project and its residents would be severely harmed financially if the project were not successfully concluded or were concluded at a substantially inflated price.

## ORDER

For the reasons stated above, this Court hereby **ALLOWS** the Town's motion for a

preliminary injunction and **DENIES** the McEvoys' motion for preliminary injunction.

Therefore, pending the conclusion of this litigation, this Court **ORDERS** the McEvoys and their

agents not to interfere with the Town's use of the Construction Easement until that Easement

expires at 12:01 a.m. on January 1, 2004.

_Ralph D. Gants_
Ralph D. Gants
Justice of the Superior Court

DATED: November 10, 2003

# COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT
CIVIL ACTION

TOWN OF WRENTHAM

NO.   03-2018

............................................, *Plaintiff(s)*

v.

MATTHEW MCEVOY AND LEAH MCEVOY
, *Defendant(s)*

RECEIVED & FILED
**CLERK OF THE COURTS**
NORFOLK COUNTY
11/13/03

## SUMMONS AND RESTRAINING ORDER

To the above-named Defendant:

You are hereby summoned and required to serve upon    George A Hall Jr    ,
Anderson & Kreiger LLP
02141
plaintiff's attorney, whose address is   43 Thorndike STreet Cambridge, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Dedham either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

WE ALSO NOTIFY YOU that application has been made in said action, as appears in the complaint, for a preliminary injunction and that a hearing upon such application will be held at the court house at said Dedham ~~in the County of Suffolk~~, in the first session without jury of said court on   WEd    the   5th   day of  Nov   A.D.xx ,2003
prayer one

at 2:00pm  o'clock ~~A.M.~~, at which you may appear and show cause why such application should not be granted.

In the meantime, until such hearing, WE COMMAND YOU, said   defendants  and your agents, attorneys and counsellors, and each and every one of them, to desist and refrain from interfering with the Town's use of the construction easement from the present through December31, 2003, including, without limitation and communications with the Town's contractors or  subcontractors demanding that they vacate the easement or threatening the town's contractors or subcontractors with legal action

SUZANNE V. DELVECCHIO, Esquire
WITNESS, ~~ROBERT L. STEADMAN~~, Esquire, at         Dedham

the        29th    day of     October    , in the year of our Lord ~~one thousand~~
~~xxnine hundred and ninety~~ two thousand three

[signatures]

. Clerk.

NOTES:
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

F-30



**Norfolk County Sheriff's Department**   2015 Washington St. • Braintree, MA 02184 • (781) 326-1787

*Norfolk, ss.*

November 3, 2003

I hereby certify and return that on 10/30/2003 at 03:10PM I served a true and attested copy of the summons and restraining order with complaint in this action in the following manner: To wit, by delivering in hand to Matthew McEvoy at 815 East Side Road Wrentham, MA 02093. Conveyance ($4.50), Copies-Attestation ($5.00), Basic Service Fee ($30.00), Postage and Handling ($1.00), Travel ($9.60) Total Charges $50.10

_____
Deputy Sheriff

**Deputy Sheriff Joan Geer**

Dated:               , 19   .

**N.B.   TO  PROCESS  SERVER:-**

PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN

**Norfolk County Sheriff's Department**   2015 Washington St. • Braintree, MA 02184 • (781) 326-1787

*Norfolk, ss.*

November 3, 2003

I hereby certify and return that on 10/30/2003 at 03:10PM I served a true and attested copy of the summons and restraining order with complaint in this action in the following manner: To wit, by leaving at the last and usual place of abode of Leah McEvoy, 815 East Side Road Wrentham, MA 02093. Copies-Attestation ($5.00), Basic Service Fee ($20.00), Postage and Handling ($1.00) Total Charges $26.00

_____
Deputy Sheriff

**Deputy Sheriff Joan Geer**

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT
CIVIL ACTION
NO.

_____, Plaintiff

v.

_____, Defendant

SUMMONS
(Mass. R. Civ. P. 4)
AND
ORDER OF NOTICE
WITH
TEMPORARY RESTRAINING ORDER

TRUE COPY

_____
Virginia G. Foster
Assistant Clerk

2/10/05

RECEIVED & FILED
CLERK OF THE COURTS
NORFOLK COUNTY
12/03/03

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.                                SUPERIOR COURT DEPARTMENT
                                            OF THE TRIAL COURT
                                            CIVIL ACTION NO: 03-02018

```
                                    )
TOWN OF WRENTHAM,                   )
        Plaintiff/Defendant-In-Counterclaim   )
                                    )
v.                                  )
                                    )
MATTHEW McEVOY and LEAH McEVOY,     )
        Defendants/Plaintiffs-in-Counterclaim )
                                    )
```

## PLAINTIFF/DEFENDANT-IN-COUNTERCLAIM, TOWN OF WRENTHAM'S ANSWER TO DEFENDANTS/PLAINTIFFS-IN-COUNTERCLAIM'S COUNTERCLAIM AND AFFIRMATIVE DEFENSES

1.    Admitted.

2.    Admitted.

3.    Admitted.

4.    Admitted.

5.    Admitted.

6.    The Town of Wrentham admits the allegations in Paragraph 6 of the Counterclaim to the extent it alleges the Town Administrator communicated to the McEvoys the anticipated construction schedule as conveyed by the project engineers and/or contractors. Such communications included an estimated completion of the project construction by Memorial Day 2003. The Town of Wrentham denies each and every other allegation in Paragraph 6 of the Counterclaim.

7.    The Town of Wrentham admits the allegations in Paragraph 7 of the Counterclaim to the extent it alleges the Town Administrator communicated to the McEvoys the anticipated construction schedule as conveyed by the project engineers and/or contractors. Such communications included an estimate of two weeks of construction and limited major disruptions.

8.    The Town of Wrentham admits the allegations in Paragraph 8 of the Counterclaim to the extent it alleges the project began in the spring of 2003 and continued during the summer.

The Town of Wrentham denies each and every other allegation in Paragraph 8 of the Counterclaim.

9.   Denied.

10.   The Town of Wrentham admits the allegations in Paragraph 10 of the Counterclaim to the extent it alleges that tree removal was done in the area of the easement with the advice and consent of the McEvoys, and to the extent that sinkholes have occurred in the easement area. The Town of Wrentham denies each and every other allegation in Paragraph 10 of the Counterclaim.

11.   The Town of Wrentham denies the allegations in Paragraph 11 to the extent it alleges a "large amount" of betinite clay was deposited into Lake Pearl in the immediate vicinity of the McEvoy's property. The Town of Wrentham admits each and every other allegation in Paragraph 11 of the Counterclaim.

12.   Denied.

13.   Denied.

14.   The Town of Wrentham admits that it obtained approval from the Army Corps of Engineers for the remediation. The Town of Wrentham denies each and every other allegation in Paragraph 14 of the Counterclaim.

15.   The Town of Wrentham denies the allegations in Paragraph 15 of the Counterclaim in that all construction equipment was maintained within the area of the construction easement, and representatives of the Town fully informed the McEvoys of the clean-up plan.

16.   Admitted.

17.   Denied.

18.   Denied.

## COUNT I

19.   The Defendant-In-Counterclaim, Town of Wrentham, repeats and realleges its answers to Paragraphs 1-18 of the Defendants' Counterclaim.

20.   Denied.

## COUNT II

21.    The Defendant-In-Counterclaim, Town of Wrentham, repeats and realleges its answers to Paragraphs 1-20 of the Defendants' Counterclaim.

22.    Denied.

23.    Denied.

24.    The Town of Wrentham admits the allegations in Paragraph 24 of the Counterclaim to the extent it alleges the project began in the spring of 2003 and continued during the summer. The Town of Wrentham denies each and every other allegation in Paragraph 24 of the Counterclaim.

25.    Denied.

26.    Denied.

27.    Denied.

28.    Denied.

29.    Denied.

30.    Denied.

## COUNT III

31.    The Defendant-In-Counterclaim, Town of Wrentham, repeats and realleges its answers to Paragraphs 1-30 of the Defendants' Counterclaim.

32.    Denied.

33.    Denied.

## COUNT IV

34.    The Defendant-In-Counterclaim, Town of Wrentham, repeats and realleges its answers to Paragraphs 1-33 of the Defendants' Counterclaim.

35.    Denied.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The Defendants/Plaintiff-In-Counterclaim's Counterclaim fails to state a claim against the Plaintiff/Defendant-In-Counterclaim, Town of Wrentham, upon which relief can be granted.

### SECOND DEFENSE

The Defendants/Plaintiffs-In-Counterclaim's Counterclaim fails to state a claim against the Plaintiff/Defendant-In-Counterclaim, Town of Wrentham, upon which relief can be granted in that the Plaintiff/Defendant-In-Counterclaim, Town of Wrentham, has no obligation to pay the Defendants/Plaintiffs-In-Counterclaim any amount of the loss or damages alleged.

### THIRD DEFENSE

The Plaintiff/Defendant-In-Counterclaim, Town of Wrentham, states that if the Defendants/Plaintiffs-In-Counterclaim suffered damages as alleged, such damages were caused by someone for whose conduct the Plaintiff/Defendant-In-Counterclaim was not and is not legally responsible.

### FOURTH DEFENSE

The Plaintiff/Defendant-In-Counterclaim, Town of Wrentham, states that the Defendants/Plaintiffs-In-Counterclaim were guilty of contributory negligence and the damages, if any, recovered by the Defendants/Plaintiffs-In-Counterclaim shall be reduced in proportion to said negligence of the Defendants/Plaintiffs-In-Counterclaim in accordance with M.G.L. c. 231, §85.

### FIFTH DEFENSE

The Plaintiff/Defendant-In-Counterclaim, Town of Wrentham, states that the Defendants/Plaintiffs-In-Counterclaim's recovery is barred by virtue of M.G.L. c. 258.

### SIXTH DEFENSE

The Plaintiff/Defendant-In-Counterclaim states that the Defendants/Plaintiffs-In-Counterclaim's recovery is barred by the doctrine of sovereign immunity.

### SEVENTH DEFENSE

The Plaintiff/Defendant-In-Counterclaim, Town of Wrentham, states that the Defendants/Plaintiffs-In-Counterclaim's claims against it are based on the Plaintiff/Defendant-In-

4

Counterclaim's alleged exercise or performance or failure to exercise or perform a discretionary function or duty and/or on the Plaintiff/Defendant-In-Counterclaim, Town of Wrentham's, employees' alleged exercise or performance or failure to exercise or perform a discretionary function or duty within the scope of their employment. The Defendants/Plaintiffs-In-Counterclaim's claims against the Plaintiff/Defendant-In-Counterclaim are, therefore, barred by virtue of M.G.L. c. 258, §10(b).

## EIGHTH DEFENSE

The Plaintiff/Defendant-In-Counterclaim, Town of Wrentham, states that the Defendants/Plaintiffs-In-Counterclaim's recovery is barred by virtue of M.G.L. c. 258, §10(j).

## NINTH DEFENSE

The Plaintiff/Defendant-In-Counterclaim, Town of Wrentham, states that the Defendants/Plaintiffs-In-Counterclaim's recovery, if any, is limited pursuant to the provisions of M.G.L. c. 258, §2.

## TENTH DEFENSE

The Plaintiff/Defendant-In-Counterclaim, Town of Wrentham, states that the Defendants/Plaintiffs-In-Counterclaim, by virtue of their actions or conduct and/or the actions or conduct of their agents, servants, employees or representatives, cannot recover from the Plaintiff/Defendant-In-Counterclaim.

## ELEVENTH DEFENSE

The Plaintiff/Defendant-In-Counterclaim, Town of Wrentham, states that there was no causal relationship between the Defendants/Plaintiffs-In-Counterclaim's alleged damages and the acts or omissions of the Plaintiff/Defendant-In-Counterclaim; therefore, the Defendants/Plaintiffs-In-Counterclaim cannot recover against the Plaintiff/Defendant-In-Counterclaim for negligence.

## TWELFTH DEFENSE

The Plaintiff/Defendant-In-Counterclaim, Town of Wrentham, states that the Defendants/Plaintiffs-In-Counterclaim's damages, if any, were caused by an act of God and, therefore, Defendants/Plaintiffs-In-Counterclaim's recovery against the Plaintiff/Defendant-In-Counterclaim is barred.

## THIRTEENTH DEFENSE

The Plaintiff/Defendant-In-Counterclaim, Town of Wrentham's, conduct with respect to

the easement on the property was authorized by law and, therefore, the Defendants/Plaintiffs-In-Counterclaim's recovery is barred.

## FOURTEENTH DEFENSE

The Plaintiff/Defendant-In-Counterclaim, Town of Wrentham's, conduct with respect to the easement on the property was both legal and reasonable and, therefore, the Defendants/Plaintiffs-In-Counterclaim's recovery is barred.

## FIFTEENTH DEFENSE

The Plaintiff/Defendant-In-Counterclaim, Town of Wrentham, states that the Defendants/Plaintiffs-In-Counterclaim's recovery is barred by virtue of M.G.L. c. 258, §10(c).

## SIXTEENTH DEFENSE

The Plaintiff/Defendant-In-Counterclaim, Town of Wrentham's, use of the easement was within the geographic and temporal limits of the easement and therefore Defendants/Plaintiffs-In-Counterclaim cannot recover.

## JURY DEMAND

The Plaintiff/Defendant-In-Counterclaim, Town of Wrentham, demands a trial by jury on all issues so triable.

Defendant-In-Counterclaim,
TOWN OF WRENTHAM,
By its attorneys,
PIERCE, DAVIS & PERRITANO, LLP

John J. Cloherty III, BBO #566522
Ten Winthrop Square
Boston, MA 02110
(617) 350-0950

CERTIFICATE OF SERVICE
I hereby certify that on this day a true copy of the
above document was served upon each attorney of
record, or pro se litigant, by mail by hand.

Date

A TRUE COPY
Attest
Deputy Assistant Clerk
2/10/05

6

# COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION NO: 03-02018

TOWN OF WRENTHAM,
    Plaintiff/Defendant-In-Counterclaim )

v.

MATTHEW McEVOY and LEAH McEVOY,
    Defendants/Plaintiffs-In-Counterclaim

## PUTATIVE THIRD-PARTY DEFENDANT JOHN ZIZZA'S EMERGENCY MOTION TO DOCKET NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. §1441(a)

Now comes the putative Third-Party Defendant, John Zizza, and hereby moves this Honorable Court to docket his Notice of Removal to Federal Court. As grounds therefore, the putative Third-Party Defendant states:

1. John Zizza is named as Third-Party Defendant by the Plaintiffs-in-Counterclaim, Matthew McEvoy and Leah McEvoy, in a proposed Amended Counterclaim, received by service dated December 13, 2004, naming Third-Party Defendant as an additional party. See Motion to Amend Counterclaim and accompanying proposed Amended Answer and Counterclaim (Attached hereto as **Exhibit A**).

2. John Zizza timely filed a Notice of Removal of the case with the Federal Court, however, pursuant to the Norfolk Superior Ct. Clerk Delaney, the Superior Clerk's Office will not accept the Notice of Removal for filing because John Zizza is not yet party to the case, and this Motion to Docket the Notice of Removal must be filed.

3. Under 28 U.S.C. § 1446(b) the time for removal "if the case stated by the initial pleading is

not removable" is "within thirty days after receipt of by the defendant, through service <u>or otherwise</u>, of a copy of the amended pleading." (emphasis added); <u>See</u> also <u>Murphy Bros. v. Michetti Pipe Stringing, Inc.</u>, 526 U.S. 344 (1999).

4.    This is an action in which the Defendants/Plaintiffs-in-Counterclaim allege, among other things, that Third-Party Defendant John Zizza, violated the Plaintiffs-in-Counterclaims' civil rights as actionable under 42 U.S.C. § 1983, specifying <u>inter alia</u>, a violation of the Fourth Amendment of the U.S. Constitution. <u>See</u> Exh. A ¶¶ 49; 56-58. Because this case involves federal constitutional issues and claims for relief under federal law, the United States District Court has original jurisdiction pursuant to 28 U.S.C. § 1331.

5.    The entire case may be removed because a separate and independent claim or cause of action within the jurisdiction of 28 U.S.C. § 1331 is joined with one or more otherwise non-removable claims or causes of action. <u>See</u> 28 U.S.C. § 1441(c).

6.    Federal Courts have held that removals by a third-party defendant is <u>not</u> premature despite the fact that, at the time of removal, the state court had not granted leave to serve the third-party defendant. <u>Delgado v. Shell Oil Co.</u>, 231 F.3d 165, 177 (5th Cir. 2000) <u>cert. denied</u> 532 U.S. 972 (where third-party defendant was a foreign state). The <u>Delgado</u> Court reasoned that service of process is <u>not</u> an absolute prerequisite to removal under 28 U.S.C.A. §§ 1446(b) and 1448. <u>Id.</u> (also holding that the removal statute pertaining to Foreign Sovereign Immunity Act "FSIA" removal does not differentiate between parties who have been served and those who have not); <u>see also</u> <u>Webster v. Sunnyside Corp.</u>, 836 F.Supp. 629 (D.C.Iowa 1993) (removal period begins as soon as defendants receive motion to amend not when motion is granted).

2

7.    In Massachusetts, the Federal Court's have impliedly recognized the ability of third-party defendants to remove cases. See Murphy v. Newell Operating Co., 245 F.Supp.2d 316, 319 (D.Mass. 2003) (discussing timing of third-party removal of case, but holding other defendants did not timely consent to removal violating the rule of unanimity); See also Plymouth Savings Bank v. I.R.S., 187 F.3d 203 (1st Cir. 1999) (reversing summary judgment for third party defendant that removed case as stated in Plymouth Savings Bank v. Jordan Hosp., 1998 WL 718120, 82 A.F.T.R.2d 98-5448 (D.Mass. Jul 08, 1998)).

8.    Section 1446 of Title 28 provides that removal is effected once a copy of the notice of removal is filed with the clerk's office and that, "the State court shall proceed no further therein unless and until the case is remanded." See 28 U.S.C. § 1446(d). Thus commentators have remarked, "[e]ven when the state court believes that the attempted removal is frivolous, present law prevents it from proceeding ... even if remand subsequently is directed by the federal court." Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3737 (3d ed.1998 and Supp.).

9.    As a result, the state court cannot make a determination as to whether or not the removal has been improper because such removal is governed by federal law and is a question reserved exclusively for the federal courts. Courts consistently have held and recognized that once a petition has been filed to remove a case to federal court, the state court is prohibited from proceeding any further unless there is an order of remand. See, e.g ., South Carolina v. Moore, 447 F.2d 1067, 1072-73 (4th Cir.1975); Lowe v. Jacobs, 243 F.2d 432, 433 (5th Cir.1957); Master Equipment, Inc. v. Home Ins. Co., 342 F.Supp. 549, 552 (E.D.Pa.1972); Garden Homes, Inc. v. District Court of Somerville, 336 Mass. 432, 435 (1957).

3

10.   Once the procedural steps have been taken to effect removal, the federal court has jurisdiction regardless of whether the case was removable or the removal was frivolous and any action taken by the state court after removal and prior to remand has no force or effect. Hopson v. North America Ins. Co., 71 Idaho 461, 466 (1951) (an order of default entered in state court after the filing of a petition for removal had no force and effect); People v. Martin-Trigona, 28 Ill.App.3d 605 (Ill.App.Ct.1975) (despite the state's contention that the removal petition was patently frivolous, the court held that once the procedural steps are taken to effect removal, the language of § 1446(e) clearly enjoins the state court from proceeding any further).

11.   Furthermore, proceedings that take place between removal and remand are impermissible even where removal is eventually found to be unwarranted. Hotel Martha Washington Management Co. v. Swinick, 71 Misc.2d 982, 984 (N.Y.App.Div.1972) (citing South Carolina v. Moore, supra).

12.   Given that this court has received notice of the third-party defendant's removal petition, this court lacks jurisdiction over the case and is thus enjoined from any further proceedings until the case is remanded.

13.   A motion to remand the case based on any defect other than subject matter jurisdiction must be made within 30 days after the filing the motion for removal under 28 U.S.C. § 1447, and any objections to the propriety of a removal should take the form of a motion to remand in federal court. Ciotti v. Aetna Cas. & Sur. Co., 511 F.Supp. 647, 648 (E.D.Pa.1981); State v. Francis, 261 N.C. 358, 360 (1964).

14.   It has been consistently held that a state court defendant may lose or waive the right to

4

remove a case to a federal court by taking substantial action in state court thereby indicating a willingness to litigate under the state's jurisdiction before filing a notice of removal with the federal court. See Plymouth & Brockton St. Ry. Co., v. Leyland, 422 Mass. 526, 531 (1996); see also, Scholz v. RDV Sports, Inc., 821 F.Sup. 1469, 1470 (M.D.Fla.1993) (the defendant waived its right to remove by proceeding to defend the action in state court or otherwise invoking the process of the state court).

15.    Long ago, the U.S. Supreme Court held that a defendant cannot "experiment on his case in the state court, and, upon an adverse decision, then transfer it to Federal Court." Rosenthal v. Coates, 148 U.S. 142, 147 (1893).

WHEREFORE, putative Third-Party Defendant, John Zizza, respectfully requests this Honorable Court to docket his Notice of Removal, and further certify the State Court record for removal to the United States District Court.

Respectfully submitted,
Third-Party Defendant,
JOHN ZIZZA,
By his attorneys,
Pierce, Davis & Perritano, LLP

John J. Cloherty III, BBO# 566522
Ten Winthrop Square
Boston, MA 02110
(617) 350-0950

I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each (other) party by mail or fax (by hand) on 1/13/05                .

5

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO. 03-2018

TOWN OF WRENTHAM,            *
         Plaintiff           *
                             *
v.                           *
                             *
MATTHEW and LEAH McEVOY,     *
         Defendants

## MOTION OF DEFENDANTS/PLAINTIFFS-IN-COUNTERCLAIM, MATTHEW McEVOY AND LEAH McEVOY TO AMEND THEIR ANWSER TO ADD AN ADDITIONAL AN COUNTERCLAIM and ADD JOHN ZIZZA AS AN ADDITIONAL PARTY

The Defendants/Plaintiffs-in-Counterclaim, Matthew McEvoy and Leah McEvoy (hereinafter the "McEvoys"), move this Honorable Court pursuant to Rules 15 and 20 of the Massachusetts Rules of Civil Procedure for leave to file an amended answer to assert additional counterclaims in the above-captioned matter and to add John Zizza as an additional party as a defendant-in-counterclaim. A copy of the proposed Amended Answer and Counterclaim is attached hereto and marked "Exhibit A."

In support of this Motion, the McEvoys state that through the discovery in this matter they learned of additional facts that support Counts VI -IX of their proposed counterclaims that their civil rights have been violated.

In support of this Motion, the McEvoys rely on the Memorandum filed herewith.

Attest: _____

2/10/05

__December 13, 2004__
Dated:

LAW OFFICE OF
DANIEL R. SEIGENBERG

_____
Daniel R. Seigenberg, Esquire
2 Commercial Street
Sharon, Massachusetts 020671
(781) 784-8800
BBO # 451100

1

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS                          SUPERIOR COURT DEPARTMENT
                                     CIVIL ACTION NO. 03-2018

TOWN OF WRENTHAM,                    *
        Plaintiff                    *
                                     *
v.                                   *
                                     *
MATTHEW and LEAH McEVOY,             *
        Defendants

## MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS/PLAINTIFFS-IN-COUNTERCLAIM, MATTHEW McEVOY AND LEAH McEVOY TO AMEND THEIR ANSWER TO ADD ADDITIONAL COUNTS and TO ADD JOHN ZIZZA AS AN ADDITIONAL PARTY

I.    Statement of Proceedings:

The Town of Wrentham (hereinafter the "Town") filed an initial complaint

against Defendants, Matthew McEvoy and Leah McEvoy (hereinafter referred to as

"McEvoys"). In said action the Town sought to enjoin the McEvoys from obstructing or

interfering with the use of an easement granted by the McEvoys to the Town for the

purpose of installing a water main from Eastside Road in Wrentham, Massachusetts

under the McEvoys' property and under a section of Lake Pearl, known as Desert Brook

Inlet to a new well site located on the opposite shore. The Town also sought declaratory

relief under G.L. c. 231A, Section 1 establishing its right to use the easement. The Town

requested the Court to issue a preliminary injunction against the McEvoys to enjoin them

from obstructing or interfering with said easement for the purpose of allowing the

construction and installation of a public water main across the McEvoys' property. The

McEvoys also filed a request for preliminary injunction seeking an order to prevent the

Town and its agents from continuing with the construction of the public water main

across the McEvoys' property. By Order dated November 10, 2003, the Court denied the

McEvoys' Motion for Preliminary Injunction and allowed the Town's Motion ordering

the McEvoys and their agents not to interfere with the Town's use of the construction

until that easement expires at 12:01 a.m. on January 1, 2004.

The McEvoys then filed an Answer and Counterclaim against the Town. Said

counterclaim contained four counts, Count I, Trespass, Count II, Negligent

Misrepresentation, Count III, Negligence, declaratory relief.

In the first three Counts, the McEvoys sought monetary damages against the

Town based on the Town's actions involving said easement. Count I alleges that the

Town of Wrentham, its agents, servants, or employees, without lawful authority in

breach of the terms of the utility and construction easement entered upon the real estate

of the McEvoys and committed a trespass. Count II alleges that the Town of Wrentham

negligently misrepresented to the McEvoys the nature, scope, and duration of the

construction project relative to the installation of the water main and caused the McEvoys

to enter into the utility and construction easement. Count III alleges that the Town of

Wrentham its agents, servants, or employees were negligent relative to the performance

of the construction project which was the subject matter of the easements.

During the discovery process, particularly, at the deposition of James Merriam,

the former Town Administrative of the Town of Wrentham, it was revealed that John

Zizza, a member of the Board of Selectman, told James Merriam to request the Town of

Wrentham Assessor to inspect the McEvoys' property relative to valuation. Said

discovery substantiated the information obtained by the McEvoys that on or about

October 27, 2002 and on June 30, 2003, Lisa McDonald, the Town of Wrentham

Assessor, entered the McEvoys' property without notice and without permission of the

McEvoys and conducted an inspection of their property. On the first occasion, the

McEvoys' property value was increased by approximately $60,000.00 and on the second

occasion, the McEvoys' property was caused to be increased by approximately

2

$90,000.00. Deposition testimony also revealed the unprecedented nature of such a request from a selectman and the conducting of two inspections and reevaluations within an approximate eight month period. It is the McEvoys' belief that said inspections were directly related to the compensation the McEvoys initially received for the easement and based on the McEvoys subsequent request for additional compensation. Based on said discovery the McEvoys now seek to amend their complaint to add counts alleging violation of their civil rights under 42 U.S.C.A., Section 1983 and the Massachusetts Civil Rights Act, and to add John Pizza as a defendant-in-counterclaim.

II.     Statement of Facts:

In 2002, the McEvoys were contacted by James Merriam, then Town Administrator for the Town of Wrentham, relative to granting the Town an easement in order for the Town to lay a pipe for an extension of a new water main. On or about October 23, 2002 the McEvoys executed an Utility and Construction Easement granting to the Town of Wrentham a utility easement over a portion of the their property and also a temporary construction easement relative to the construction and installation of said water main.

Prior to executing the Utility and Construction Easement, the McEvoys had discussions with James Merriam and Mr. Merriam advised them that the construction work on their property would only take a few weeks and would be completed before Memorial Day 2003. The McEvoys' property is adjacent to Lake Pearl in the Town of Wrentham and the McEvoys and their four sons particularly utilize the lakefront in the summer for numerous water activities and also their property for various family activities. It was particularly important for the McEvoys that the construction project planned by the Town be completed before Memorial Day weekend. Based on the representations of Mr. Merriam, the McEvoys executed the easement. James Merriam, in

his deposition, has agreed that he in fact advised the McEvoys that the construction work would only take approximately two weeks and would be completed before the Memorial Day weekend.

It also is undisputed and has been established through discovery that the construction work begun in the spring of 2003 and continued throughout much of the summer. During the construction process the companies hired by the Town had significant difficulties relative to construction project, particularly, the laying of the pipe from the new well on Lake Pearl to the water main which crossed the McEvoys' property. During the construction process, massive quantities of bentinite clay caused to be disgorged into Lake Pearl. As a result, in September of 2003 the Town sought approval of a plan for remediation of the bentinite clay from the lake and to correct the improper installation of the water pipe line. In the fall of 2003 said work commenced, which included utilization of the McEvoys property and continuing disruption to the McEvoys.

As previously indicated, on October 23, 2002 the McEvoys signed the easement with the Town of Wrentham. Certain representatives of the Town of Wrentham, including Selectman John Zizza were upset as to the amount of compensation paid to the McEvoys for the easement. As previously indicated, on October 27, 2002, a mere four days after the easement was executed, Lisa McDonald, the Town of Wrentham Assessor, entered the McEvoys' property and conducted an inspection of their property. The result of said inspection was that the McEvoys' property increased by $60,000.00 with the resulting increase of their tax bill. The second inspection of the McEvoys' property occurred on June 20, 2003, when Lisa McDonald once again returned to the McEvoys' property without notice and without authority. This inspection was during the period of time that the McEvoys had expressed their displeasure as to the disruption caused by the

4

construction project and had recently discussed with James Merriam a request for additional compensation based on said disruption:with said request being communicated to the Board of Selectmen. The inspection performed on June 30, 2003 resulted in the McEvoys property value being increased by $90,000.00 with another significant increase in their tax bill. It is the position of the McEvoys that said inspections which were unprecedented in nature in the Town of Wrentham were in retaliation against the McEvoys for positions taken relative to the easement and the amount of compensation sought.

The issues relative to the alleged civil rights violations arise out of and are directly related to the issues involving the easement, which is the subject matter of the Town of Wrentham's Complaint and the Counterclaims previously asserted by the McEvoys.

III.    Argument

Pursuant to Rule 15 of the Mass. R. Civ. P. leave to amend pleadings shall be freely given when justice so requires. The proposed civil rights counts to be raised against the Town of Wrentham arise out of and are related to the utility and construction easement, which are the subject matter of the original counterclaim. It was only through investigation conducted after the filing of the Answer and Counterclaim and also through the discovery process did the McEvoys learn of the timing and circumstances of the inspections and reassessments of their property.

Rule 20 of the Mass. R. Civ. P. provides for the permissive joineder of parties. Rule 20 provides:

> "All persons may be joined in one action as defendants if there is
> asserted against, jointly, severally, or in the alternative, any right
> to relief in respect of or arising out of the same transaction,

5

occurrence, or series of transactions or occurrences and, if any,

question of law, or fact, common to all defendants will arise in

the action."

The asserted claims against John Zizza, arises out of the same transactions or

occurrences, which are the subject matter of the alleged civil rights violations committed

by the Town of Wrentham. The law and facts applicable to the McEvoys' civil rights

claims against the Town of Wrentham are common to the claims asserted against John

Zizza.

The mandate and purpose of Rule 15 and Rule 20 is to allow liberal amendments

of pleadings. It is appropriate and proper for this Court to allow the Motion to add John

Zizza as a new party. See, Christopher v. Duffy, 28 Mass. App. Ct. 780 (1990).

IV.     Conclusion

For the reasons hereinabove stated it is respectfully requested that the  Motion of

Defendants/Plaintiffs-in-Counterclaim, Matthew McEvoy and Leah McEvoy to Amend

Their Answer to Add Additional Counts and to Add John Zizza as an Additional Party

should be allowed.

> Respectfully submitted,
> MATTHEW McEVOY AND
> LEAH McEVOY, Defendant-in-Counterclaim
> By their attorney,
>
> LAW OFFICE OF
> DANIEL R. SEIGENBERG

__December 13, 2004__
Dated:

Daniel R. Seigenberg, Esquire
2 Commercial Street
Sharon, Massachusetts 020671
(781) 784-8800
BBO # 451100

6

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS                                SUPERIOR COURT DEPARTMENT
                                           CIVIL ACTION NO. 03-2018

TOWN OF WRENTHAM,                      *
        Plaintiff                      *
                                       *
V.                                     *
                                       *
MATTHEW McEVOY and LEAH                *
McEVOY,                                *
        Defendants                     *
                                       *
and                                    *
                                       *
MATTHEW McEVOY and LEAH                *
McEVOY,                                *
        Plaintiffs-in-Counterclaim     *
                                       *
                                       *
V.                                     *
                                       *
TOWN OF WRENTHAM and JOHN              *
GAZZA,                                 *
        Defendants-in-Counterclaim     *

## AMENDED ANSWER OF DEFENDANTS, MATTHEW McEVOY AND LEAH McEVOY TO VERIFIED COMPLAINT AND COUNTERCLAIM

        The Defendants, Matthew McEvoy and Leah McEvoy (hereinafter referred to as

the McEvoys) respond to the Verified Complaint as follows:

### PARTIES

    1.      Admitted.

    2.      Admitted.

### FACTS

    3.      Defendants are without information or knowledge sufficient to form a
            belief as to the truth of the allegations contained in Paragraph 3 of the
            Complaint.

1

4.   Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 4 of the Complaint.

5.   Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 5 of the Complaint.

6.   Defendants admit that the Wrentham Board of Selectmen offered the sum of Twenty-One Thousand Five Hundred ($21,500.00) Dollars to the Defendants, Matthew and Leah McEvoy for two easements between Eastside Road and Desert Brook Inlet of Lake Pearl, that there was a permanent easement for the construction, installation, maintenance, repair and replacement of subsurface water mains and a second temporary construction easement expiring on January 1, 2004. Defendant denies the remaining allegations contained in Paragraph 6 of the Complaint

7.   Defendants deny the characterization of the easements but admit the remaining allegations contained in Paragraph 7 of the Complaint

8.   Denied.

9.   Denied.

10.  Defendants admit that the drilling process required several attempts but they are without information or knowledge sufficient to form a belief as to the precise dates of said drilling. Defendants deny that the fourth and final attempt was completed on or about July 3, 2003. Defendants deny the remaining allegations contained in Paragraph 10 of the Complaint.

11.  Defendants admit that during the direct drilling process Betinit clay escaped into the lake but deny the remaining allegations contained in Paragraph 11 of the Complaint.

12.  Defendants admit that on or about July 3, 2003, the McEvoys made an offer of settlement to the Town of Wrentham in the amount of Fifty Thousand ($50,000.00) Dollars and that a true copy of the McEvoy correspondence is attached to the Complaint as Exhibit "D." Defendants deny the remaining allegations contained in Paragraph 12 of the Complaint and further state that as to the contents of their letter, the letter speaks for itself.

13.  Defendants deny it was on or about July 7, 2003 after the July 4th Holiday weekend but admit the remaining allegations contained in Paragraph 13 of the Complaint and further state this was Matt

McEvoy who made the initial observation that the top of the pipe was visible and did not comply with the specifications and so advised the Town.

14. Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 of the Complaint.

15. Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 of the Complaint.

16. Defendants admit that on or about September 30, 2003 they sent to the Town, through their counsel, correspondence marked Exhibit "F" to the Complaint and that the correspondence dated October 7, 2003 also marked as Exhibit "F" to the Complaint is the Town's response. Defendants deny the remaining allegations contained in Paragraph 16 of the Complaint and further state that the terms of said correspondence speak for themselves.

Denies.

## COUNT I

## TRESPASS BREACH OF CONTRACT FOR EASEMENT

Defendant restate their answers to Paragraphs 1 through 17 of the Complaint as if set forth herein.

19. Denied.

20. Denied.

21. Denied.

## COUNT II

## DECLARATORY AND INJUNCTIVE RELIEF

22. Defendants restate their answers to Paragraphs 1 through 21 of the Complaint as if set forth herein.

23. Admitted.

24. Denied.

25. Denied.

26. Denied.

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

## COUNTERCLAIM

1.  Defendants/Plaintiffs-in-Counterclaim, Matthew and Leah McEvoy are individuals residing at 815 Eastside Road, Wrentham, Norfolk County, Massachusetts.

2.  The Plaintiff/Defendant-in-Counterclaim, Town of Wrentham, is a municipal corporation with its offices at 100 Stonewall Blvd., Wrentham, Norfolk County, Massachusetts.

3.  Defendant-in-counterclaim, John Zizza, is an individual who resides in Wrentham, Norfolk County, Massachusetts.

4.  The McEvoys at all times material thereto, have been and are the owners of the property known as 815 Eastside Road, Wrentham, Massachusetts.

5.  In 2002 the McEvoys were contacted by James Merriam, the Town Administrator for the Town of Wrentham, relative to granting the Town an easement in order for them to lay a pipe for an extension of a new water main for the Town.

6.  On or about October 23, 2003, the McEvoys executed a Utility and Construction Easement granting to the Town of Wrentham a utility easement under a portion of their property and also a temporary construction easement relative to the construction and installation of said water main. A copy of said Utility and Construction Easement is attached to Plaintiff's Complaint and marked Exhibit "B."

7.  Prior to executing the Utility and Construction Easement, James Merriam, acting in behalf of the Town of Wrentham, represented to the McEvoys that the construction work on their property would only take a few weeks and would be completed before Memorial Day 2003.

8.  James Merriam also represented that the construction work would only take approximately two weeks with minor disruptions and possibly one or two days with major disruptions.

4

9.    The construction work began in the spring of 2003 and continued throughout much of the summer. On average, construction work began at 7:00 a.m. daily and ended most evenings at 7:00 p.m. Work crews worked six out of seven days of the week.

10.   The disruption to the McEvoys and their family was quite significant.

11.   As a result of the construction project, approximately twenty large and mature trees had to be removed from the McEvoys property. In addition a number of sinkholes and underground cave-ins have occurred and other damage has occurred to the McEvoys' property.

12.   During the construction, the Town's contractor set up on the Town's new well site on the left side of Desert Brook Inlet and on the McEvoys' property and on the opposite shore for the direct drilling process relative to the installation of the new water main. The drilling process had numerous unsuccessful attempts. As a result of the drilling process a large amount of bentinite clay was caused to be deposited into Lake Pearl and the immediate vicinity of the McEvoys' Property.

13.   The water main pipe constructed by the Town of Wrentham and its contractors is not located within the easement area granted by the McEvoys but is located outside the easement area and on the McEvoys' property.

14.   The deposit of large quantities of bentinite clay into the lake was not an expected or normal result of the drilling process.

15.   In September 2003, the Town of Wrentham obtained approval from the Army Corp of Engineers for a work plan for remediation of the bentinite clay from the lake and to correct the improper installation of the water main.

16.   Under the terms of said plan, pipes were placed onto the McEvoys' property with pipes located in the general vicinity of their driveway. Neither the Board of Selectmen nor the Town Administrator advised the McEvoys of their plan to utilize their property relative to the clean up.

17.   The Town of Wrentham, its agents, servants, or employees have performed said work.

18.   The remediation and removal of the bentinite clay from Lake Pearl and the utilization of the McEvoys' property relative thereto was not within the scope of the Utility and Construction Easement.

5

19.   Based on the construction project, approximately 20 large and mature trees were caused to be removed from the McEvoys' property. These trees had acted as a buffer between the McEvoys' property and their neighbor's property. In addition, as a result of the construction project, a number of sinkholes and underground cave-ins have occurred on the McEvoys' property.

## COUNT I

### TRESPASS

20.   The McEvoys reallege the allegations contained in Paragraphs 1 through 18 of the Counterclaim as if set forth herein.

21.   The Town of Wrentham, its agents, servants, and employees, without lawful authority and in breach of the terms of the Utility and Construction Easement, have entered upon the real estate of the McEvoys and committed a trespass thereon.

## COUNT II

### NEGLIGENT MISREPRSENTATIONS

22.   The McEvoys reallege the allegations contained in Paragraphs 1 through 21 of the Counterclaim as of set forth herein.

23.   The Town of Wrentham negligently misrepresented to the McEvoys the nature, scope, and duration of the construction project relative to the installation of the water main.

24.   Said representations made by the Town of Wrentham to the McEvoys were false.

25.   The construction work relative to the project began in the spring of 2003 and continued throughout much of the summer. On average construction began at 7:00 a.m. daily and ended most evenings at 7:00 p.m. Work crews worked approximately six of the seven days of the week.

26.   In contrast to the minor disruptions as represented by the Town of Wrentham, the construction project had significant and still has significant impact on the McEvoys, including the cancellation of many family and social functions. The Town of Wrentham and its contractors installed a 20" pipe running directly through the McEvoys swimming area and said pipe eliminated access to their boat dock. Another recreational dock on the McEvoys' property became a staging area engulfed by hundreds of sandbags.

6

27.   Based on the construction work there was a stench of rotten hay bales, stagnant water, and an unusual amount of dead fish in the lake, which made the air quality around the McEvoys' house intolerable for the family.

28.   Access to the McEvoys' property has been and will be significantly disrupted.

29.   Based on and reliance on the misrepresentations of the Town of Wrentham, the McEvoys entered into the Utility and Construction Easement.

30.   The McEvoys relied on the misrepresentations to their detriment.

31.   As a result of the negligent misrepresentations, the McEvoys have suffered damages.

## COUNT III

## NEGLIGENCE

32.   The McEvoys reallege the allegations contained in Paragraphs 1 through 31 of the Counterclaim as if set forth herein.

33.   The Town of Wrentham, its agents, servants, or employees were negligent relative to the performance of the construction project.

34.   As a result of the negligence of the Town of Wrentham, its agents, servants, or employees the McEvoys have been damaged.

## COUNT IV

## DECLARATORY RELIEF

35.   The McEvoys reallege the allegations contained in Paragraphs 1 through 34 of the Counterclaim as if set forth herein.

36.   There is an actual controversy between the Town of Wrentham and the McEvoys regarding the scope of the Utility and Construction Easement and the location of the water main, and the proposed clean up and utilization of the McEvoys' property.

## COUNT V

### TAKINGOF PROPERTY

37.    The McEvoys reallege the allegations contained in Paragraphs1 through 36 of the Counterclaim as if set forth herein.

38.    The actions of the Town of Wrentham constitute a taking of property and/or inverse condemnation under G.L. c. 79.

39.    As a result of said taking and/or inverse condemnation the McEvoys have suffered damage.

## COUNT VI

### VIOLATION OF 42 U.S.C.A. SECTION 1983
(Town of Wrentham)

40.    The McEvoys reallege the allegations contained in Paragraphs 1 through 39 of the Counterclaim as if set forth herein.

41.    Prior to the McEvoys executing the utility and construction easement on or about October 23, 2002, certain representatives of the Town of Wrentham expressed their disagreement as to the amount of compensation to be granted to the McEvoys for the execution of the utility and construction easement.

42.    On October 27, 2002, four days after the utility and construction easement was executed, Lisa McDonald, the Town of Wrentham Assessor, without the permission of the McEvoys and without advance notice to the McEvoys and without right, entered the McEvoys' property and conducted an inspection of the McEvoys' property.

43.    Based on said inspection, the Town of Wrentham increased the assessment of the McEvoys' property by approximately $60,000.00 resulting in a significant increase in the McEvoys' real estate tax bill.

44.    Upon information and belief, this assessment was undertaken based on the specific direction of Town of Wrentham Selectman, John Ziza.

45.    On or about June 27, 2003, Matthew McEvoy and James Merriam, then Town Administrator for the Town of Wrentham, met at the McEvoys' property and there was a discussion relative to the McEvoys request for additional compensation based on the duration and extent of the

8

construction work being performed on the McEvoys' property and the resulting significant disruption to the McEvoys. Mr. McEvoy advised Mr. Merriam that he was seeking additional compensation from the Town of Wrentham.

46. Upon information and belief James Merriam advised the Board of Selectmen of the McEvoys' request for additional compensation.

47. On or about June 30, 2003, Lisa McDonald, once again at the direction of John Zizza, returned to the McEvoys' property without notice and without permission of the McEvoys and made an illegal inspection of the McEvoys' property.

48. Based on Lisa McDonald's inspection of the property the assessed value of the McEvoys' property was increased by approximately $90,000.00 with the resulting significant increase in the real estate taxes to be paid by the McEvoys.

49. Said inspections of the McEvoys' property were a violation of law and constitute illegal searches and seizures of the McEvoys' property in violation of the Fourth Amendment of the United States Constitution and Article 14 of the Massachusetts Declaration of Rights. Said inspections and reevaluations of the McEvoys' property were in retaliation for the McEvoys' initial attempt to seek compensation for the grant of the utility and construction easement and thereafter based on the McEvoys' request for additional compensation from the Town of Wrentham based on the construction work that was performed in the Spring and Summer of 2003.

50. The actions of the Town of Wrentham, its agents, servants, or employees, constitute a violation of the McEvoys' civil rights and a violation of 42 U.S.C.A., Section 1983.

51. As a result of said violations the McEvoys have been injured.

## COUNT VII

## VIOLATION OF MASSACHUSETTS CIVIL RIGHTS ACT
(Town of Wrentham)

52. The McEvoys reallege the allegations contained in Paragraphs 1 through 51 of the Counterclaim as if set forth herein.

53. The McEvoys' exercise and enjoyment of rights secured by the Constitution the United States and/or the Commonwealth, have been interfered with or attempted to be interfered with by the actions of the Town of Wrentham, its agents, servants, or employees.

54. Said interference or attempted interference was by threats, intimidation, or coercion.

55.    As a result of said violation the McEvoys have been injured.

## COUNT VIII

## VIOLATION OF 42, U.S.C.A., SECTION 1983

(John Zizza)

56.    The McEvoys reallege the allegations contained in Paragraphs 1 through 55 of the Counterclaim as if set forth herein.

57.    The actions of John Zizza constitute a violation of the McEvoys' civil rights and a violation of 42 U.S.C.A., Section 1983.

58.    As a result of said violations the McEvoys have been injured.

## COUNT IX

## VIOLATION OF MASSACHUSETTS CIVIL RIGHTS ACT
(John Zizza)

59.    The McEvoys reallege the allegations contained in Paragraphs 1 through 55 of the Counterclaim as if set forth herein.

60.    The McEvoys exercise and enjoyment of rights secured by the Constitution of the United States and/or the Commonwealth have been interfered with or attempted to be interfered with by the actions of John Zizza.

61.    Said interference or attempted interference was by threats, intimidation, or coercion.

62.    As a result of said violations, the McEvoys have been injured.


WHEREFORE, the Defendants/Plaintiffs-in-Counterclaim, Matthew McEvoy and

Leah McEvoy, respectfully request that this Court:

1.    Enter judgment in favor of the McEvoys against the Town of Wrentham and that monetary damages be awarded to the McEvoys, on Counts I-VII of the Counterclaim.

2.    Enter judgment in favor of the McEcoys against John Zizza and that monetary damages be awarded to the McEvoys on Counts VIIII and IX.

3.    Award to the McEvoys interest and costs of this action.

4.  Declare that the Town of Wrentham has exceeded the scope of its easement rights and, particularly that the remediation of the betinite clay and activities related thereto are not within the scope of the Town of Wrentham's construction easement.

5.  Award the McEvoys their reasonable attorney's fees.

6.  Award such other relief as this Court deems, just and proper.

Respectfully Submitted,
MATTHEW McEVOY and
LEAH McEVOY,
Defendants/Plaintiffs-in-Counterclaim
By Their Attorney

LAW OFFICE OF
DANIEL R. SEIGENBERG

___December 13, 2004___
Dated:

Daniel R. Seigenberg, Esquire
128 School Street
Walpole, MA 02081
(508) 668-9800
BBO # 451100

DEFENDANTS/PLAINTIFFS-IN-COUNTERCLAIM DEMAND TRIAL BY
JURY ON ALL ISSUES.

11

UNITED STATES DISTRICT COURT
COMMONWEALTH OF MASSACHUSETTS

|  |  |
|---|---|
| TOWN OF WRENTHAM, <br>     Plaintiff/Defendant-In-Counterclaim | ) <br> ) <br> ) <br> ) |
| v. | ) <br> ) |
| MATTHEW McEVOY and LEAH McEVOY, <br>     Defendants/Plaintiffs-In-Counterclaim | ) <br> ) <br> ) |
| v. | ) <br> ) |
| JOHN ZIZZA, <br>     Third-Party Defendant | ) <br> ) <br> ) |

**05** No.: **10042 DPW**

### NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. §1441(a) BY THIRD-PARTY DEFENDANT JOHN ZIZZA

TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS:

Petitioner, John Zizza, respectfully petitions this Court for removal of the above-entitled

action to the United States District Court for the District of Massachusetts, Civil Section, from the

Superior Court of the Commonwealth of Massachusetts in and for Norfolk County, and for his

Notice of Removal states as follows:

1.     John Zizza is named as Third-Party Defendant by the Plaintiffs-in-Counterclaim,

    Matthew McEvoy and Leah McEvoy, in a proposed Amended Counterclaim in a civil

    action filed in the Superior Court of the Commonwealth of Massachusetts in and for

    Norfolk County, entitled Town of Wrentham v. Matthew McEvoy and Leah McEvoy

    and Matthew McEvoy and Leah McEvoy v. Town of Wrentham and John Zizza,

    Civil Action No. 03-2018.

2.     By service dated December 13, 2004, the Plaintiffs-in-Counterclaim, Matthew

    McEvoy and Leah McEvoy, served Third-Party Defendant's counsel with the

proposed Amended Counterclaim naming Third-Party Defendant as an additional party. See Motion to Amend Counterclaim and accompanying proposed Amended Answer and Counterclaim (Attached hereto as Exhibit A).

3.  Under 28 U.S.C. § 1446(b) the time for removal "if the case stated by the initial pleading is not removable" is "within thirty days after receipt of by the defendant, through service or otherwise, of a copy of the amended pleading." See also Murphy Bros. v. Michetti Pipe Stringing, Inc., 526 U.S. 344 (1999).

4.  This is a suit of a wholly civil nature brought in a Massachusetts state court. The action is pending in Norfolk County, Massachusetts, and, accordingly, under 28 U.S.C. §§101 & 1441(a), the United States District Court for the District of Massachusetts is the proper forum for removal.

5.  This is an action in which the Defendants/Plaintiffs-in-Counterclaim allege, among other things, that Third-Party Defendant John Zizza, violated the Plaintiffs-in-Counterclaims' civil rights as actionable under 42 U.S.C. § 1983, specifying inter alia, a violation of the Fourth Amendment of the U.S. Constitution. See Exh. A ¶¶ 49; 56-58.

6.  Because this case involves federal constitutional issues and claims for relief under federal law, the District Court has original jurisdiction pursuant to 28 U.S.C. § 1331.

7.  The entire case may be removed because a separate and independent claim or cause of action within the jurisdiction of 28 U.S.C. § 1331 is joined with one or more otherwise non-removable claims or causes of action. See 28 U.S.C. § 1441(c).

8.  The Defendant-in-Counterclaim John Zizza is filing this Notice within thirty days of receipt, through service or otherwise, of the Amended Answer and Counterclaim

2

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS                              SUPERIOR COURT DEPARTMENT
                                        CIVIL ACTION NO. 03-2018

TOWN OF WRENTHAM,                   *
        Plaintiff                   *
                                    *
v.                                  *
                                    *
MATTHEW and LEAH McEVOY,            *
        Defendants

## MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS/PLAINTIFFS-IN-COUNTERCLAIM, MATTHEW McEVOY AND LEAH McEVOY TO AMEND THEIR ANSWER TO ADD ADDITIONAL COUNTS and TO ADD JOHN ZIZZA AS AN ADDITIONAL PARTY

I.    Statement of Proceedings:

The Town of Wrentham (hereinafter the "Town") filed an initial complaint

against Defendants, Matthew McEvoy and Leah McEvoy (hereinafter referred to as

"McEvoys"). In said action the Town sought to enjoin the McEvoys from obstructing or

interfering with the use of an easement granted by the McEvoys to the Town for the

purpose of installing a water main from Eastside Road in Wrentham, Massachusetts

under the McEvoys' property and under a section of Lake Pearl, known as Desert Brook

Inlet to a new well site located on the opposite shore. The Town also sought declaratory

relief under G.L. c. 231A, Section 1 establishing its right to use the easement. The Town

requested the Court to issue a preliminary injunction against the McEvoys to enjoin them

from obstructing or interfering with said easement for the purpose of allowing the

construction and installation of a public water main across the McEvoys' property. The

McEvoys also filed a request for preliminary injunction seeking an order to prevent the

Town and its agents from continuing with the construction of the public water main

across the McEvoys' property. By Order dated November 10, 2003, the Court denied the

McEvoys' Motion for Preliminary Injunction and allowed the Town's Motion ordering

1

the McEvoys and their agents not to interfere with the Town's use of the construction

until that easement expires at 12:01 a.m. on January 1, 2004.

The McEvoys then filed an Answer and Counterclaim against the Town. Said

counterclaim contained four counts, Count I, Trespass, Count II, Negligent

Misrepresentation, Count III, Negligence, declaratory relief.

In the first three Counts, the McEvoys sought monetary damages against the

Town based on the Town's actions involving said easement. Count I alleges that the

Town of Wrentham, its agents, servants, or employees, without lawful authority in

breach of the terms of the utility and construction easement entered upon the real estate

of the McEvoys and committed a trespass. Count II alleges that the Town of Wrentham

negligently misrepresented to the McEvoys the nature, scope, and duration of the

construction project relative to the installation of the water main and caused the McEvoys

to enter into the utility and construction easement. Count III alleges that the Town of

Wrentham its agents, servants, or employees were negligent relative to the performance

of the construction project which was the subject matter of the easements.

During the discovery process, particularly, at the deposition of James Merriam,

the former Town Administrative of the Town of Wrentham, it was revealed that John

Zizza, a member of the Board of Selectman, told James Merriam to request the Town of

Wrentham Assessor to inspect the McEvoys' property relative to valuation. Said

discovery substantiated the information obtained by the McEvoys that on or about

October 27, 2002 and on June 30, 2003, Lisa McDonald, the Town of Wrentham

Assessor, entered the McEvoys' property without notice and without permission of the

McEvoys and conducted an inspection of their property. On the first occasion, the

McEvoys' property value was increased by approximately $60,000.00 and on the second

occasion, the McEvoys' property was caused to be increased by approximately

2

$90,000.00.Deposition testimony also revealed the unprecedented nature of such a request from a selectman and the conducting of two inspections and reevaluations within an approximate eight month period.It is the McEvoys' belief that said inspections were directly related to the compensation the McEvoys initially received for the easement and based on the McEvoys subsequent request for additional compensation. Based on said discovery the McEvoys now seek to amend their complaint to add counts alleging violation of their civil rights under 42 U.S.C.A., Section 1983 and the Massachusetts Civil Rights Act, and to add John Zizza as a defendant-in-counterclaim.

II.     Statement of Facts:

In 2002, the McEvoys were contacted by James Merriam, then Town Administrator for the Town of Wrentham, relative to granting the Town an easement in order for the Town to lay a pipe for an extension of a new water main. On or about October 23, 2002 the McEvoys executed an Utility and Construction Easement granting to the Town of Wrentham a utility easement under a portion of the their property and also a temporary construction easement relative to the construction and installation of said water main.

Prior to executing the Utility and Construction Easement, the McEvoys had discussions with James Merriam and Mr. Merriam advised them that the construction work on their property would only take a few weeks and would be completed before Memorial Day 2003. The McEvoys' property is adjacent to Lake Pearl in the Town of Wrentham and the McEvoys and their four sons particularly utilize the lakefront in the summer for numerous water activities and also their property for various family activities. It was particularly important for the McEvoys that the construction project planned by the Town be completed before Memorial Day weekend. Based on the representations of Mr. Merriam, the McEvoys executed the easement. James Merriam, in

3

his deposition, has agreed that he in fact advised the McEvoys that the construction work would only take approximately two weeks and would be completed before the Memorial Day weekend.

It also is undisputed and has been established through discovery that the construction work begun in the spring of 2003 and continued throughout much of the summer. During the construction process the companies hired by the Town had significant difficulties relative to construction project, particularly, the laying of the pipe from the new well on Lake Pearl to the water main which crossed the McEvoys' property. During the construction process, massive quantities of bentinite clay caused to be disgorged into Lake Pearl. As a result, in September of 2003 the Town sought approval of a plan for remediation of the bentinite clay from the lake and to correct the improper installation of the water pipe line. In the fall of 2003 said work commenced, which included utilization of the McEvoys property and continuing disruption to the McEvoys.

As previously indicated, on October 23, 2002 the McEvoys signed the easement with the Town of Wrentham. Certain representatives of the Town of Wrentham, including Selectman John Zizza, were upset as to the amount of compensation paid to the McEvoys for the easement. As previously indicated, on October 27, 2002, a mere four days after the easement was executed, Lisa McDonald, the Town of Wrentham Assessor, entered the McEvoys' property and conducted an inspection of their property. The result of said inspection was that the McEvoys' property increased by $60,000.00 with the resulting increase of their tax bill. The second inspection of the McEvoys' property occurred on June 20, 2003, when Lisa McDonald once again returned to the McEvoys' property without notice and without authority. This inspection was during the period of time that the McEvoys had expressed their displeasure as to the disruption caused by the

construction project and had recently discussed with James Merriam a request for

additional compensation based on said disruption:with said request being communicated

to the Board of Selectmen. The inspection performed on June 30, 2003 resulted in the

McEvoys property value being increased by $90,000.00 with another significant increase

in their tax bill. It is the position of the McEvoys that said inspections which were

unprecedented in nature in the Town of Wrentham were in retaliation against the

McEvoys for positions taken relative to the easement and the amount of compensation

sought.

The issues relative to the alleged civil rights violations arise out of and are

directly related to the issues involving the easement, which is the subject matter of the

Town of Wrentham's Complaint and the Counterclaims previously asserted by the

McEvoys.

III.    Argument

Pursuant to Rule 15 of the Mass. R. Civ. P. leave to amend pleadings shall be

freely given when justice so requires. The proposed civil rights counts to be raised

against the Town of Wrentham arise out of and are related to the utility and construction

easement, which are the subject matter of the original counterclaim. It was only through

investigation conducted after the filing of the Answer and Counterclaim and also through

the discovery process did the McEvoys learn of the timing and circumstances of the

inspections and reassessments of their property.

Rule 20 of the Mass. R. Civ. P. provides for the permissive joineder of parties.

Rule 20 provides:

> "All persons may be joined in one action as defendants if there is
>
> asserted against, jointly, severally, or in the alternative, any right
>
> to relief in respect of or arising out of the same transaction,

5

McEvoy who made the initial observation that the top of the pipe was visible and did not comply with the specifications and so advised the Town.

14.    Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 of the Complaint.

15.    Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 of the Complaint.

16.    Defendants admit that on or about September 30, 2003 they sent to the Town, through their counsel, correspondence marked Exhibit "F" to the Complaint and that the correspondence dated October 7, 2003 also marked as Exhibit "F" to the Complaint is the Town's response. Defendants deny the remaining allegations contained in Paragraph 16 of the Complaint and further state that the terms of said correspondence speak for themselves.

17.    Denies.

## COUNT I

### TRESPASS/BREACH OF CONTRACT FOR EASEMENT

18.    Defendants restate their answers to Paragraphs 1 through 17 of the Complaint as if set forth herein.

19.    Denied.

20.    Denied.

21.    Denied.

## COUNT II

### DECLARATORY AND INJUNCTIVE RELIEF

22.    Defendants restate their answers to Paragraphs 1 through 21 of the Complaint as if set forth herein.

23.    Admitted.

24.    Denied.

25.    Denied.

26.    Denied.

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

## COUNTERCLAIM

1.  Defendants/Plaintiffs-in-Counterclaim, Matthew and Leah McEvoy are individuals residing at 815 Eastside Road, Wrentham, Norfolk County, Massachusetts.

2.  The Plaintiff/Defendant-in-Counterclaim, Town of Wrentham, is a municipal corporation with its offices at 100 Stonewall Blvd., Wrentham, Norfolk County, Massachusetts.

3.  Defendant-in-counterclaim, John Zizza, is an individual who resides in Wrentham, Norfolk County, Massachusetts.

4.  The McEvoys at all times material thereto, have been and are the owners of the property known as 815 Eastside Road, Wrentham, Massachusetts.

5.  In 2002 the McEvoys were contacted by James Merriam, the Town Administrator for the Town of Wrentham, relative to granting the Town an easement in order for them to lay a pipe for an extension of a new water main for the Town.

6.  On or about October 23, 2003, the McEvoys executed a Utility and Construction Easement granting to the Town of Wrentham a utility easement under a portion of their property and also a temporary construction easement relative to the construction and installation of said water main. A copy of said Utility and Construction Easement is attached to Plaintiff's Complaint and marked Exhibit "B."

7.  Prior to executing the Utility and Construction Easement, James Merriam, acting in behalf of the Town of Wrentham, represented to the McEvoys that the construction work on their property would only take a few weeks and would be completed before Memorial Day 2003.

8.  James Merriam also represented that the construction work would only take approximately two weeks with minor disruptions and possibly one or two days with major disruptions.

4

19.   Based on the construction project, approximately 20 large and mature trees were caused to be removed from the McEvoys' property. These trees had acted as a buffer between the McEvoys' property and their neighbor's property. In addition, as a result of the construction project, a number of sinkholes and underground cave-ins have occurred on the McEvoys' property.

## COUNT I

### TRESPASS

20.   The McEvoys reallege the allegations contained in Paragraphs 1 through 18 of the Counterclaim as if set forth herein.

21.   The Town of Wrentham, its agents, servants, and employees, without lawful authority and in breach of the terms of the Utility and Construction Easement, have entered upon the real estate of the McEvoys and committed a trespass thereon.

## COUNT II

### NEGLIGENT MISREPRSENTATIONS

22.   The McEvoys reallege the allegations contained in Paragraphs 1 through 21 of the Counterclaim as of set forth herein.

23.   The Town of Wrentham negligently misrepresented to the McEvoys the nature, scope, and duration of the construction project relative to the installation of the water main.

24.   Said representations made by the Town of Wrentham to the McEvoys were false.

25.   The construction work relative to the project began in the spring of 2003 and continued throughout much of the summer. On average construction began at 7:00 a.m. daily and ended most evenings at 7:00 p.m. Work crews worked approximately six of the seven days of the week.

26.   In contrast to the minor disruptions as represented by the Town of Wrentham, the construction project had significant and still has significant impact on the McEvoys, including the cancellation of many family and social functions. The Town of Wrentham and its contractors installed a 20" pipe running directly through the McEvoys swimming area and said pipe eliminated access to their boat dock. Another recreational dock on the McEvoys' property became a staging area engulfed by hundreds of sandbags.

6

27. Based on the construction work there was a stench of rotten hay bales, stagnant water, and an unusual amount of dead fish in the lake, which made the air quality around the McEvoys' house intolerable for the family.

28. Access to the McEvoys' property has been and will be significantly disrupted.

29. Based on and reliance on the misrepresentations of the Town of Wrentham, the McEvoys entered into the Utility and Construction Easement.

30. The McEvoys relied on the misrepresentations to their detriment.

31. As a result of the negligent misrepresentations, the McEvoys have suffered damages.

## COUNT III

## NEGLIGENCE

32. The McEvoys reallege the allegations contained in Paragraphs 1 through 31 of the Counterclaim as if set forth herein.

33. The Town of Wrentham, its agents, servants, or employees were negligent relative to the performance of the construction project.

34. As a result of the negligence of the Town of Wrentham, its agents, servants, or employees the McEvoys have been damaged.

## COUNT IV

## DECLARATORY RELIEF

35. The McEvoys reallege the allegations contained in Paragraphs 1 through 34 of the Counterclaim as if set forth herein.

36. There is an actual controversy between the Town of Wrentham and the McEvoys regarding the scope of the Utility and Construction Easement and the location of the water main, and the proposed clean up and utilization of the McEvoys' property.

7

## COUNT V

### TAKINGOF PROPERTY

37.    The McEvoys reallege the allegations contained in Paragraphs1 through 36 of the Counterclaim as if set forth herein.

38.    The actions of the Town of Wrentham constitute a taking of property and/or inverse condemnation under G.L. c. 79.

39.    As a result of said taking and/or inverse condemnation the McEvoys have suffered damage.

## COUNT VI

### VIOLATION OF 42 U.S.C.A. SECTION 1983
(Town of Wrentham)

40.    The McEvoys reallege the allegations contained in Paragraphs 1 through 39 of the Counterclaim as if set forth herein.

41.    Prior to the McEvoys executing the utility and construction easement on or about October 23, 2002, certain representatives of the Town of Wrentham expressed their disagreement as to the amount of compensation to be granted to the McEvoys for the execution of the utility and construction easement.

42.    On October 27, 2002, four days after the utility and construction easement was executed, Lisa McDonald, the Town of Wrentham Assessor, without the permission of the McEvoys and without advance notice to the McEvoys and without right, entered the McEvoys' property and conducted an inspection of the McEvoys' property.

43.    Based on said inspection, the Town of Wrentham increased the assessment of the McEvoys' property by approximately $60,000.00 resulting in a significant increase in the McEvoys' real estate tax bill.

44.    Upon information and belief, this assessment was undertaken based on the specific direction of Town of Wrentham Selectman, John Ziza.

45.    On or about June 27, 2003, Matthew McEvoy and James Merriam, then Town Administrator for the Town of Wrentham, met at the McEvoys' property and there was a discussion relative to the McEvoys request for additional compensation based on the duration and extent of the

construction work being performed on the McEvoys' property and the resulting significant disruption to the McEvoys. Mr. McEvoy advised Mr. Merriam that he was seeking additional compensation from the Town of Wrentham.

46. Upon information and belief James Merriam advised the Board of Selectmen of the McEvoys' request for additional compensation.

47. On or about June 30, 2003, Lisa McDonald, once again at the direction of John Zizza, returned to the McEvoys' property without notice and without permission of the McEvoys and made an illegal inspection of the McEvoys' property.

48. Based on Lisa McDonald's inspection of the property the assessed value of the McEvoys' property was increased by approximately $90,000.00 with the resulting significant increase in the real estate taxes to be paid by the McEvoys.

49. Said inspections of the McEvoys' property were a violation of law and constitute illegal searches and seizures of the McEvoys' property in violation of the Fourth Amendment of the United States Constitution and Article 14 of the Massachusetts Declaration of Rights. Said inspections and reevaluations of the McEvoys' property were in retaliation for the McEvoys' initial attempt to seek compensation for the grant of the utility and construction easement and thereafter based on the McEvoys' request for additional compensation from the Town of Wrentham based on the construction work that was performed in the Spring and Summer of 2003.

50. The actions of the Town of Wrentham, its agents, servants, or employees, constitute a violation of the McEvoys' civil rights and a violation of 42 U.S.C.A., Section 1983.

51. As a result of said violations the McEvoys have been injured.

## COUNT VII

## VIOLATION OF MASSACHUSETTS CIVIL RIGHTS ACT
(Town of Wrentham)

52. The McEvoys reallege the allegations contained in Paragraphs 1 through 51 of the Counterclaim as if set forth herein.

53. The McEvoys' exercise and enjoyment of rights secured by the Constitution the United States and/or the Commonwealth, have been interfered with or attempted to be interfered with by the actions of the Town of Wrentham, its agents, servants, or employees.

54. Said interference or attempted interference was by threats, intimidation, or coercion.

9

55.    As a result of said violation the McEvoys have been injured.

## COUNT VIII

### VIOLATION OF 42, U.S.C.A., SECTION 1983

(John Zizza)

56.    The McEvoys reallege the allegations contained in Paragraphs 1 through 55 of the Counterclaim as if set forth herein.

57.    The actions of John Zizza constitute a violation of the McEvoys' civil rights and a violation of 42 U.S.C.A., Section 1983.

58.    As a result of said violations the McEvoys have been injured.

## COUNT IX

### VIOLATION OF MASSACHUSETTS CIVIL RIGHTS ACT
(John Zizza)

59.    The McEvoys reallege the allegations contained in Paragraphs 1 through 55 of the Counterclaim as if set forth herein.

60.    The McEvoys exercise and enjoyment of rights secured by the Constitution of the United States and/or the Commonwealth have been interfered with or attempted to be interfered with by the actions of John Zizza.

61.    Said interference or attempted interference was by threats, intimidation, or coercion.

62.    As a result of said violations, the McEvoys have been injured.


WHEREFORE, the Defendants/Plaintiffs-in-Counterclaim, Matthew McEvoy and

Leah McEvoy, respectfully request that this Court:

1.    Enter judgment in favor of the McEvoys against the Town of Wrentham and that monetary damages be awarded to the McEvoys, on Counts I-VII of the Counterclaim.

2.    Enter judgment in favor of the McEcoys against John Zizza and that monetary damages be awarded to the McEvoys on Counts VIIII and IX.

3.    Award to the McEvoys interest and costs of this action.

4.  Declare that the Town of Wrentham has exceeded the scope of its easement rights and, particularly that the remediation of the betinite clay and activities related thereto are not within the scope of the Town of Wrentham's construction easement.

5.  Award the McEvoys their reasonable attorney's fees.

6.  Award such other relief as this Court deems, just and proper.

Respectfully Submitted,
MATTHEW McEVOY and
LEAH McEVOY,
Defendants/Plaintiffs-in-Counterclaim
By Their Attorney

LAW OFFICE OF
DANIEL R. SEIGENBERG

Dated: __December 13, 2004__

Daniel R. Seigenberg, Esquire
128 School Street
Walpole, MA 02081
(508) 668-9800
BBO # 451100

**DEFENDANTS/PLAINTIFFS-IN-COUNTERCLAIM DEMAND TRIAL BY JURY ON ALL ISSUES.**

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION NO: 03-02018

TOWN OF WRENTHAM,             )
    Plaintiff/Defendant-In-Counterclaim     )
                                    )
                                      )
v.                             )
                                      )
MATTHEW McEVOY and LEAH McEVOY,    )
    Defendants/Plaintiffs-In-Counterclaim   )
                                      )

## NOTICE OF APPEARANCE

TO THE CLERK OF THE ABOVE-NAMED COURT:

Please enter my appearance as counsel of record on behalf of the Defendant-In-Counterclaim, TOWN OF WRENTHAM, in the above-captioned matter.

                    Defendant-In-Counterclaim,
                    TOWN OF WRENTHAM,
                    By its attorneys,

                    **PIERCE, DAVIS & PERRITANO, LLP**

                    John J. Cloherty III, BBO #566522
                    Ten Winthrop Square
                    Boston, MA 02110
                    (617) 350-0950

<u>CERTIFICATE OF SERVICE</u>
I hereby certify that on this day a true copy of the
above document was served upon each attorney of
record, or pro se litigant, by mail/by hand.

12/2/03
Date

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO. 03-2018

TOWN OF WRENTHAM,
     Plaintiff

v.

MATTHEW and LEAH McEVOY,
     Defendants

## NOTICE OF CHANGE OF ADDRESS

     This is to notify the Court and all parties to the above-cation that my address and

telephone number have been changed to:

        Daniel R. Seigenberg, Esquire
        Law Office of Daniel R. Seigenberg
        Sharon Commerce Center
        2 Commercial Street
        Sharon, Massachusetts 02067
        (781) 784-8800
        BBO No. 451100

### CERTIFICATE OF SERVICE

     I, Daniel R. Seigenberg, certify that I this day mailed a copy of the above notice,

postage prepaid, to all counsel of record and to all parties not represented by counsel in

the above-entitled action.

Dated:  July 20, 2004

               Daniel R. Seigenberg, Esquire

1